THE LEGAL AID SOCIETY
Seymour James, Attorney-in-Chief
Adriene Holder, Attorney-in-Charge,
    Civil Practice
Karen Cacace, Director,
    Employment Law Unit
Richard Blum, of counsel
199 Water Street
New York, New York 10038
Tel: 212-577-3648
Fax: 646-616-4648
rblum@legal-aid.org

KAYE SCHOLER LLP
Scott Talmadge, Esq.
Holly M. Martin, Esq.
Kara E. Neaton, Esq.
250 West 55th Street
New York, New York 10019-9710
Tel: (212) 836-8000
scott.talmadge@kayescholer.com

*Attorneys for Sohail Muhammad*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MOTOR PARKWAY ENTERPRISES, INC.<br><br>          Debtor.<br><br>SOHAIL MUHAMMAD,<br><br>          Appellant,<br><br>          -against-<br><br>MOTOR PARKWAY ENTERPRISES, INC.,<br><br>          Appellee. | Chapter 11<br><br>Case No. 16-03817-JMA |

**APPELLANT'S OPENING BRIEF**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................... 1

JURISDICTION ............................................................................................................................ 2

STANDARD OF REVIEW........................................................................................................... 2

ISSUES ON APPEAL .................................................................................................................. 2

STATEMENT OF FACTS ............................................................................................................ 2

A.     PROCEDURAL HISTORY................................................................................................. 2

B.     FACTS ................................................................................................................................. 3

ARGUMENT ................................................................................................................................. 6

I.     THE BANKRUPTCY COURT APPLIED THE WRONG LEGAL STANDARD TO
       DETERMINE WHETHER DEBTOR OWED MR. MUHAMMAD WAGES UNDER
       THE FLSA AND NYLL........................................................................................................ 6

A.     Mr. Muhammad was Employed by Debtor........................................................................ 7

       1.     Employment Under the FLSA and NYLL is Interpreted Broadly........................... 7

       2.     The Debtor Permitted Mr. Muhammad's Employment ............................................ 8

B.     Mr. Muhammad was Jointly Employed by Debtor and the Other Stations in the Gas
       Station Enterprise Under the FLSA and NYLL................................................................ 9

       1.     Joint Employment under the FLSA and NYLL ....................................................... 9

       2.     Mr. Muhammad's Joint Employment .................................................................... 12

II.    THE BANKRUPTCY COURT'S FINDINGS THAT THE DEBTOR MET ITS
       BURDEN OF PROOF THAT MR. MUHAMMAD WAS PAID BY MIDDLE ISLAND
       GAS STATION ARE NOT SUPPORTED BY THE RECORD..................................... 14

A.     The FLSA and NYLL Shift the Burden onto the Employer to Disprove the Employee's
       Claims of Unpaid Wages in the Absence of Accurate Contemporaneous Wage and Hour
       Records. ............................................................................................................................ 16

B.     The General Manager Failed to Establish that Mr. Muhammad Received Paychecks from
       the Middle Island Gas Station for All of His Hours Worked .......................................... 17

       1.     The Debtor's Evidence of Payment to Mr. Muhammad was Demonstrably False 17

       2.     The Debtor's Records of Mr. Muhammad's Hours Worked were not Propery
              Authenticated .......................................................................................................... 18

CONCLUSION............................................................................................................................. 19

## PRELIMINARY STATEMENT

Creditor Sohail Muhammad ("Mr. Muhammad" or the "Claimant") worked as a cashier for an enterprise of gas stations that included the debtor Motor Parkway Enterprises, Inc. (the "Debtor" or "Motor Parkway"), among many others. He traveled among fourteen gas stations collecting and depositing money, among other things. He also performed special tasks for the Debtor, in particular. The record is clear that Mr. Muhammad (i) was paid partly by check from a parent company of the various gas stations, but mostly in cash out of the accounts of the various gas stations, including the Debtor, and (ii) was never paid the overtime pay as required under federal and state labor law or the spread-of-hours pay that he was owed under state labor law. Moreover, Mr. Muhammad was not paid the cash portion of his wages at all for the last weeks that he worked at the Debtor's gas station.

To obtain the wages that he was owed, Mr. Muhammad filed a proof of claim in the Debtor's Chapter 11 proceeding, because Motor Parkway was one of the gas stations at which he worked. Nevertheless, the Bankruptcy Court disallowed his claim. Declining to apply the Fair Labor Standards Act ("FLSA") or New York Labor Law ("NYLL") to determine if Mr. Muhammad had stated a valid wage claim, the Bankruptcy Court created its own standards, which are at odds with the labor statutes. In particular, the Bankruptcy Court held that Mr. Muhammad had not established that he had been an employee of the Debtor because he had not been hired, paid, or supervised according to company protocols and that the actions of Sudheer Kumar, the individual employed by the Debtor's business to supervise and pay Mr. Muhammad (the "Manager") could not bind the Debtor.

This holding is an error of law. It substitutes the correct legal standard for determining employment under federal and state labor law, whether one was "suffered or permitted to work," with an arbitrary standard with no legal foundation. The holding ignores well-established

1

precedent concerning joint employment under the FLSA and NYLL, and relies on inaccurate characterizations of the record and misplaced burdens of proof. Accordingly, the Bankruptcy Court's holding should be reversed and an order should be entered allowing Mr. Muhammad's claim in full.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1). The Bankruptcy Court's order is a final appealable order.

## STANDARD OF REVIEW

On appeal from a bankruptcy court, a district court must review findings of fact for clear error, while it must review issues of law *de novo*. *See In re Vebeliunas*, 332 F.3d 85, 90 (2d Cir. 2003); *Holzer v. Barnard*, No. 15-6277, 2016 WL 4046767, \*4 (E.D.N.Y. July 27, 2016); *In re Abir*, No. 09-2871, 2010 WL 1169929, \*4 (E.D.N.Y. Mar. 22, 2010).

## ISSUES ON APPEAL

1.    Whether the Bankruptcy Court erred by failing to apply the standards set forth in the Fair Labor Standards Act and New York Labor Law to Mr. Muhammad's evidentiary burden.

2.    Whether the Bankruptcy Court erred in concluding the debtor's evidence was sufficient to satisfy its burden of proof.

## STATEMENT OF FACTS

### A.    PROCEDURAL HISTORY

On December 24, 2014, the Debtor commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Initially, Motor Parkway's case was jointly administered with several other debtor entities, all owned and operated by Steven Keshtgar (the "Owner"), which operated as a joint enterprise (the "Gas Station Enterprise"). On July 21, 2015,

2

many of those cases were converted to chapter 7 cases (those cases have now been substantively consolidated together with several other of the Owner's bankrupt gas stations which originally filed petitions under chapter 7 of the Bankruptcy Code) and this case proceeded as a chapter 11 case. On March 10, 2016, Mr. Muhammad submitted an amended proof of claim in the amount of $117,932.

On November 9, 2015, the Debtor filed the Debtor's Objection to Allowance of Claim (the "Objection") alleging that based on the Debtor's records, Mr. Muhammad was at no time employed by the Debtor.

Mr. Muhammad filed an opposition to the Objection on December 24, 2015 (the "Opposition") noting that the Debtor's records do not match his own and that he was, in fact employed by the Debtor as described in Mr. Muhammad's Proof of Claim.

On March 14, 2016, the Bankruptcy Court held an evidentiary hearing (the "Evidentiary Hearing") to decide the status of Mr. Muhammad's Proof of Claim and the claim of Mr. Sonam Gyalpo against Holbrook Development Corp., another entity within the Gas Station Enterprise. *See* RA 26, Hearing Transcript for hearing on March 14, 2016 ("Evid. Hr'g Tr."). At the Evidentiary Hearing, direct testimony was introduced by way of declaration, and cross-examination and rebuttal testimony were elicited at such hearing.

On June 21, 2016, the Bankruptcy Court conducted a ruling conference, during which the Court set out the basis for its ruling on the two claims. On June 23, 2016, the Court entered an order disallowing Mr. Muhammad's claim and an appeal was taken.

### B.    FACTS

Mr. Muhammad was a low-wage hourly employee of the Debtor. In or about March or April 2012, he was promoted to a new job working for the Gas Station Enterprise, including the

Debtor. RA 21, Muhammad Decl. ¶ 3. For two-and-a-half years, until the end of November 2014, Mr. Muhammad traveled regularly to fourteen gas stations within the Gas Station Enterprise, including the Debtor, to collect money and deposit that money in the gas stations' bank accounts. *Id.* He also performed various other tasks specifically for the Debtor. RA 21, Muhammad Decl. ¶¶ 14-17.

The fourteen gas stations were all owned and run by the Owner. RA 21, Muhammad Decl. ¶ 3. The managers of all of the gas stations in the Gas Station Enterprise were Saverio Settanni (the "General Manager") and the Manager. RA 26, Evid. Hr'g Tr. at 30:2-4; RA 21, Muhammad Decl. ¶ 3; RA 20, Settani Aff. ¶ 7. All of the gas stations were "under" Marketing Inc. of Islandia. RA 26, Evid. Hr'g Tr. at 50:1-2. The offices for the entire Gas Station Enterprise were at the site of Marketing Inc. of Islandia ("Marketing Inc."). RA 21, Muhammad Decl. ¶ 3.

When the Owner and the Manager hired Mr. Muhammad for his new position in March or April 2012, he was not provided with notification of his pay rate or other employment information as mandated by NYLL. RA 21, Muhammad Decl. ¶ 34.

From 2012 to 2014, Mr. Muhammad worked between 72 and 84 hours per week. RA # 21, Muhammad Decl. ¶¶ 18-24. The Manager paid Mr. Muhammad $800 per week in 2012, $850 per week in 2013 and $900 per week in 2014. RA 21, Muhammad Decl. ¶ 26. Mr. Muhammad was never paid overtime when the hours he worked exceeded 40 hours per week. He was also never paid spread-of-hours pay when he worked more than 10 hours per day. RA 21, Muhammad Decl. ¶ 34.

The Gas Station Enterprise was managed day-to-day by the Manager, whom Mr. Muhammad understood to be his immediate boss. RA 21, Muhammad Decl. ¶ 6. When Mr.

4

Muhammad arrived at work, he called the Manager or the Owner to tell them he was there and then phoned them again at the end of the day before he went home. RA 21, Muhammad Decl. ¶ 8; RA 26, Evid. Hr'g Tr. at 16:21-24. He did not use any computer system to sign in nor did anyone tell him he was required to do so. RA 26, Evid. Hr'g Tr. at 16:23-17:9.

Mr. Muhammad received his wages in two ways: cash and check. The portion of his wages paid via check was straightforward. Each week, he would receive a check for $175 from Marketing Inc. RA 21, Muhammad Decl. ¶ 28. The portion of his wages being paid in cash was more complicated. Each month, Mr. Muhammad would receive a check made out from one gas station to another gas station in the amount of his cash wages for that month. RA 12, Muhammad Decl. ¶¶ 29-30. Mr. Muhammad was directed to deposit that check in the bank account of the payee gas station, which he did. RA 21, Muhammad Decl. ¶ 31. Then a few days later, the cashier from the payee gas station would pay Mr. Muhammad in cash. *Id.*; RA 21, Muhammad Decl. Exh. D. Some of these payments came from the Debtor. *Id.* Mr. Muhammad never received a wage statement with the cash portion of his wages pursuant to NYLL. RA 21, Muhammad Decl. ¶ 34.

As a result of this payment system, Mr. Muhammad would receive a W-2 form from Marketing Inc. for the wages paid through checks and another W-2 from one of the other members of the Gas Station Enterprise for the wages paid through cash. RA 21, Muhammad Decl. ¶ 33; RA 21, Muhammad Decl. Exh. E.

For thirteen weeks before the Debtor filed for bankruptcy, Mr. Muhammad did not receive the cash portion of his wages. He worked 84 hours per week throughout that period and received only $175 per week for his labor. RA 21, Muhammad Decl. ¶ 38. Additionally, the final $175 check Mr. Muhammad received from the Debtor bounced. RA 21, Muhammad Decl.

¶ 40. Mr. Muhammad also paid for many of the Debtor's expenses over that period of time with his own money, including gas and mileage. RA 21, Muhammad Decl. ¶ 39.

The Debtor owes Mr. Muhammad $117,932 for unpaid wages, liquidated damages and notice and wage violations. Of that amount, $12,457 is a priority wage claim pursuant to section 507(a)(4)(A) of the Bankruptcy Code.

## ARGUMENT

### I.     THE BANKRUPTCY COURT APPLIED THE WRONG LEGAL STANDARD TO DETERMINE WHETHER DEBTOR OWED MR. MUHAMMAD WAGES UNDER THE FLSA AND NYLL

In disallowing Mr. Muhammad's claim, the Bankruptcy Court held that "while Mr. Muhammad . . . go[es] to great lengths in discussing in [his] briefing the FLSA and New York Labor [Law] standards, [he] simply ha[s] not demonstrated how . . . Mr. Muhammad was an employee or individual, as defined under Section 507(a)(4), as to . . . Motor Parkway, and simply have not proven that [he] was an employee of the entity against which the claim was asserted." RA 33, Transcript of Ruling Conference dated June 21, 2016 ("Ruling Tr.") at 18:11-18. This conclusion is erroneous as a matter of law.

Section 507(a)(4) of the Bankruptcy Code identifies that people with certain wage claims have a certain priority under the Bankruptcy Code. It does not establish independent criteria for deciding whether a person has a wage claim. Whether a person has a wage claim under the FLSA or the NYLL depends entirely on the FLSA and the NYLL, even in the context of a bankruptcy proceeding. *See, e.g., In re Santos*, 2007 WL 7540980, at *5 (B.A.P. 9th Cir. 2007) ("In evaluating the burden of proof, the Bankruptcy Court properly looked to the law of California as the applicable law for wage disputes in that state.").

The Bankruptcy Court committed reversible error by disregarding the labor law standards set forth in the FLSA and NYLL for determining employment, and instead incorrectly applied

principles of agency law. The labor laws, however, have completely different labor law standards for determining employment and it was error not to apply those standards. As demonstrated below, under the labor law standards, Mr. Muhammad was employed by and has a valid wage claim against the Debtor.

### A. Mr. Muhammad was Employed by the Debtor

#### 1. Employment Under the Fair Labor Standards Act and the New York Labor Law is Interpreted Broadly

The FLSA's definition of the employment relationship is extremely broad, both explicitly and in its interpretation. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947) ("The [FLSA] definition of 'employ' is broad."); *U.S. v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (quoting Sen. Hugo Black 81 Cong. Rec. 7657 (1938)) (noting that the FLSA standard for "employee" "'had been given 'the broadest definition that has ever been included in any one act'"); *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 66 (2d Cir. 2003) ("[The definition of 'employ' under the FLSA] is necessarily a broad one, in accordance with the remedial purpose of the FLSA.").

Under the FLSA, "'[e]mploy' includes to suffer or permit to work." 29 U.S.C. § 203(g) (2015). An employee is "any individual employed by an employer." 29 U.S.C. § 203(e)(1) (2015). An employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d) (2015). The definition is independent of common law or other employment law definitions. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) ("This [definition of 'employ' under the FLSA], whose striking breadth we have previously noted . . . stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles."); *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 146 (2d Cir. 2008) (quoting *Zheng*, 355 F.3d at

7

66) (finding that nurse employed by multiple staffing agencies for work at the same hospital was employed by that hospital under the FLSA and stating that the "broad" definition of "employ" under the FLSA requires a court to "'look[] beyond a defendant's formal control over the physical performance of a plaintiff's work'"). Formal recognition of the employment relationship by the putative employer is not required for the employer to be subject to the requirements of the FLSA.

Federal courts generally have found liability for New York Labor Law violations to track liability under the FLSA. *See, e.g., Galeana v. Lemongrass on Broadway Corp.*, 2014 WL 1364493, at *15 (S.D.N.Y. Apr. 4, 2014). Under the New York Minimum Wage Act, NYLL Article 19, §651(5), "'employee' includes any individual employed or permitted to work by an employer in any occupation . . .".

## 2.    The Debtor Permitted Mr. Muhammad's Employment

Under the FLSA, Mr. Muhammad was employed by the Debtor. He was permitted to perform work for the Debtor: routinely collecting and depositing money into its accounts, buying supplies for the store at Debtor's location using the Debtor's membership card, retrieving coins for the store's manager, training staff to respond to inspections, giving safety instructions to the Debtor's staff, checking gas pumps weekly for cracks, changing prices at the store, and giving rides to work to the Debtor's staff. RA 21, Muhammad Decl. ¶¶ 12-17. He performed these tasks under the supervision of the Owner and the Manager. RA 21, Muhammad Decl. ¶ 8. Because he was suffered and permitted to perform work for the Debtor, Mr. Muhammad was employed by the Debtor, and the Debtor is liable for any violations of his rights under the FLSA.

Contrary to the Bankruptcy Court's decision, under the FLSA's "suffer or permit to work" standard, neither the Owner nor any of his staff had to give formal approval of Mr. Muhammad's employment or how he was paid to create liability on the part of the Debtor. Any

8

other approach would completely subvert the purpose of the labor law, which is to protect employees who do not have the bargaining power to protect themselves against violations of minimum standards. If employers were only liable under the FLSA if they formally acknowledged employment and how employees are paid, unscrupulous employers who wish to evade minimum wage and overtime requirements simply would not acknowledge employment or payment of wages. The law, however, offers employers no legal defense based on those subterfuges.

Nevertheless, the Bankruptcy Court held that Mr. Muhammad "did not establish that [the Manager] could vary from the established corporate protocol and bind Motor Parkway to pay him off the books." RA 33, Ruling Tr. at 14:14-17. The Bankruptcy Court's premise legally is incorrect. The Bankruptcy Court was applying common law agency principles to determine employment instead of applying the labor laws' standards. As noted above, the Supreme Court has rejected use of the common law in determining employment status under the FLSA. Accordingly, the Bankruptcy Court's decision should be reversed.

**B.      Mr. Muhammad was Jointly Employed by Debtor and the Other Stations in the Gas Station Enterprise Under the FLSA and NYLL.**

**1.      Joint Employment under the FLSA and NYLL**

Under the FLSA's broad definitions of employment, one or more employers may jointly employ an employee. 29 C.F.R. § 791.2(a) (2016) (discussing joint employment). Each joint employer is jointly and severally liable for any and all FLSA violations suffered by a jointly-employed employee during that employee's employment with any joint employer, although entities remain separate corporate entities in other areas of the law. *Id.* According to applicable regulations:

> if the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not

9

> completely disassociated from employment by the other
> employer(s), all of the employee's work for all of the joint
> employers during the workweek is considered as one employment
> for purposes of the Act. In this event, *all joint employers are*
> *responsible, both individually and jointly, for compliance* with all
> of the applicable provisions of the act, including the overtime
> provisions, with respect to the entire employment for the particular
> workweek.

*Id.* (emphasis added). *See also Arculeo v. On-Site Sales & Marketing, LLC*, 425 F.3d 193, 198 (2005) ("There is well-established authority under this theory that . . . an employee . . . may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer.") (citation omitted); *see also Chao v. Barbeque Ventures, LLC*, No. 8:06CV676, 2007 WL 5971772, at *4 (D. Neb. Dec. 12, 2007) *aff'd*, 547 F.3d 938 (8th Cir. 2008) (assessing single employer theory to determine liability for overtime payments); *Juarez v. 449 Restaurant, Inc.*, 29 F. Supp. 3d. 363, 367 (S.D.N.Y. 2014) (specifying that the "single integrated enterprise" test assesses single employer status for FLSA purposes for otherwise separate entities). Joint employment gives rise to joint and several liability by the Debtor and other gas stations in the Gas Station Enterprise for both federal and state labor law violations.

As noted above, federal courts generally have found liability for NYLL violations to track liability under the FLSA. *See, e.g., Galeana*, 2014 WL 1364493, at *15; *see also Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 342-43 (S.D.N.Y. 2005) (stating that the NYLL definition of "employer" is "similarly expansive" when compared to the FLSA and holding that corporate owner was jointly and severally liable for labor law violations under FLSA and NYLL); *see also Bonito v. Avalon Partners, Inc.*, 106 A.D.3d 625 (1st Dep't 2013) (reinstating claim of joint employer liability for individual who partly owned and managed the employer's business).

Whether joint employment exists "depends upon all the facts in the particular case." 29 C.F.R. § 791.2(a) (2016). The United States Department of Labor (the "DOL") identifies the three following situations as situations in which joint employment exists: (1) where an arrangement exists to share or exchange employees; (2) where employers act in each other's interest in relation to the employee; or (3) where employers are "not completely dissociated" and "may be deemed to share control of the employee." 29 C.F.R. § 791.2(b) (2016). *See also Barfield*, 537 F.3d at 140-41 (finding and discussing implications of joint employment for overtime); *Terry v. Spinelli*, 980 F. Supp. 2d 366, 375 (E.D.N.Y. 2013) (concluding that "no reasonable jury" could find absence of joint employment even where joint employer did not formally control employee).

The DOL recently issued guidance on how to evaluate claims of joint employment, including "horizontal" joint employment where different seemingly distinct businesses either form a single enterprise or are considered joint employers. *See* U.S. Dep't of Labor Wage & Hour Div., Adm'rs Interpretation No. 2016-1: Joint Employment Under the Fair Labor Standards Act and Seasonal Agricultural Worker Protection Act, 7 (issued Jan. 20, 2016), *available at* http://www.dol.gov/whd/flsa/Joint_Employment_AI.pdf, at 6-9 (describing factors for horizontal joint employment and addressing joint employment generally) ("DOL Guidance").

Where, as here, companies do not stand in a hierarchical relationship and jointly employ an employee, the DOL calls the arrangement "horizontal" joint employment. Horizontal joint employment tests focus on the interrelatedness of operations and, while no one factor is dispositive in analyzing joint employment, this test may consider ownership, overlapping management, control over operations, intermingling (including administrative operations), supervision, supervisory authority, common employees, shared clients or customers and

11

agreements between employers. *Juarez*, 29 F. Supp. 3d at 366-68 (finding that facts pled alleged joint employment when considering interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control and stating that chain of restaurants and chain operator were "not insulate[d] from liability . . . because all Defendants that compose the enterprise count as Plaintiff's employer"); *Bravo v. Established Burger One, LLC*, No. 12 CIV. 9044 CM, 2013 WL 5549495, at *8 (S.D.N.Y. Oct. 8, 2013) (finding joint employment relationship was alleged where corporate defendants "moved employees and food among restaurants," paid employees using similar methods and from the same office, jointly advertised, and managed burger restaurants as one entity); *Chen v. TYT E. Corp.*, No. 10 CIV. 5288 PAC, 2012 WL 5871617, at *3-5 (S.D.N.Y. Mar. 21, 2012) (granting summary judgment for plaintiffs where corporate owners were considered a single entity for purposes of the FLSA where restaurants were commonly managed, shared some physical spaces, and jointly operated labor relations or where an economic realities test was used); *Perez v. Westchester Foreign Autos, Inc.*, No. 11 CIV. 6091 ER, 2013 WL 749497, at *6-8 (S.D.N.Y. Feb. 28, 2013) (failing to grant motion to dismiss where chain of car dealerships and corporate officers were a single employer for the purposes of the FLSA).

### 2. Mr. Muhammad's Joint Employment

Under the applicable test for joint employment under the FLSA, the incontrovertible facts in the Record demonstrate that the Debtor was Mr. Muhammad's employer and joint employer and is liable for all FLSA violations Mr. Muhammad suffered while he worked for the Debtor and all other entities within the Owner's Gas Station Enterprise.

The Debtor and the other gas stations in the Gas Station Enterprise at which Mr. Muhammad worked, together with Marketing Inc., present a textbook case of joint employment. *See, e.g., Juarez*, 29 F. Supp.3d at 370-71 (applying standard four-part test of "(1) interrelation of

operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control" in finding multiple diners with different owners to be a "single integrated enterprise," emphasizing that the plaintiff worked at all of the locations at issue and "did not differentiate among them with respect to the pay policies he was subject to") (citations omitted). All of the factors in *Juarez* favor finding joint employment here: (1) the Owner, with the assistance of the Manager, had control over all of the gas stations and ran them as one enterprise, including transferring funds from one gas station to another to cover payroll, RA 21 Muhammad Decl. ¶¶ 29-32; (2) the Owner, with the assistance of the General Manager and the Manager and through Marketing Inc., ran the labor relations of all of the gas stations, including payroll, RA 26 Evid. Hr'g. Tr. at 29:24-30:4; (3) the Owner ultimately owned all of the gas stations, RA 26 Evid. Hr'g. Tr. at 84:5-7; and (4) the operations were financially intermingled and staff was shared, including Mr. Muhammad, who traveled to fourteen gas stations and reported the deposits of all of the gas stations in a single daily ledger, RA 21 Muhammad Decl. ¶¶ 3, 6-7, 9. *See also* DOL Guidance at 8. Clearly, these operations were far beyond the "not completely dissociated" joint employment criterion adopted by the DOL and, indeed, were highly integrated. Mr. Muhammad was also paid directly by multiple gas stations he worked for, including Debtor Motor Parkway.

Even accepting *arguendo* that Mr. Muhammad was paid primarily by a different gas station entity, as the Debtor claimed at the hearing,[1] as a matter of law, all of the entities for which he worked, including the Debtor, are liable for any violations of labor law at any of them.[2] That one or more of them or a parent company provided paychecks does not limit Mr.

---

[1] As discussed below, the Debtor failed to establish that Mr. Muhammad ever received or deposited those checks. Indeed, as set forth in detail below, the Record demonstrates the exact opposite.

[2] Of course, Mr. Muhammad is only seeking to recover the total amount he is owed and is not seeking and would not be entitled to multiple recoveries of the total amount owed.

Muhammad's employment to those entities. Nor does it limit the liability of all of the joint employers for any labor law violations.

The Bankruptcy Court did not apply the FLSA and NYLL's joint employment liability standards. Instead, the Bankruptcy Court applied agency standards, holding that Mr. Muhammad did not establish that the Manager had the authority to pay him off the books or by doing so, bind the Debtor. As set forth above, those questions are legally irrelevant to the question of joint employment liability under the FLSA and NYLL. As a result of this error of law, the Bankruptcy Court mistakenly found that the Debtor did not employ Mr. Muhammad.

In sum, Mr. Muhammad established that the Debtor and the other gas stations to which he was dispatched by the Debtor's owner and manager were his joint employers under the FLSA and NYLL and that they are all jointly and severally liable for any violations under those acts. The Bankruptcy Court's holding to the contrary was legally incorrect and should be reversed.

## II. THE BANKRUPTCY COURT'S FINDINGS THAT THE DEBTOR MET ITS BURDEN OF PROOF THAT MR. MUHAMMAD WAS PAID BY MIDDLE ISLAND GAS STATION ARE NOT SUPPORTED BY THE RECORD

The Bankruptcy Court failed to follow the FLSA and NYLL rules concerning burdens of proof in the absence of contemporaneous accurate wage and hour records. In disallowing Mr. Muhammad's claim, the Bankruptcy Court relied on several factual findings that were not established on the Record. It is not enough for the Debtor's witness to have asserted factual claims. If their evidence is demonstrably unreliable, it does not satisfy the Debtor's burden of proof.

In disallowing Mr. Muhammad's claim, the Bankruptcy Court relied on several factual findings that are not supported by the record. At the Evidentiary Hearing, the General Manager produced cancelled paychecks made out to Sohail Muhammad. However, the signatures of the person who endorsed the checks did not match that of Mr. Muhammad's passport; the checks

14

were deposited to an account with a number that did not correspond to the account into which Mr. Muhammad deposited his pay; the W-2 forms that Mr. Muhammad received were from a different company from the one that made out the checks; and the General Manager could not explain why, if his claims concerning these checks allegedly covering Mr. Muhammad's work hours were true, the parent company was paying Mr. Muhammad an additional undisputed $175 per week.  RA 26, Evid. Hr'g Tr. at 54:8-15.

In addition, some of the checks identified in the register the General Manager produced had dates well after Mr. Muhammad's departure from the Debtor's employment.  The General Manager could not explain why wages were apparently paid to Mr. Muhammad for work done while he was actually out of the country.  RA 21, Muhammad Decl. ¶ 35; RA Evid. Hr'g Tr. at 32:2-12, 61:21-62:7.

Moreover, although the General Manager testified that employees were supposed to use a hand scanner and produced hand scanner records for Mr. Muhammad that were all from only one gas station, Mr. Muhammad, who routinely moved among more than 14 different work locations, including gas stations and banks, testified that he did not ever use the hand scanner.  RA 21, Muhammad Decl. ¶ 19.  For his part, the General Manager could only confirm that the time records reflected when someone with the required information punched in or out at a given location, not that they actually reflected Mr. Muhammad punching in or out.

The Bankruptcy Court's reliance on the General Manager's demonstrably false or unreliable claims was error.  Moreover, the Bankruptcy Court failed to follow the FLSA and NYLL rules concerning burdens of proof in the absence of contemporaneous accurate wage and hour records.

## A. The FLSA and NYLL Shift the Burden onto the Employer to Disprove the Employee's Claims of Unpaid Wages in the Absence of Accurate Contemporaneous Wage and Hour Records.

Under the foundational Supreme Court FLSA precedent, *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680 (1946), where an employer cannot produce the contemporaneous and accurate time and pay records that the law requires it to maintain, FLSA plaintiff meets his burden of proof "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687. Mr. Muhammad met that burden in his proof of claim. "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.*; *see also Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp.2d 381, 388 (E.D.N.Y. 2007) (applying *Anderson* burdens in FLSA and NYLL case) (citations omitted); *Heenam Bae v. Industrial Board of Appeals,* 104 A.D.3d 571, 572 (1st Dep't 2013) (applying *Anderson* burdens to NYLL claim); *Hy-Tech Coatings v. New York State Dep't of Labor,* 226 A.D.2d 378, 379 (2d Dep't 1996) (same); *Mid Hudson Pam Corp. v. Hartnett*, 156 A.D.2d 818, 820 (3rd Dep't 1989) (same). The Debtor has failed to meet that burden. As set forth above, the wage records produced by the Debtor were not accurate. The time records were not reliable. Therefore, the burden rested with the Debtor to disprove Mr. Muhammad's testimony. It utterly failed to do so.

## B. The General Manager Failed to Establish that Mr. Muhammad Received Paychecks from the Middle Island Gas Station for All of His Hours Worked.

### 1. The Debtor's Evidence of Payment to Mr. Muhammad was Demonstrably False.

At the hearing, the Debtor's witness, the General Manager, produced cancelled pay checks made out to Sohail Muhammad and supposedly endorsed by Sohail Muhammad.

16

However, Mr. Muhammad produced the signature page of his passport and demonstrated that the signature on the cancelled checks was not his. RA 26, Evid. Hr'g Tr. at 61:5-18. He also compared the numbers of the bank account into which those checks were deposited and the account into which he deposited some of his pay. They did not match. RA 26, Evid. Hr'g Tr. at 63:12-20. In addition, whereas the General Manager claimed that Mr. Muhammad was paid by the Middle Island Development Corp. a/k/a Lake Ronkonkoma BP, RA 26, Evid. Hr'g Tr. at 53:16-54:15, Mr. Muhammad received a W-2 form from a different company, Ronkonkoma Development Corp., which corresponded to a Gulf station. RA 26, Evid. Hr'g Tr. at 59:3-5.

Moreover, the General Manager confirmed that a check from Middle Island covered the pay for all of the hours for which Mr. Muhammad was punched in to work. RA 26, Evid. Hr'g Tr. at 51:24-52:7. He also testified that all of the gas station employees except the managers were hourly, not salaried, employees. RA 26, Evid. Hr'g Tr. at 31:18-20. Yet, the General Manager and Mr. Muhammad agreed that Mr. Muhammad had been paid $175 per week by Marketing Inc. The General Manager, who testified that he processed payroll, RA 26, Evid. Hr'g Tr. at 33:10, could not explain why Marketing Inc. paid those weekly checks to Mr. Muhammad, if his hourly wages were already covered entirely by the checks from Middle Island. RA 26, Evid. Hr'g Tr. at 54:8-15.

The Debtor also produced a register of checks that were supposedly issued to Mr. Muhammad. RA 20, Settanni Aff., Exh. A. Although Mr. Muhammad was out of the country in December 2014, RA 21, Muhammad Decl. ¶ 35, RA 26, Evid. Hr'g Tr. at 61:21-62:8, until January 25, 2015, *Id.*, and never returned to work for the Debtor when he came back, RA 21, Muhammad Decl. ¶¶ 35-37, three of the checks identified on the register had dates of December 9, 2014, December 16, 2014, and January 20, 2015, RA 26, Evid. Hr'g Tr. at 32:14-18; RA 20,

Settanni Aff. Exh. A.  At the Evidentiary Hearing, the General Manager was unable to explain the discrepancy, admitting that employees did not get vacation pay or other pay for time not worked, RA 26, Evid. Hr'g Tr. 32:2-25, and evasively saying only that he could not say what pay periods were covered by those checks.  RA 26, Evid. Hr'g Tr. 32:22-25; 33:15-34:4.

### 2. The Debtor's Records of Mr. Muhammad's Hours Worked were not Properly Authenticated.

The Middle Island paychecks on which the General Manager's testimony depended were based on time records provided from a hand scanner.  Yet, Mr. Muhammad testified that he never used a hand scanner.  RA 21, Muhammad Decl. ¶ 19.  For his part, the General Manager could not even confirm that the records he produced accurately reflected the hours that Sohail Muhammad had actually worked.  He conceded having hand scanner records for both "M. Sohail" and "Muhammad Sohail."  RA 26, Evid. Hr'g Tr. at 44:11-20.  At first, he testified that "they" must have changed Mr. Muhammad's passcode, *id.*, but later on, he could not say for sure if these two records corresponded to two different employees or if Mr. Muhammad had two different passcodes, and if so, why.  RA 26, Evid. Hr'g Tr. at 51:17-52:2.   In the end, the General Manager conceded that all he could say is that someone with Mr. Muhammad's information punched in at the indicated location at the indicated time.  *Id.*  That testimony was insufficient to establish that the hand scanner records were reliable business records or that they accurately reflected Mr. Muhammad's actual hours of work.

Given all of these inconsistencies and gaps in the General Manager's testimony and the unrefuted rebuttal testimony of Mr. Muhammad, it was error for the Bankruptcy Court to find that the Debtor had established that Mr. Muhammad had been paid by Middle Island or that it had maintained a reliable timekeeping system and records.

## CONCLUSION

For the reasons stated above, the decision of the Bankruptcy Court should be reversed and an order entered allowing Mr. Muhammad's claim in full.

Dated:   New York, New York
          September 6, 2016

                        Respectfully submitted,
                        THE LEGAL AID SOCIETY
                        SEYMOUR JAMES, Attorney-in-Chief
                        ADRIENE HOLDER, Attorney-in-Charge,
                                    Civil Practice
                        KAREN CACACE, Director,
                        Employment Law Unit
                        RICHARD BLUM, of counsel
                        199 Water Street
                        New York, New York 10038
                        Tel:  212-577-3648
                        Fax:  646-616-4648
                        rblum@legal-aid.org

By: _____

*Attorneys for Sohail Muhammad*


KAYE SCHOLER LLP

*s/ Scott Talmadge*
_____
By:    Scott Talmadge, Esq.
        Holly M. Martin, Esq.
        Kara E. Neaton, Esq.
        250 West 55th Street
        New York, New York 10019-9710
        (212) 836-8000
        scott.talmadge@kayescholer.com

*Attorneys for Sohail Muhammad*