## Motor Parkway Enterprises, Inc.

## APPENDIX A

**Table of Contents**

Proof of Claim filed by Mr. Gyalpo; Claim #15-1; filed 03/18/2015……………………1

Motion to Object/Reclassify/Reduce/Expunge Claims: Claim Number(s): 15-1; Docket No. 52; filed 11/09/2015…………………………………………………………………7

Amended Proof of Claim filed by Mr. Muhammad; Claim #14-3; filed 03/10/2016……17

Motion to Object/Reclassify/Reduce/Expunge Claims: Claim Number(s): 14-1; Docket No. 44; filed 11/09/2015……………………………………………………………24

Reply / *Opposition of Sohail Muhammad to Debtors Objection to Allowance of Claim*; Docket No. 72; filed 12/24/2015……………………………………………………..40

Motion to Allow Claims: Claim Number(s): 14; Docket No. 77; filed 01/08/2016……..56

Motion to Object/Reclassify/Reduce/Expunge Claims: Claim Number(s): 14; Docket No. 83; filed 02/02/2016…………………………………………………………..78

Letter *regarding statement of undisputed facts as to amended proof of claim number 14*; Docket No. 88; filed 02/09/2016……………………………………………………..84

Memorandum of Law in Support of *Certain Objections to Proofs of Claim and in Opposition to a Motion to Pay Certain Administrative Expense Wage Claims*; Docket No. 94; filed 03/07/2016…………………………………………………………..85

Letter Withdrawing Motion of Sohail Muhammad for Allowance and Payment of Administrative Priority Wage Claim Against Motor Parkway Enterprises, Inc.; Docket No. 96; filed 03/07/2016…………………………………………………………90

Declaration of Sohail Muhammad; Docket No. 97; filed 03/07/2016…………………...91

Declaration of Chitra Khatri; Docket No. 98; filed 03/07/2016………………………..142

Memorandum of Law in Support of Creditor Sohail Muhammad's Proof of Claim and in Opposition to Debtor's Objections; Docket No. 99; filed 03/07/2016…………………144

Exhibit A (Fully Redacted & Corrected) Filed by Michael J Macco on behalf of Motor Parkway Enterprises, Inc.; Docket No. 103; filed 03/08/2016………………………161

Order Directing Clerk's Office to restrict access to the document; Docket No. 104; filed 03/08/2016……………………………………..……………………..…………………..164

Order Directing Clerk's Office to restrict access to the document; Docket No. 105; filed on 03/08/2016……………………………………………..…………………………..165

Order Directing Clerk's Office to restrict access to the document; Docket No. 106; filed on 03/08/2016…………………………………………..………………………..166

Affidavit of Saverio Settanni dated 3/7/16; Docket No. 107; filed 03/09/2016……….167

Declaration of Sohail Muhammad; Docket No. 108; filed 03/09/2016………………...173

Notice to Take Deposition of Chitra Khatri; Docket No. 109; filed 03/09/2016...........224

Letter regarding interpreter attending the March 14, 2016 evidentiary hearing; Docket No. 110; filed 03/09/2016……………………………..……………………..………...227

Motion for Protective Order as well as Objection to Notice of Deposition of Chitra Khatri with Affidavit of Service dated 3/10/16; Docket No. 111; filed 03/10/2016…………..228

Reply to Objection to Notice of Deposition of Chitra Khatri and Motion for Protective Order Pursuant to Bankruptcy Rule 7026(c); Docket No. 112; filed 03/10/2016………240

Court Hearing Transcript for March 14, 2016; on the docket of Case No. 14-75671 Docket No. 145…..……………………………..……………………..…………………..243

Copy of Mr. Muhammad's passport, moved into evidence at March 14, 2016 hearing…………………………..……………………………..…………………….....248

Payroll Documents, admitted at March 14, 2016 hearing as Muhammad Exhibit 4…...251

Records from Middle Island Development Corp., admitted at March 14, 2016 hearing as Muhammad Exhibit 5……………………………..………………………..……………264

Letter to Honorable Alan S. Trust dated May 18, 2016; Docket No. 131; filed 05/19/2016…………………………..………………………..…………………..……...320

Letter to Honorable Alan S. Trust dated May 25, 2016; Docket No. 132; filed 05/25/2016…………………………..………………………..……………………….....412

Court Ruling Conference Transcript for June 21, 2016; on the docket of Case No. 75671 Docket No. 170……………………………..…………………………..……………….414

Order Disallowing and Expunging in the entirety Proof of Claim 14-1 of Mr. Muhammad; Docket No. 138; filed 06/23/2016……………………………..……….....442

Notice of Appeal; Docket No. 145; filed 07/07/2016……………………………...………443

**<u>Motor Parkway Enterprises, Inc.</u>**

**Appendix A – Volume I**

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT    Eastern District of New York | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:  Motor Parkway Enterprises, Inc. | Case Number:  8-14-75667-ast | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):  Sohail Muhammad | |
|---|---|
| Name and address where notices should be sent:  33 County Line Road  Farmingdale, NY 11735  Telephone number: (516) 225-1119    email: sohail_khanhk@yahoo.com | **COURT USE ONLY**  ☐ Check this box if this claim amends a previously filed claim.  Court Claim Number:_____  (If known)  Filed on:_____ |
| Name and address where payment should be sent (if different from above):  Telephone number:         email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:**        $                   157,354.16

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

| **2. Basis for Claim:**  Unpaid Wages  (See instruction #2) |
|---|

| **3. Last four digits of any number by which creditor identifies debtor:** | **3a. Debtor may have scheduled account as:**  (See instruction #3a) | **3b. Uniform Claim Identifier (optional):**  _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _  (See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:**

**Value of Property:** $

**Annual Interest Rate_____% ☐ Fixed  or  ☐ Variable**
**(when case was filed)**

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**
$

**Basis for perfection:**

**Amount of Secured Claim:** $

**Amount Unsecured:** $

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☑ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**
$             12,475.00

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10 (Official Form 10) (04/13)

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 9 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (See instruction #7, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☒ I am the creditor.   ☐ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Sohail Muhammad
Title:
Company:
Address and telephone number (if different from notice address above):
County Line Road
Farmingdale, NY 11735

(Signature)                    (Date) 4/3/15

Telephone number: (516) 2254119    email: sohail_khanhk@yahoo.com

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.
Items to be completed in Proof of Claim form.

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a Uniform Claim Identifier, you may report it here. A Uniform Claim Identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided in this claim is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

## ATTACHMENT TO PROOF OF CLAIM OF SOHAIL MUHAMMAD

### I. Facts

Sohail Muhammad ("Muhammad") worked as a cashier at several gas stations owned by Medford Development Corporation ("Medford"), Motor Parkway Development ("Motor Parkway"), Airport Development Corporation ("Airport"), Oceanside Enterprises, Inc. ("Oceanside"), DD Development Corporation ("DD") and Wheeler Development Corporation ("Wheeler" and collectively with Medford, Motor Parkway, Airport, Oceanside and DD, the "Debtors") from approximately 2006 through January 2015. The Debtor's mailing address is 701 W. Montauk Highway Bayshore, N.Y. 11706. Muhammad submits this proof of claim against Medford, Motor Parkway, Airport, Oceanside, DD and Wheeler, who are jointly and severally liable to Muhammad in an amount of at least **$157,354.16** in unpaid wages and liquidated damages for claims from on or about January 1, 2012 to December 24, 2014. Muhammad is also entitled to attorneys' fees and costs under both state and federal law and prejudgment interest pursuant to N.Y. CPLR. § 5001. Muhammad has similar and related claims against nondebtor third parties. Muhammad also has post-petition claims for his work from December 25, 2014 to January 2015 in the amount of **$16,100.94.**

In violation of New York Labor Law ("NYLL") and the Fair Labor Standards Act ("FLSA"), Medford: (i) failed to pay Muhammad his earned wages, correct overtime compensation and spread of hours pay for those days in which he worked over 10 hours from start to finish; (ii) failed to provide Muhammad with a wage notice in English and Muhammad's primary language, Urdu, on or before February 1st of each subsequent year of employment including information such as the rate of pay, any allowances claimed as part of the minimum wage, and rate of deductions; and (iii) failed to provide Muhammad with a wage statement with every payment of wages, listing dates of work covered by the payment of wages, rates of pay per day, gross wages, deductions and net wages. 29 U.S.C. §§ 206, 207; N.Y. Labor Law §§ 190, 195, 194; and 12 N.Y.C.R.R. § 142-2.1, 142-2.2, 142-2.4. Discovery of the Debtor's records will be necessary to quantify the wages the Debtor owes to Muhammad precisely.

At the start of his employment, Muhammad worked solely as a cashier for Oceanside Enterprise Inc. On or about January 1, 2012, he was promoted. While still performing primary duties included closing each day to approximately 14 gas stations, collecting the cash and making deposits. He kept a log for the Debtor called a 'Daily Cash Deposit' deti'll sheet. Mr. Muhammad typically worked 6 days per week for 12 hours per day taking approximately 72 hours per week. The Debtor usually paid Muhammad in two separate payments each week: one payment for $175 and one for $650. The $650 payment indicated Muhammad's hourly rate was $800 and his overtime rate was $1200. The $175 payment was paid to Muhammad by check

---

[1] Mr. Muhammad stated working for the Debtors on or around 2006 and stopped working on January 2015 but the calculations begin to run on 2009. When Mr. Muhammad's unpaid wage claim is begun and end on December 2014 (the date the Debtor filed for bankruptcy). Post-petition unpaid wages from December 2014 to Mr. Muhammad's last day of work January 2015 will be claimed by him or in manner pursued as an administrative expense according to 11 U.S.C. § 503.

1

and paid as his 'salary.' In reality, the divided payment system served as a way for Debtor to provide Muhammad with an alternate than minimum wage, while avoiding payment of a higher overtime rate. Therefore, based on his $925 weekly wage for a 72-hour work week, Muhammad's actual hourly wage was $12.84 and his actual overtime rate was $19.26. Given these figures, Muhammad should have been paid $1,156.32 per week by Debtor rather than $925. Accordingly, Muhammad is owed $231.32 per week in unpaid wages from January 1, 2012 to October 2014 (144 weeks) totaling $33,310.08.

From on or about October 2014 through December 2014, Muhammad did not receive his full wages despite continuing to work 72 hours per week. From October 2014 to on or about December 13, 2014 (approximately 10 weeks), Muhammad received only $575 per week. From December 13, 2014 to December 2014, Muhammad was not paid any wages. For his last pay period, Muhammad is still owed $874 in hourly and overtime wages.

Both federal and state law allow for liquidated damages in addition to unpaid wages in the amount of 100% of the unpaid wages in the case of federal law and in the amount of 100% under New York state law. 29 U.S.C. § 216; N.Y. Labor Law § 663. Both statutes also allow for the recovery of attorneys' fees and costs. 29 U.S.C. § 216; N.Y. Labor Law § § 198, 663. Additionally, unless otherwise provided by statute, New York allows for 9% interest on any sum awarded pursuant to N.Y. C.P.L.R. § 5004.

## II. Quantification of Categories and Damages

*Minimum Wage, Overtime Pay and Liquidated Damages*

Although these estimates could be quantified in much more detail upon receipt of discovery from the Debtor, Muhammad is owed roughly $33,310.08 in wage and overtime pay from January 1, 2012 to October 2014 (144 weeks). This is calculated by first determining Muhammad's weekly wage and overtime rate. Muhammad's weekly wage is determined by multiplying his actual hourly rate of $12.84 by 40 hours. Muhammad's weekly overtime rate is determined by multiplying his actual hourly rate of $12.84 by time-and-a-half multiplied by the number of hours over 40 that Muhammad worked per week. Next, the weekly wage rate is added to the weekly overtime rate to determine Muhammad's total weekly rate. The total weekly rate is then multiplied by 144 weeks from which the amount Muhammad was actually paid is subtracted. For example:

January 2012 to October 2014 - $33,310.08 (wage and <u>overtime pay</u> owed)
*Calculations*:
- $12.84 (actual wage rate) x 40 hours = $513.60 (required <u>weekly</u> wage pay)
- $12.84 (actual wage rate) x 1.5 = $19.26 (overtime rate) x 32 overtime hours = $616.32 (required weekly overtime)
- $513.60 (required weekly wage) + $616.32 (required weekly overtime) = $1,156.32 (required total weekly rate)
- $1,156.32 (required total weekly rate) x 144 weeks = $166,510.08 (required total) _____
- $925 (rate Debtor paid per week) x 144 weeks = $133,200 (total amount paid)
- $166,510.08 (required total) - $133,200 (total amount paid) = $33,310.08 (amount owed) _____

2

A day daily for he paid from October 2014 to December 2014 Muhammad was only paid $175 a week for 10 weeks for a total of $50. However he should have been paid $512 in wage and overtime pay for approximately 12 weeks during this period. Muhammad was owed roughly $2892 in wage and overtime pay from October 2014 to December 24, 2014. This is calculated by subtracting the total Muhammad was actually paid from the amount Muhammad was required to be paid in wages and overtime for this period. For example:

October 2014 to December 2014 $2874 (wage and overtime pay owed)

*Calculations:*

- $512 (required total weekly rate) x 12 weeks = $6574 (required total) _____
- $175 (amount Debtor paid per week) x 10 weeks = $50 (total amount paid) _____
- $6574 (required total) - $50 (total amount paid) = $2874 (amount owed) _____

    Total Unpaid Wages and Overtime Owed $2852 _____
    January 2012 to December 2014

The liquidated damages are 100% of $2852 and therefore the amount is $2734. An employee can recover both federal liquidated damages which are designed to compensate for the delay in payment and state liquidated damages which are 'punitive in nature.' *Yu G. Ke v. Saigon Grill, Inc.* 595 F.Supp.2d 240, 260 (S.D.N.Y. 2008).

*Spread of Hours Pay and Liquidated Damages*

Although these estimates could be quantified in much better detail upon receipt of discovery from the Debtor Muhammad was owed roughly $ in spread of hours pay. This is calculated by multiplying the applicable minimum wage rate for the relevant years by the number of $ in each week in which Muhammad worked more or fewer than ten hours from start to finish. For example:

January 2012 – December 2013 $ (spread-of-hours pay owed)

- 6 (days/week of $ overtime hours) x $7.25/hour (minimum wage rate) x 104 weeks = $ __

December 2013 – December 2014 $ (spread-of-hours pay owed)

- 6 (days/week of $ overtime hours) x $8.00/hour (minimum wage rate) x 51 weeks = $ __

    Total Spread of Hours Pay Owed $ _____
    January 2012 to December 2014

The liquidated damages are 100% of $ . Therefore the liquidated damages are an additional $ __

*Notice and Record-Keeping Violations*

Pursuant to N Y L L § 194-d(1) Plaintiff is entitled to $50 in damages for Debtor's failure to provide him with any wage notice on or before February first of each subsequent year of employment containing information outlined in N Y L L § 195, including information such as the rate of pay, any allowances claimed as part of the minimum wage and rate of deductions taken as required by N Y L L §§ 195.1 and 2, provide him with a statement with every payment of wages the dates of work covered by the payment of wages, rates of pay per day, gross wages, deductions and net wages as required by N Y L L § 195.3.

*Attorneys' Fees, Costs, and Prejudgment Interest*

In an amount to be determined.

*Estimated Damages Overall*

| Minimum Wage and Overtime Pay | Amount Owed |
|---|---|
| January 2012 to December 2014 | $48,652 |
| Liquidated Damages on Minimum Wage and Overtime Pay (100% under federal law and 100% under state law) | $97,304 |
| **Spread of Hours Pay** | |
| January 2012 to December 2014 | $542 |
| Liquidated Damages on Spread-of-Hours Pay Owed (100% under state law) | $542 |
| **Notice and Record-Keeping Violations** | $50 |
| **TOTAL** | **$157,354.16 + attorney's fees, costs, and prejudgment interest** |

**III. Priority Claim**

*Minimum Wage and Overtime Pay*

June 2014 - December 2014 = $9,552 _____

- $14.24 x 40 hours x 26 weeks = $9,460 (wages)

4

- $216 x 32 hours (overtime) x 26 weeks = $7752 (overtime)
- $95 (actually paid per week) x 45 weeks + $0 (payment during full period) = $4820 (unpaid)
- Total owed ($4990 + $7752 - $4820 = $662

*Spread of Hours Pay*

June 2014 - December 24 2014 _____
- 6 days/week of $5 over ten hours x minimum wage rate of $8.00 hour x 26 weeks = $48

*Notice and Record-Keeping Violations*

Wage statement violations
- 25 weeks x $100 per week = $90

Notice violations
- 27 weeks x $50 per week = $85

    Total = $85 _____

*Estimated Priority Damages Overall*

| Minimum Wage & Overtime Pay Period | Amount Owed |
|---|---|
| June 2014 - December 24 2014 | $662 |
| Spread-of-Hours Pay Owed | |
| June 2014 - December 24 2014 | $48 |
| Notice and Record Keeping Violations | |
| | $85 |
| **TOTAL OWED** | **$21,001.62 + attorney's fees, costs, and prejudgment interest** |
| **MAXIMUM PRIORITY CLAIM** | **$12,475.00** |

The Debtor owed Muhammad unpaid wages for work performed in the 180 days before the bankruptcy filing on December 24 2014. At the same wage rates outlined above for the full year of his employment in the 180 days prior to the bankruptcy filing, Muhammad's unpaid

5

wages were approximately $2062. Pursuant to 11 U.S.C. § 507(a) the maximum claim time for the bankruptcy statutory cap is $12,475. Therefore, Mr. Uhuru made a claim of $2450 as a priority claim.

## IV. POST-PETITION WAGE CLAIM

*Minimum Wage and Overtime Pay*

December 2014 – January 2015 $928
- $232 (required total weekly rate) x 4 weeks = $928

*Spread of Hours Pay*

December 2014 – December 31 2014 $48
- 6 days of 8 hrs overtime hours x $8.00 per hour (minimum wage rate) = $48

December 31 2014 – January 2015 $875 (spread-of-hours pay owed)
- 6 (days/week of 8 hrs overtime hours) x $8.75 per hour (minimum wage rate) x 5 weeks =
  $875

  Total $2375

*Notice and Record-Keeping Violations*

Wage Statement Violations
    December 2014 - January 2015 $40
    4 weeks x $10.00 per week = $40

Notice Violations
    December 2014 - January 2015 $20
    4 weeks x $5.00 per week = $20

| Minimum Wage and Overtime Pay | Amount Owed |
|---|---|
| December 2014 - January 2015 | $928 |
| Liquidated Damages on Minimum Wage and Overtime Pay (100% under federal law and 100% under state law) | $1046 |
| Spread of Hours Pay | |

6

| | |
|---|---|
| December 2014 - January 2015 | $2,375 |
| Liquidated Damages on Spread-of-Hours Pay Owed (100% under state law) | $2,375 |
| **Notice and Record-Keeping Violations** | $600 |
| **TOTAL WITHOUT LIQUIDATED DAMAGES** | $8,423 |
| **TOTAL WITH LIQUIDATED DAMAGES** | $16,994 |

7

**Fill in this information to identify the case:**

Debtor 1   Motor Parkway Enterprises, Inc.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Eastern District of New York

Case number   14-75667-ast

Official Form 410

# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

---

**Part 1:    Identify the Claim**

| | |
|---|---|
| 1. **Who is the current creditor?** | Sohail Muhammad<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. **Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes.  From whom? _____ |
| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Sohail Muhammad<br>Name<br>33 County Line Road<br>Number      Street<br>Farmingdale     NY       11735<br>City                State            ZIP Code<br><br>Contact phone  516-225-1119<br><br>Contact email  sohail_khanhk@yahoo.com<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br>__ __ __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __ | **Where should payments to the creditor be sent? (if different)**<br><br>Name<br>Number      Street<br>City                State            ZIP Code<br><br>Contact phone _____<br><br>Contact email _____ |
| 4. **Does this claim amend one already filed?** | ☐ No<br>☑ Yes.  Claim number on court claims registry (if known) _____     Filed on  04/13/2015<br>                                                                                        MM  / DD  / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes.  Who made the earlier filing? _____ |

---

Official Form 410                                   **Proof of Claim**                                   page 1

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  ____  ____  ____  ____ |
| 7. **How much is the claim?** | $_____ 117,932.00 . Does this amount include interest or other charges?<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other<br>        charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>unpaid wages and statutory liquidated damages |
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes.   The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:**   _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**                                    $_____<br>**Amount of the claim that is secured:**    $_____<br><br>**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**   $_____<br><br>**Annual Interest Rate** (when case was filed)_____%<br>☐ Fixed<br>☐ Variable |
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____ |
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

| | | |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☐ No | |
| | ☑ Yes. *Check one:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☑ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $        12,457.00 |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  03/07/2016
                  MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Richard | Elliot | Blum |
| | First name | Middle name | Last name |
| Title | Staff Attorney | | |
| Company | The Legal Aid Society | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 199 Water Street, 3rd Floor | | |
| | Number        Street | | |
| | New York | NY | 10038 |
| | City | State | ZIP Code |
| Contact phone | 212-577-3648 | Email | rblum@legal-aid.org |

### ATTACHMENT TO AMENDED PROOF OF CLAIM OF SOHAIL MUHAMMAD

**I. Facts**

From about April 1, 2012 through the end of November 2014, Sohail Muhammad worked as a traveling cashier for the Debtor as part of an entire gas station operation, owned and run by Steven Keshtgar through Sudheer Kumar.  His worked included traveling daily to fourteen gas station locations, including Motor Parkway Enterprises, Inc., to collect money and perform other tasks for the gas station and to deposit the money in the gas stations' bank accounts.  He worked between 72 and 84 hours per week.

In 2012, Mr. Muhammad was promised $800 per week in pay; in 2013, $850; in 2014, $900. He was paid in two ways.  He would receive a weekly check from Marketing Inc. of Islandia for $175 and he would be paid the remainder of the weekly amount ($625 in 2012; $675 in 2013; $725 in 2014) on a monthly basis in cash.  He would deposit a check in the amount owed, for example, in 2014, $2900 (four weeks times $725) or $3625 (five weeks times $725), payable by one Keshtgar gas station to another in the account of the payee gas station. Then, a few days later, he would be paid by that gas station in cash.  Debtor was one of the gas stations that sometimes paid him the cash portion.

Throughout the period that he worked in this job, he was never paid an overtime rate for the hours he worked over 40 in a week and he was never paid spread of hours pay for days in which his end time was more than 10 hours after his start time.

From the beginning of September 2014 to the end of November 2014 (13 weeks), Mr. Muhammad only received the weekly $175 portion of his pay; he never received the remaining weekly amount of $725.  At that time, he was working 84 hours per week.

When Mr. Muhammad was hired for the traveling cashier position in 2012, he was not provided with notification of his pay rate or other legally-mandated employment information. Nor was he ever provided with a wage statement with the cash portion of his wages.  See NYLL § 195(1) and (3).

**II. Quantification of Categories and Damages**

**A. April 1, 2012 – August 31, 2014**

    *a.  Unpaid Overtime*

The following demonstrates the amounts that Mr. Muhammad is owed for unpaid overtime rates during the period from he first started as a traveling cashier to when he stopped getting paid his full wage.  The total amount owed for that period is the sum of the last column or **$25,068**.

| Start Date | End Date | Weeks | Hours Worked per Week | Weekly Wages | Hourly Rate | OT Differential (Hourly Rate/2) | OT Owed per Week | Total OT Owed |
|---|---|---|---|---|---|---|---|---|
| 4/1/12 | 5/31/12 | 9 | 84 | $800 | $9.52 | $4.76 | $210 | $1,796 |
| 6/1/12 | 9/1/12 | 13 | 75 | $800 | $10.67 | $5.33 | $187 | $2,453 |
| 10/1/12 | 12/31/12 | 13 | 72 | $800 | $11.11 | $5.56 | $178 | $2,311 |
| 1/1/13 | 6/30/13 | 26 | 72 | $850 | $11.81 | $5.90 | $189 | $4,857 |
| 7/1/13 | 12/21/13 | 25 | 84 | $850 | $10.12 | $5.06 | $223 | $5,502 |
| 1/1/14 | 8/31/14 | 35 | 84 | $900 | $10.71 | $5.36 | $236 | $8,149 |

**TOTAL  $25,068**

In this chart, Mr. Muhammad's hourly rates of pay are determined by dividing his weekly wages by the number of hours he worked. That hourly rate is then divided in half to determine the overtime differential he was supposed to have been paid for all hours over 40 in a week. That rate is then multiplied by the applicable number of overtime hours per week and then by the number of weeks to give the total amount of unpaid overtime.

### b. Spread of Hours Pay

In addition, for the first and last of the periods listed above, Mr. Muhammad is owed spread of hours pay under state law. 12 NYCRR § 142-2.4. That is, he is owed an extra hour at the minimum wage for each day in which his work ended over time hours after it began (either six or seven days per week throughout the period). One determines his eligibility by multiplying the applicable state minimum wage ($7.25/hr. in 2012-13 and $8/hr. in 2014) by 40 hours and one-and-a-half times the minimum by the remaining hours in the week. If one then adds an extra hour at the minimum wage for each day with a spread of hours over 10, one can determine if Mr. Muhammad's total pay was less than the minimum required and if so, by how much.

Using that method, he is owed, about $19/week for the first period and about $4/week for the last period. The total owed is **$330**.

### c. Federal and State Liquidated Damages

Under 29 U.S.C. §216(b) and New York Labor Law ("NYLL") § 663(1), Mr. Muhammad is entitled to liquidated damages of 100% for violations of the FLSA and NYLL respectively. Thus, he entitled to 100% of his unpaid overtime under the FLSA, or $25,068, and 100% of his unpaid overtime and spread of hours pay under the NYLL, or $25,398 ($25,068 + $330).

### d. Total

For the period of April 1, 2012 to August 31, 2014, Mr. Muhammad is owed $25,068 (unpaid overtime) + $330 (spread of hours) + $25,068 (federal liquidated damages) + $25,398 (state liquidated damages), which equals **$75,865.**

2

### B.  September 2014-November 2014

#### a.  *Unpaid Wages*

During this period, Mr. Muhammad only received $175/week out of the $900 he was owed.  As a result for the 13 weeks, he was underpaid $725 per week or **$9,425** total.

#### b.  *Unpaid Overtime*

For the same period, using the same methodology described above and a regular rate of pay of $900/week, he is owed a total of **$3,032 in unpaid overtime**.

#### c.  *Spread of Hours*

For the same period, using the methodology described above, he is owed **$728** in spread of hours pay.

#### d.  *Liquidated Damages*

For this period, he is owed both federal and state liquidated damages.  The federal liquidated damages equal the difference between the minimum wage ($7.25) and overtime pay for 84 hour work weeks requires and the amount he was paid ($2.08/hour), which totals $10,696.

The state liquidated damages equal the full amount he is owed in unpaid wages ($9,425), overtime pay ($3,032), and spread of hours pay ($728), which totals **$13,185**.

#### e.  *Total*

For the period of September 2014 to November 2014, Mr. Muhammad is owed $9,425 (unpaid wages) + $3,032 (unpaid overtime) + $728 (spread of hours) + $10,696 (federal liquidated damages) + $13,185 (state liquidated damages), which equals **$37,066.**

### C.  Notice and Wage Statement Violations

NYLL §§198(1-b) and (1-d) impose ongoing penalties for failing to provide the employment notices and wage statements required by Section 195, capped at a maximum of $2,500 each during the applicable period.  The penalties under Section 198(1-b) applicable at the time accumulated at a rate of $50 per work week and the penalties under Section 198(1-d) applicable at the time accumulated at a rate of $100 per work week.  Since these violations continued for almost three years, Mr. Muhammad is owed an additional **$5,000** for these violations.

### D.  Grand Total

The grand total of unpaid wages, liquidated damages, and the notice/wage statement violations for Mr. Muhammad for the period April 2012 through November 2014 equal **$117,932.**

3

### E.  Priority Claim

Section 507(a)(4)(A) of the Bankruptcy Code affords priority status to claims for wages, salaries, or commissions earned within 180 days before the petition date, capped at $12,475.  Mr. Muhammad's priority claim equals the total of the unpaid wages and overtime pay for the period September to November 2014.  That sum is **$12,457.**

Case 2:16-cv-03817-JMA   Document 4-1   Filed 09/06/16   Page 20 of 250 PageID #: 457

Case 8-14-75667-ast    Claim 14-3    Filed 03/10/16    Desc Main Document    Page 1 of 3
Mar.10.2016 12:26 PM   Axiom Auto Body          16314821445          PAGE.  2/ 4

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Motor Parkway Enterprises, Inc. |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the | Eastern District of New York |
| Case number | 14-75667-ast |

Official Form 410

# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| **Part 1:** | **Identify the Claim** |
|---|---|

| | |
|---|---|
| 1. Who is the current creditor? | Sohail Muhammad <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor |
| 2. Has this claim been acquired from someone else? | ☑ No <br> ☐ Yes  From whom? |
| 3. Where should notices and payments to the creditor be sent? <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br><br> Sohail Muhammad <br> Name <br><br> 33 County Line Road <br> Number  Street <br> Farmingdale   NY   11735 <br> City   State   ZIP Code <br><br> Contact phone 516-225-1119 <br><br> Contact email sohail_khanhk@yahoo.com <br><br><br> Uniform claim identifier for electronic payments in chapter 13 (if you use one) | **Where should payments to the creditor be sent? (if different)** <br><br> Name <br><br> Number  Street <br> City   State   ZIP Code <br><br> Contact phone <br><br> Contact email |
| 4. Does this claim amend one already filed? | ☐ No <br> ☑ Yes.  Claim number on court claims registry (if known) #14    Filed on 04/17/2015 |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No <br> ☐ Yes.  Who made the earlier filing? |

Official Form 410                                Proof of Claim                                page 1

**Part 2:  Give Information About the Claim as of the Date the Case Was Filed**

6.  Do you have any number you use to identify the debtor?

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

7.  How much is the claim?   $_____117,932.00   Does this amount include interest or other charges?

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8.  What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

unpaid wages and statutory liquidated damages

9.  Is all or part of the claim secured?

☑ No
☐ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe:  _____

Basis for perfection:  _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                       $ _____
Amount of the claim that is secured:     $ _____
Amount of the claim that is unsecured:   $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:   $ _____

Annual Interest Rate (when case was filed) _____ %
☐ Fixed
☐ Variable

10.  Is this claim based on a lease?

☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.   $ _____

11.  Is this claim subject to a right of setoff?

☑ No
☐ Yes. Identify the property:  _____

Official Form 410                          Proof of Claim                          page 2

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

| | Amount entitled to priority |
|---|---|
| ☐ No | |
| ☑ Yes. Check one. | |
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☑ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $   12,457 00 |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  03/09/2016
                  MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Sohail Muhammad | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | | | |
| Company | Identify the corporate servicer as the company if the authorized agent is a servicer | | |
| Address | 33 County Line Road | | |
| | Number   Street | | |
| | Farmingdale | NY | 11735 |
| | City | State | ZIP Code |
| Contact phone | 516-225-1119 | Email | sohail_khanhk@yahoo.com |

**ATTACHMENT TO AMENDED PROOF OF CLAIM OF SOHAIL MUHAMMAD**

## I.  Facts

From about April 1, 2012 through the end of November 2014, Sohail Muhammad worked as a traveling cashier for the Debtor as part of an entire gas station operation, owned and run by Steven Keshtgar through Sudheer Kumar.  His worked included traveling daily to fourteen gas station locations, including Motor Parkway Enterprises, Inc., to collect money and perform other tasks for the gas station and to deposit the money in the gas stations' bank accounts.  He worked between 72 and 84 hours per week.

In 2012, Mr. Muhammad was promised $800 per week in pay; in 2013, $850; in 2014, $900. He was paid in two ways.  He would receive a weekly check from Marketing Inc. of Islandia for $175 and he would be paid the remainder of the weekly amount ($625 in 2012; $675 in 2013; $725 in 2014) on a monthly basis in cash.  He would deposit a check in the amount owed, for example, in 2014, $2900 (four weeks times $725) or $3625 (five weeks times $725), payable by one Keshtgar gas station to another in the account of the payee gas station. Then, a few days later, he would be paid by that gas station in cash.  Debtor was one of the gas stations that sometimes paid him the cash portion.

Throughout the period that he worked in this job, he was never paid an overtime rate for the hours he worked over 40 in a week and he was never paid spread of hours pay for days in which his end time was more than 10 hours after his start time.

From the beginning of September 2014 to the end of November 2014 (13 weeks), Mr. Muhammad only received the weekly $175 portion of his pay; he never received the remaining weekly amount of $725.  At that time, he was working 84 hours per week.

When Mr. Muhammad was hired for the traveling cashier position in 2012, he was not provided with notification of his pay rate or other legally-mandated employment information. Nor was he ever provided with a wage statement with the cash portion of his wages.  See NYLL § 195(1) and (3).

## II.  Quantification of Categories and Damages

### A.  April 1, 2012 – August 31, 2014

    *a.   Unpaid Overtime*

The following demonstrates the amounts that Mr. Muhammad is owed for unpaid overtime rates during the period from he first started as a traveling cashier to when he stopped getting paid his full wage.  The total amount owed for that period is the sum of the last column or **$25,068**.

1

| Start Date | End Date | Weeks | Hours Worked per Week | Weekly Wages | Hourly Rate | OT Differential (Hourly Rate/2) | OT Owed per Week | Total OT Owed |
|---|---|---|---|---|---|---|---|---|
| 4/1/12 | 5/31/12 | 9 | 84 | $800 | $9.52 | $4.76 | $210 | $1,796 |
| 6/1/12 | 9/1/12 | 13 | 75 | $800 | $10.67 | $5.33 | $187 | $2,453 |
| 10/1/12 | 12/31/12 | 13 | 72 | $800 | $11.11 | $5.56 | $178 | $2,311 |
| 1/1/13 | 6/30/13 | 26 | 72 | $850 | $11.81 | $5.90 | $189 | $4,857 |
| 7/1/13 | 12/21/13 | 25 | 84 | $850 | $10.12 | $5.06 | $223 | $5,502 |
| 1/1/14 | 8/31/14 | 35 | 84 | $900 | $10.71 | $5.36 | $236 | $8,149 |
| | | | | | | | TOTAL | $25,068 |

In this chart, Mr. Muhammad's hourly rates of pay are determined by dividing his weekly wages by the number of hours he worked. That hourly rate is then divided in half to determine the overtime differential he was supposed to have been paid for all hours over 40 in a week. That rate is then multiplied by the applicable number of overtime hours per week and then by the number of weeks to give the total amount of unpaid overtime.

### b. Spread of Hours Pay

In addition, for the first and last of the periods listed above, Mr. Muhammad is owed spread of hours pay under state law. 12 NYCRR § 142-2.4. That is, he is owed an extra hour at the minimum wage for each day in which his work ended over time hours after it began (either six or seven days per week throughout the period). One determines his eligibility by multiplying the applicable state minimum wage ($7.25/hr. in 2012-13 and $8/hr. in 2014) by 40 hours and one-and-a-half times the minimum by the remaining hours in the week. If one then adds an extra hour at the minimum wage for each day with a spread of hours over 10, one can determine if Mr. Muhammad's total pay was less than the minimum required and if so, by how much.

Using that method, he is owed, about $19/week for the first period and about $4/week for the last period. The total owed is **$330**.

### c. Federal and State Liquidated Damages

Under 29 U.S.C. §216(b) and New York Labor Law ("NYLL") § 663(1), Mr. Muhammad is entitled to liquidated damages of 100% for violations of the FLSA and NYLL respectively. Thus, he entitled to 100% of his unpaid overtime under the FLSA, or $25,068, and 100% of his unpaid overtime and spread of hours pay under the NYLL, or $25,398 ($25,068 + $330).

### d. Total

For the period of April 1, 2012 to August 31, 2014, Mr. Muhammad is owed $25,068 (unpaid overtime) + $330 (spread of hours) + $25,068 (federal liquidated damages) + $25,398 (state liquidated damages), which equals **$75,865.**

### B.  September 2014-November 2014

#### a.  *Unpaid Wages*

During this period, Mr. Muhammad only received $175/week out of the $900 he was owed.  As a result for the 13 weeks, he was underpaid $725 per week or **$9,425** total.

#### b.  *Unpaid Overtime*

For the same period, using the same methodology described above and a regular rate of pay of $900/week, he is owed a total of **$3,032 in unpaid overtime**.

#### c.  *Spread of Hours*

For the same period, using the methodology described above, he is owed **$728** in spread of hours pay.

#### d.  *Liquidated Damages*

For this period, he is owed both federal and state liquidated damages.  The federal liquidated damages equal the difference between the minimum wage ($7.25) and overtime pay for 84 hour work weeks requires and the amount he was paid ($2.08/hour), which totals $10,696.

The state liquidated damages equal the full amount he is owed in unpaid wages ($9,425), overtime pay ($3,032), and spread of hours pay ($728), which totals **$13,185**.

#### e.  *Total*

For the period of September 2014 to November 2014, Mr. Muhammad is owed $9,425 (unpaid wages) + $3,032 (unpaid overtime) + $728 (spread of hours) + $10,696 (federal liquidated damages) + $13,185 (state liquidated damages), which equals **$37,066.**

### C.  Notice and Wage Statement Violations

NYLL §§198(1-b) and (1-d) impose ongoing penalties for failing to provide the employment notices and wage statements required by Section 195, capped at a maximum of $2,500 each during the applicable period.  The penalties under Section 198(1-b) applicable at the time accumulated at a rate of $50 per work week and the penalties under Section 198(1-d) applicable at the time accumulated at a rate of $100 per work week.  Since these violations continued for almost three years, Mr. Muhammad is owed an additional **$5,000** for these violations.

### D.  Grand Total

The grand total of unpaid wages, liquidated damages, and the notice/wage statement violations for Mr. Muhammad for the period April 2012 through November 2014 equal **$117,932.**

### E.  Priority Claim

Section 507(a)(4)(A) of the Bankruptcy Code affords priority status to claims for wages, salaries, or commissions earned within 180 days before the petition date, capped at $12,475.  Mr. Muhammad's priority claim equals the total of the unpaid wages and overtime pay for the period September to November 2014.  That sum is **$12,457.**

UNITED STATES BANKRUPTCY COURT        **Firm ID 11-2671938**
EASTERN DISTRICT OF NEW YORK        **Pres. Date: 12/14/15 9:30 a.m.**

-----------------------------------------------------------x

In Re:                                 Chapter 11

Motor Parkway Enterprises, Inc.,           Case No.:  14-75667-AST

                      Debtor.

-----------------------------------------------------------x

## NOTICE OF PRESENTMENT OF OBJECTION TO CLAIM

SIR/MADAM:

    **PLEASE TAKE NOTICE** that an order will be presented for signature before the Honorable Alan S. Trust, United States Bankruptcy Judge, in his courtroom 960, United States Bankruptcy Court, Long Island Federal Courthouse, 290 Federal Plaza, Central Islip, New York 11722, on **December 14, 2015  @ 9:30 a.m.** The proposed order will seek an order disallowing claims as specifically set forth in the application annexed and in compliance with Bankruptcy Rule 3007, together with such other and further relief as this court deems just and proper.

    **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the proposed Order must be in writing and filed with the Clerk of the Court, United States Bankruptcy Court, Eastern District of New York, 290 Federal Plaza, Central Islip, New York, 11722, (a)(i) through the Bankruptcy Court's electronic filing system (in accordance with General Order M-242), which may be accessed (with a password which is available by contacting the Bankruptcy Court's technical assistance at 631-712-6200, Monday through Friday, 8:30 a.m. to 5:00 p.m. ) through the Internet at the Bankruptcy Court's website: www.nyeb.uscourts.gov using Netscape Navigator software version 3.0 or higher, and (ii) in portable document format (PDF) using Adobe Exchange software for conversion; or (b) if a party is unable to file electronically, such party shall submit the objection in PDF format on a diskette in an envelope with the case name, case number, type and title of document, document number of the document to which the

1

objection refers, and the file name on the outside of the envelope; or (c) if a party is unable to file electronically or use PDF format, such party shall submit the objection on a diskette in either Word, WordPerfect, or DOS text (ASC II) format. An objection filed by a party with no legal representation shall comply with section (b) or (c) as set forth in this paragraph. A hard copy of the objection, whether filed pursuant to section (a), (b), or (c), as set forth in this paragraph, shall be hand-delivered directly to the Chambers of the Honorable Alan S. Trust, and served so as to be received by Macco & Stern, LLP.,135 Pinelawn Road, Suite 120S, Melville, New York 11747, Attn: Cooper J. Macco, Esq. no later than **December 11, 2015 at 4:00 p.m.**

      **PLEASE TAKE FURTHER NOTICE** that if no objections are received the Court may enter an order granting the relief sought without further notice or hearing. In the event that objections are timely received by the Court, the Court will schedule a hearing to consider the objections at a date and time to be determined by the Court.

      **PLEASE TAKE FURTHER NOTICE** that in the event that timely objections are filed the Court shall conduct a hearing on a date to be determined by the Court.

Dated: Melville, New York
      November 9, 2015

                        MACCO & STERN, LLP.
                        Attorneys for the Debtors

                        By:    /s/ Michael J. Macco
                           MICHAEL J. MACCO
                           135 Pinelawn Road, Suite 120S
                           Melville, NY 11747
                           (631) 549-7900

2

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

In re:                                                          Case No. 14-75667 (AST)

Motor Parkway Enterprises, Inc.,                                Chapter 11

                              Debtor
------------------------------------------------------------ x

### DEBTOR'S OBJECTION TO ALLOWANCE OF CLAIM

Motor Parkway Enterprises, Inc.. (the "Debtor"), the above-referenced debtor and debtor-in-possession, by and through its counsel, Macco & Stern, LLP, hereby moves the Court for an order disallowing the proof of claim assigned claim number 14 (the "Claim") filed by Sohail Muhammad (the "Claimant"), and respectfully sets forth as follows:

### BACKGROUND

34.     The Court has jurisdiction to consider this motion under 28 U.S.C. §§157 and 1334.  This is a core proceeding under 28 U.S.C. §157(b).  Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.  The statutory predicates for relief are §502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007.1 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules").

### BACKGROUND

35.     On December 24, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

36.     On April 17, 2015, Claimant filed the Claim in the general unsecured amount of $157,354.16 (the "Claim Amount").  A copy of the Claim is annexed hereto as **Exhibit A**.

37.     The Debtor has continued to operate its business as a debtor-in-possession under Bankruptcy Code §§1107 and 1108.  To date, the Office of the United States Trustee (the "UST") has not appointed a chapter 11 trustee or official committee of unsecured creditors.

## OBJECTION

38.     Pursuant to Bankruptcy Code §502(b):

> [I]f . . . an objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that –
>
> > (4)     Such claim is unenforceable against the debtor and property of the debtor under any agreement or applicable law for a reason other than such claim is contingent or unliquidated . . .

39.     Additionally, pursuant to Bankruptcy Rule 3007(a), "[a]n objection to the allowance of a claim shall be in writing and filed.  A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant . . . at least 30 days prior to the hearing."

40.     Claimant was at no time employed by the Debtor.

41.     Upon information and belief, Claimant was an employee of a separate entity owned by Steven Keshtgar, but at no time worked for the Debtor.

42.     Debtor's books and records do not reflect any the Debtor owing Claimant any amounts because Claimant never worked for the Debtor.

43.     Accordingly, the Debtor believes the Claim should be expunged.

44.     No previous application for the relief requested herein has been made to this or any other Court.

**WHEREFORE,** the Debtors respectfully request the Court enter an order disallowing the Claim and granting such further and different relief as the Court deems just and proper.

Dated: October __, 2015
        Melville, NY

                                        **MACCO & STERN, LLP**
                                        Attorneys for the Debtors

By:   _____
                                          Michael J. Macco
                                          A Member of the Firm
                                          135 Pinelawn Road, Suite 120 South
                                          Melville, New York 11747
                                          (631) 549-7900

# EXHIBIT A

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT    Eastern District of New York | **PROOF OF CLAIM** |
|---|---|

| Name of Debtor:  Motor Parkway Enterprises, Inc. | Case Number:  8-14-75667-ast | |

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):  Sohail Muhammad | |
|---|---|

**COURT USE ONLY**

Name and address where notices should be sent:

33 County Line Road
Farmingdale, NY 11735

Telephone number: (516) 225-1119      email: sohail khanhk@yahoo.com

Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
(*If known*)

Filed on: _____

Name and address where payment should be sent (if different from above):



Telephone number:          email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**      $          157,354.16

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** __Unpaid Wages__
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as:  (See instruction #3a) | 3b. Uniform Claim Identifier (optional):  (See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe:

Value of Property: $ _____

Annual Interest Rate _____ % ☐ Fixed  or  ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$ _____

Basis for perfection: _____

Amount of Secured Claim:   $ _____

Amount Unsecured:   $ _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☑ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

Amount entitled to priority:

$          12,475.00

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

## ATTACHMENT TO PROOF OF CLAIM OF SOHAIL MUHAMMAD

### I. Facts

Sohail Muhammad ("Muhammad") worked as a cashier at several gas station locations owned by Medford Development Corporation ("Medford"), Motor Parkway Enterprises, Inc. ("Motor Parkway"), Airport Development Corporation ("Airport"), Oceanside Enterprises, Inc. ("Oceanside"), Islip Development Corporation ("Islip"), and Wheeler Development Corporation ("Wheeler," and collectively with Medford, Motor Parkway, Airport, Oceanside, and Islip, the "Debtor") from approximately 2006 through January 23, 2015. The Debtor's mailing address is 701 W. Montauk Highway Bayshore, NY 11706. Muhammad submits this proof of claim against Medford, Motor Parkway, Airport, Oceanside, Islip, and Wheeler, which are jointly and severally liable to Muhammad, in an amount of at least **$157,354.16** in unpaid wages and liquidated damages for claims from on or about January 1, 2012 to December 24, 2014.[1] Muhammad is also entitled to attorneys' fees and costs under both state and federal law and prejudgment interest pursuant to N.Y. C.P.L.R. § 5001. Mr. Muhammad has similar and related claims against non-debtor third parties. Mr. Muhammad also has post-petition claims for his work from December 25, 2014 to January 23, 2015 in the amount of **$16,100.94**.

In violation of New York Labor Law ("NYLL") and the Fair Labor Standards Act ("FLSA"), Medford: (1) failed to pay Muhammad his earned wages, correct overtime compensation, and spread of hours pay for those days in which he worked over 10 hours from start to finish; (2) failed to provide Muhammad with a wage notice in English and Muhammad's primary language, Urdu, on or before February first of each subsequent year of employment including information such as the rate of pay, any allowances claimed as part of the minimum wage, and notice of deductions; and (3) failed to provide Muhammad with a statement with every payment of wages, listing dates of work covered by the payment of wages, rates of pay per day, gross wages, deductions, and net wages. 29 U.S.C. §§ 206(a), 207(a); N.Y. Labor Law §§ 190, 193, 195, 198(1-a), 652(1); 12 N.Y.C.R.R. § 142-2.1, § 142-2.2, 142-2.4. Discovery of the Debtor's records will be necessary to quantify the wages the Debtor owes to Muhammad precisely.

At the start of his employment, Muhammad worked solely as a cashier for Oceanside Enterprises, Inc. On or about January 1, 2012 he was promoted. With this promotion, his primary duties included driving each day to approximately 14 gas station locations, collecting cash, and making deposits. He kept a log for Debtor called a "Daily Cash Deposit Detail" sheet. Mr. Muhammad typically worked 6 days per week for 12 hours per day, totaling approximately 72 hours per week. Debtor usually paid Muhammad in two separate payments each week: one payment for $175 and one for $850. The $850 payment indicated Muhammad's hourly rate was $8.00 and his overtime rate was $12.00. The $175 payment was paid to Muhammad by check

---

[1] Mr. Muhammad started working for the Debtor sometime in 2006 and stopped working on January 23, 2015, but the calculations begin on January 1, 2012, when Mr. Muhammad's unpaid wage claims began, and end on December 24, 2014 (the date the Debtor filed for bankruptcy). Post-petition unpaid wages from December 25, 2014 to Mr. Muhammad's last day of work, January 23, 2015, will be claimed by motion and pursued as an administrative expense according to 11 U.S.C. § 503.

and printed as his "salary." In reality, this divided payment system served as a way for Debtor to provide Muhammad with a higher rate than minimum wage, while avoiding payment of a higher overtime rate. Therefore, based on his $1,025 weekly wage for a 72-hour work week, Muhammad's actual hourly wage was $14.24 and his actual overtime rate was $21.36. Given these figures, Muhammad should have been paid $1,253.12 per week by Medford, rather than $1,025. Accordingly, Muhammad is owed $228.12 per week in unpaid wages from January 1, 2012 to October 3, 2014 (144 weeks), totaling $32,849.28.

From on or about October 4, 2014 through December 24, 2014, Muhammad did not receive his full wages, despite continuing to work 72 hours per week. From October 4, 2014 to on or about December 12, 2013 (approximately 10 weeks), Muhammad received only $175 per week. From December 13, 2014 to December 24, 2014, Muhammad was not paid any wages. For this last period, Muhammad is still owed $13,287.44 in hourly and overtime wages.

Both federal and state law allow for liquidated damages in addition to unpaid wages, in the amount of 100% of the unpaid wages in the case of federal law, and in the amount of 100% under New York state law. 29 U.S.C. § 216(b); N.Y. Labor Law § 663. Both statutes also allow for the recovery of attorneys' fees and costs. 29 U.S.C. § 216(b); N.Y. Labor Law §§ 198, 663. Finally, unless otherwise provided by statute, New York allows for 9% interest on any sum awarded pursuant to N.Y. C.P.L.R. § 5004.

## II. Quantification of Categories and Damages

*Minimum Wage, Overtime Pay and Liquidated Damages*

Although these estimates could be quantified in much more detail upon receipt of discovery from the Debtor, Muhammad is owed roughly $32,849.28 in wage and overtime pay from January 1, 2012 to October 3, 2014 (144 weeks). This is calculated by first determining Muhammad's weekly wage and overtime rate. Muhammad's weekly wage is determined by multiplying his actual hourly rate of $14.24 by 40 hours. Muhammad's weekly overtime rate is determined by multiplying his actual hourly rate of $14.24 by time-and-a-half multiplied by the number of hours over 40 that Muhammad worked per week. Next, the weekly wage rate is added to the weekly overtime rate to determine Muhammad's total weekly rate. The total weekly rate is then multiplied by 144 weeks, from which the amount Muhammad was actually paid is subtracted. For example:

January 1, 2012 to October 3, 2014: $\underline{\$32,849.28}$ (wage and overtime pay owed)
*Calculations*:
- $14.24 (actual wage rate) x 40 hours = $\underline{\$569.60}$ (required weekly wage pay)
- $14.24 (actual wage rate) x 1.5 = $21.36 (overtime rate) x 32 overtime hours = $\underline{\$683.52}$ (required weekly overtime)
- $569.60 (required weekly wage) + $683.52 (required weekly overtime) = $\underline{\$1,253.12}$ (required total weekly rate)
- $1,253.12 (required total weekly rate) x 144 weeks = $\underline{\$180,449.28}$ (required total)
- $1,025 (rate Debtor paid per week) x 144 weeks = $\underline{\$147,600}$ (total amount paid)
- $180,449.28 (required total) - $147,600 (total amount paid) = $\underline{\$32,849.28}$ (amount owed)

2

Additionally, for the period from October 4, 2014 to December 24, 2014, Muhammad was only paid $175 a week for 10 weeks, for a total of $1,750. However, he should have been paid $1,253.12 in wage and overtime pay for approximately 12 weeks during this period. Muhammad is owed roughly $18,299.92 in wage and overtime pay from October 4, 2014 to December 24, 2014. This is calculated by subtracting the total Muhammad was actually paid from the amount Muhammad was required to be paid in wages and overtime for this period. For example:

October 4, 2014 to December 24, 2014: $13,287.44 (wage and overtime pay owed)
*Calculations*:
- $1,253.12 (required total weekly rate) x 12 weeks = $15,037.44 (required total)
- $175 (amount Debtor paid per week) x 10 weeks = $1,750 (total amount paid)
- $15,037.44 (required total) - $1,750 (total amount paid) = $13,287.44 (amount owed)

    Total Unpaid Wages and Overtime Owed: $46,136.72
    (January 1, 2012 to December 24, 2014)

The liquidated damages are 200% of $46,136.72, and therefore amount to $92,273.44. An employee can recover both federal liquidated damages, which are designed to compensate for the delay in payment, and state liquidated damages, which are "punitive in nature." *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 264 (S.D.N.Y. 2008).

*Spread of Hours Pay and Liquidated Damages*

Although these estimates could be quantified in much better detail upon receipt of discovery from the Debtor, Muhammad is owed roughly $ in spread of hours pay. This is calculated by multiplying the applicable minimum wage rate for the relevant years by the number of shifts each week in which Muhammad worked more than ten hours from start to finish. For example:

January 1, 2012 – December 30, 2013: $4,524 (spread-of-hours-pay owed)
- 6 (days/week of shifts over ten hours) x $7.25/hour (minimum wage rate) x 104 weeks = $4,524

December 31, 2013 – December 24, 2014: $2,448 (spread-of-hours-pay owed)
- 6 (days/week of shifts over ten hours) x $8.00/hour (minimum wage rate) x 51 weeks = $2,448

    Total Spread of Hours Pay Owed: $6,972
    (January 1, 2012 to December 24, 2014)

The liquidated damages are 100% of $6,972. Therefore, the liquidated damages are an additional $6,972.

*Notice and Record-Keeping Violations*

Pursuant to NYLL § 198(1-d), Muhammad is entitled to $5,000 in damages for Debtor's failure to: (1) provide him with any wage notice, on or before February first of each subsequent year of employment containing information outlined in NYLL § 195(1), including information such as the rate of pay, any allowances claimed as part of the minimum wage, and notice of deductions taken as required by NYLL §§ 193, 195; and (2) provide him with a statement with every payment of wages, listing dates of work covered by the payment of wages, rates of pay per day, gross wages, deductions, and net wages as required by NYLL § 195(3).

*Attorneys' Fees, Costs, and Prejudgment Interest*

In an amount to be determined.

*Estimated Damages Overall*

| Minimum Wage and Overtime Pay | Amount Owed |
|---|---|
| January 1, 2012 to December 24, 2014 | $46,136.72 |
| Liquidated Damages on Minimum Wage and Overtime Pay (100% under federal law and 100% under state law) | $92,273.44 |
| **Spread of Hours Pay** | |
| January 1, 2012 to December 24, 2014 | $6,972 |
| Liquidated Damages on Spread-of-Hours Pay Owed (100% under state law) | $6,972 |
| **Notice and Record-Keeping Violations** | $5,000 |
| **TOTAL** | **$157,354.16 + attorney's fees, costs, and prejudgment interest** |

### III. Priority Claim

*Minimum Wage and Overtime Pay*

June 25, 2014 - December 24, 2014: $15,968.62
- $14.24 x 40 hours x 26 weeks = $14,809.60 (wages)

4

- $21.36 x 32 hours (overtime) x 26 weeks = $17.771.52 (overtime)
- $1,025 ($ actually paid  per week) x 14.5 weeks + $1,750 (payment during final period) = $16,612.50 (amount paid)
- Total owed ($14,809.60 + $17,771.52) – ($16,612.50) = 15,968.62

*Spread of Hours Pay*

June 25, 2014 - December, 24 2014: $1,248

- 6 days/week of shifts over ten hours x minimum wage rate of $8.00/hour x 26 weeks = $1,248

*Notice and Record-Keeping Violations*

Wage statement violations

- 25 weeks x $100 per week = $2,500

Notice violations

- 25.7 weeks x $50 per week = $1,285

Total = $3,785

*Estimated Priority Damages Overall*

| Minimum Wage & Overtime Pay Period | Amount Owed |
|---|---|
| June 25, 2014 - December, 24 2014 | $15,968.62 |
| **Spread-of-Hours Pay Owed** | |
| June 25, 2014 - December, 24 2014 | $1,248 |
| **Notice and Record Keeping Violations** | |
| | $3,785 |
| **TOTAL OWED** | **$21,001.62 + attorney's fees, costs, and prejudgment interest** |
| **MAXIMUM PRIORITY CLAIM** | **$12,475.00** |

The Debtor owed Muhammad unpaid wages for work performed in the 180 days before the bankruptcy filing on December 24, 2014. At the same wage rates outlined above for the final year of his employment, in the 180 days prior to the bankruptcy filing, Muhammad's unpaid

5

wages were approximately $21,001.62. Pursuant to 11 U.S.C. § 507(a)(4), this amount is more than the statutory cap, $12,475.00. Therefore, Muhammad claims $12,475.00 as a priority claim.

## IV. POST-PETITION WAGE CLAIM

*Minimum Wage and Overtime Pay*

December 25, 2014 – January 23, 2015: <u>$5,012.48</u>
- $1,253.12 (required total weekly rate) x 4 weeks = $5,012.48

*Spread of Hours Pay*

December 25, 2014 – December 30, 2014: <u>$48</u>
- 6 days of shifts over ten hours x $8.00/hour (minimum wage rate) = $48

December 31, 2014 – January 23, 2015: <u>$183.75</u> (spread-of-hours-pay owed)
- 6 (days/week of shifts over ten hours) x $8.75/hour (minimum wage rate) x 3.5 weeks = $183.75

Total: <u>$231.75</u>

*Notice and Record-Keeping Violations*

Wage Statement Violations
   December 25, 2014 - January 23, 2015: <u>$400</u>
   4 weeks x $100.00 per week = $400

Notice Violations
   December 25, 2014 - January 23, 2015: <u>$200</u>
   4 weeks x $50.00 per week = $200

| Minimum Wage and Overtime Pay | Amount Owed |
|---|---|
| December 25, 2014 - January 23, 2015 | $5,012.48 |
| Liquidated Damages on Minimum Wage and Overtime Pay (100% under federal law and 100% under state law) | $10,024.96 |
| **Spread of Hours Pay** | |

6

| | |
|---|---|
| December 25, 2014 - January 23, 2015 | $231.75 |
| Liquidated Damages on Spread-of-Hours Pay Owed (100% under state law) | $231.75 |
| **Notice and Record-Keeping Violations** | $600 |
| **TOTAL WITHOUT LIQUIDATED DAMAGES** | $5,844.23 |
| **TOTAL WITH LIQUIDATED DAMAGES** | $16,100.94 |

7

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                    Case No. 14-75667 (AST)

Motor Parkway Enterprises, Inc.,                          Chapter 11

                              Debtor
-------------------------------------------------------------x

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK)
COUNTY OF SUFFOLK)s:-

     Carol Smith, being duly sworn deposes that deponent is not a party to the above-caption action, is over the age of 18 years and resides at West Islip, New York.

     On November 9, 2015 deponent served the within DEBTOR'S OBJECTION TO ALLOWANCE OF CLAIM upon the following parties, at the addresses designated by said parties for that purpose, by depositing a true copy of the same, enclosed in a post-paid properly addressed wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York:

Office of the U.S. Trustee
Long Island Federal Courthouse
560 Federal Plaza
Central Islip, NY  11722

Sohail Muhammad
33 County Line Road
Farmingdale, NY  11735

                                          _Carol S_____
                                          Carol Smith

Sworn to before me this
9th day of November, 2015

_/s/ Janine M. Zarrilli_
Notary Public
_Janine M. Zarrilli_
_Notary Public, State of New York_
_No. O1ZA5084708_
_Qualified in Nassau County_
_Commission Expires September 8, 2017_

UNITED STATES BANKRUPTCY COURT      **Firm ID 11-2671938**
EASTERN DISTRICT OF NEW YORK      **Pres. Date: 12/14/15 9:30 a.m.**

---------------------------------------------------------x

In Re:                             Chapter 11

Motor Parkway Enterprises, Inc.,         Case No.: 14-75667-AST

                    Debtor.

---------------------------------------------------------x

## NOTICE OF PRESENTMENT OF OBJECTION TO CLAIM

SIR/MADAM:

       **PLEASE TAKE NOTICE** that an order will be presented for signature before the Honorable Alan S. Trust, United States Bankruptcy Judge, in his courtroom 960, United States Bankruptcy Court, Long Island Federal Courthouse, 290 Federal Plaza, Central Islip, New York 11722, on **December 14, 2015 @ 9:30 a.m.** The proposed order will seek an order disallowing claims as specifically set forth in the application annexed and in compliance with Bankruptcy Rule 3007, together with such other and further relief as this court deems just and proper.

       **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the proposed Order must be in writing and filed with the Clerk of the Court, United States Bankruptcy Court, Eastern District of New York, 290 Federal Plaza, Central Islip, New York, 11722, (a)(i) through the Bankruptcy Court's electronic filing system (in accordance with General Order M-242), which may be accessed (with a password which is available by contacting the Bankruptcy Court's technical assistance at 631-712-6200, Monday through Friday, 8:30 a.m. to 5:00 p.m. ) through the Internet at the Bankruptcy Court's website: www.nyeb.uscourts.gov using Netscape Navigator software version 3.0 or higher, and (ii) in portable document format (PDF) using Adobe Exchange software for conversion; or (b) if a party is unable to file electronically, such party shall submit the objection in PDF format on a diskette in an envelope with the case name, case number, type and title of document, document number of the document to which the

1

objection refers, and the file name on the outside of the envelope; or (c) if a party is unable to file electronically or use PDF format, such party shall submit the objection on a diskette in either Word, WordPerfect, or DOS text (ASC II) format. An objection filed by a party with no legal representation shall comply with section (b) or (c) as set forth in this paragraph. A hard copy of the objection, whether filed pursuant to section (a), (b), or (c), as set forth in this paragraph, shall be hand-delivered directly to the Chambers of the Honorable Alan S. Trust, and served so as to be received by Macco & Stern, LLP.,135 Pinelawn Road, Suite 120S, Melville, New York 11747, Attn:  Cooper J. Macco, Esq. no later than **December 11, 2015 at 4:00 p.m.**

       **PLEASE TAKE FURTHER NOTICE** that if no objections are received the Court may enter an order granting the relief sought without further notice or hearing.  In the event that objections are timely received by the Court, the Court will schedule a hearing to consider the objections at a date and time to be determined by the Court.

       **PLEASE TAKE FURTHER NOTICE** that in the event that timely objections are filed the Court shall conduct a hearing on a date to be determined by the Court.

Dated:  Melville, New York
      November 9, 2015

               MACCO & STERN, LLP.
               Attorneys for the Debtors

               By:____/s/ Michael J. Macco____
                  MICHAEL J. MACCO
                  135 Pinelawn Road, Suite 120S
                  Melville, NY  11747
                  (631) 549-7900

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

In re:                                                                    Case No. 14-75667 (AST)

Motor Parkway Enterprises, Inc.,                                          Chapter 11

                                        Debtor
-------------------------------------------------------------- x

### DEBTOR'S OBJECTION TO ALLOWANCE OF CLAIM

Motor Parkway Enterprises, Inc.. (the "Debtor"), the above-referenced debtor and debtor-in-possession, by and through its counsel, Macco & Stern, LLP, hereby moves the Court for an order disallowing the proof of claim assigned claim number 14 (the "Claim") filed by Sohail Muhammad (the "Claimant"), and respectfully sets forth as follows:

### BACKGROUND

34.     The Court has jurisdiction to consider this motion under 28 U.S.C. §§157 and 1334. This is a core proceeding under 28 U.S.C. §157(b). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. The statutory predicates for relief are §502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007.1 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules").

### BACKGROUND

35.     On December 24, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

36.     On April 17, 2015, Claimant filed the Claim in the general unsecured amount of $157,354.16 (the "Claim Amount"). A copy of the Claim is annexed hereto as **Exhibit A**.

37.     The Debtor has continued to operate its business as a debtor-in-possession under Bankruptcy Code §§1107 and 1108.   To date, the Office of the United States Trustee (the "UST") has not appointed a chapter 11 trustee or official committee of unsecured creditors.

## OBJECTION

38.     Pursuant to Bankruptcy Code §502(b):

> [I]f . . . an objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that –
>
> > (4)     Such claim is unenforceable against the debtor and property of the debtor under any agreement or applicable law for a reason other than such claim is contingent or unliquidated . . .

39.     Additionally, pursuant to Bankruptcy Rule 3007(a), "[a]n objection to the allowance of a claim shall be in writing and filed.  A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant . . . at least 30 days prior to the hearing."

40.     Claimant was at no time employed by the Debtor.

41.     Upon information and belief, Claimant was an employee of a separate entity owned by Steven Keshtgar, but at no time worked for the Debtor.

42.     Debtor's books and records do not reflect any the Debtor owing Claimant any amounts because Claimant never worked for the Debtor.

43.     Accordingly, the Debtor believes the Claim should be expunged.

44.     No previous application for the relief requested herein has been made to this or any other Court.

**WHEREFORE,** the Debtors respectfully request the Court enter an order disallowing the Claim and granting such further and different relief as the Court deems just and proper.

Dated: October ___, 2015
      Melville, NY

                                **MACCO & STERN, LLP**
                                Attorneys for the Debtors

By:     _____

                                  Michael J. Macco
                                  A Member of the Firm
                                  135 Pinelawn Road, Suite 120 South
                                  Melville, New York 11747
                                  (631) 549-7900

# EXHIBIT A

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT     Eastern District of New York | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: Motor Parkway Enterprises, Inc. | Case Number: 8-14-75667-ast |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property): Sohail Muhammad | |
|---|---|

Name and address where notices should be sent:

33 County Line Road
Farmingdale, NY 11735

Telephone number: (516) 225-1119     email: sohail_khanhk@yahoo.com

**COURT USE ONLY**

Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
(*If known*)

Filed on: _____

Name and address where payment should be sent (if different from above):

Telephone number:     email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. **Amount of Claim as of Date Case Filed:**     $ _____ 157,354.16

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. **Basis for Claim:** __Unpaid Wages__
(See instruction #2)

| 3. **Last four digits of any number by which creditor identifies debtor:** _____ | 3a. **Debtor may have scheduled account as:** _____ (See instruction #3a) | 3b. **Uniform Claim Identifier (optional):** _____ (See instruction #3b) |
|---|---|---|

4. **Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
**Describe:**

**Value of Property:** $_____

**Annual Interest Rate** _____% ☐ Fixed  or  ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$ _____

**Basis for perfection:** _____

**Amount of Secured Claim:**   $ _____

**Amount Unsecured:**   $ _____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☑ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**

$ _____ 12,475.00

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. **Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

## ATTACHMENT TO PROOF OF CLAIM OF SOHAIL MUHAMMAD

### I. Facts

Sohail Muhammad ("Muhammad") worked as a cashier at several gas station locations owned by Medford Development Corporation ("Medford"), Motor Parkway Enterprises, Inc. ("Motor Parkway"), Airport Development Corporation ("Airport"), Oceanside Enterprises, Inc. ("Oceanside"), Islip Development Corporation ("Islip"), and Wheeler Development Corporation ("Wheeler," and collectively with Medford, Motor Parkway, Airport, Oceanside, and Islip, the "Debtor") from approximately 2006 through January 23, 2015. The Debtor's mailing address is 701 W. Montauk Highway Bayshore, NY 11706. Muhammad submits this proof of claim against Medford, Motor Parkway, Airport, Oceanside, Islip, and Wheeler, which are jointly and severally liable to Muhammad, in an amount of at least **$157,354.16** in unpaid wages and liquidated damages for claims from on or about January 1, 2012 to December 24, 2014.[1] Muhammad is also entitled to attorneys' fees and costs under both state and federal law and prejudgment interest pursuant to N.Y. C.P.L.R. § 5001. Mr. Muhammad has similar and related claims against non-debtor third parties. Mr. Muhammad also has post-petition claims for his work from December 25, 2014 to January 23, 2015 in the amount of **$16,100.94**.

In violation of New York Labor Law ("NYLL") and the Fair Labor Standards Act ("FLSA"), Medford: (1) failed to pay Muhammad his earned wages, correct overtime compensation, and spread of hours pay for those days in which he worked over 10 hours from start to finish; (2) failed to provide Muhammad with a wage notice in English and Muhammad's primary language, Urdu, on or before February first of each subsequent year of employment including information such as the rate of pay, any allowances claimed as part of the minimum wage, and notice of deductions; and (3) failed to provide Muhammad with a statement with every payment of wages, listing dates of work covered by the payment of wages, rates of pay per day, gross wages, deductions, and net wages. 29 U.S.C. §§ 206(a), 207(a); N.Y. Labor Law §§ 190, 193, 195, 198(1-a), 652(1); 12 N.Y.C.R.R. § 142-2.1, § 142-2.2, 142-2.4. Discovery of the Debtor's records will be necessary to quantify the wages the Debtor owes to Muhammad precisely.

At the start of his employment, Muhammad worked solely as a cashier for Oceanside Enterprises, Inc. On or about January 1, 2012 he was promoted. With this promotion, his primary duties included driving each day to approximately 14 gas station locations, collecting cash, and making deposits. He kept a log for Debtor called a "Daily Cash Deposit Detail" sheet. Mr. Muhammad typically worked 6 days per week for 12 hours per day, totaling approximately 72 hours per week. Debtor usually paid Muhammad in two separate payments each week: one payment for $175 and one for $850. The $850 payment indicated Muhammad's hourly rate was $8.00 and his overtime rate was $12.00. The $175 payment was paid to Muhammad by check

---

[1] Mr. Muhammad started working for the Debtor sometime in 2006 and stopped working on January 23, 2015, but the calculations begin on January 1, 2012, when Mr. Muhammad's unpaid wage claims began, and end on December 24, 2014 (the date the Debtor filed for bankruptcy). Post-petition unpaid wages from December 25, 2014 to Mr. Muhammad's last day of work, January 23, 2015, will be claimed by motion and pursued as an administrative expense according to 11 U.S.C. § 503.

and printed as his "salary." In reality, this divided payment system served as a way for Debtor to provide Muhammad with a higher rate than minimum wage, while avoiding payment of a higher overtime rate. Therefore, based on his $1,025 weekly wage for a 72-hour work week, Muhammad's actual hourly wage was $14.24 and his actual overtime rate was $21.36. Given these figures, Muhammad should have been paid $1,253.12 per week by Medford, rather than $1,025. Accordingly, Muhammad is owed $228.12 per week in unpaid wages from January 1, 2012 to October 3, 2014 (144 weeks), totaling $32,849.28.

From on or about October 4, 2014 through December 24, 2014, Muhammad did not receive his full wages, despite continuing to work 72 hours per week. From October 4, 2014 to on or about December 12, 2013 (approximately 10 weeks), Muhammad received only $175 per week. From December 13, 2014 to December 24, 2014, Muhammad was not paid any wages. For this last period, Muhammad is still owed $13,287.44 in hourly and overtime wages.

Both federal and state law allow for liquidated damages in addition to unpaid wages, in the amount of 100% of the unpaid wages in the case of federal law, and in the amount of 100% under New York state law. 29 U.S.C. § 216(b); N.Y. Labor Law § 663. Both statutes also allow for the recovery of attorneys' fees and costs. 29 U.S.C. § 216(b); N.Y. Labor Law §§ 198, 663. Finally, unless otherwise provided by statute, New York allows for 9% interest on any sum awarded pursuant to N.Y. C.P.L.R. § 5004.

## II. Quantification of Categories and Damages

*Minimum Wage, Overtime Pay and Liquidated Damages*

Although these estimates could be quantified in much more detail upon receipt of discovery from the Debtor, Muhammad is owed roughly $32,849.28 in wage and overtime pay from January 1, 2012 to October 3, 2014 (144 weeks). This is calculated by first determining Muhammad's weekly wage and overtime rate. Muhammad's weekly wage is determined by multiplying his actual hourly rate of $14.24 by 40 hours. Muhammad's weekly overtime rate is determined by multiplying his actual hourly rate of $14.24 by time-and-a-half multiplied by the number of hours over 40 that Muhammad worked per week. Next, the weekly wage rate is added to the weekly overtime rate to determine Muhammad's total weekly rate. The total weekly rate is then multiplied by 144 weeks, from which the amount Muhammad was actually paid is subtracted. For example:

January 1, 2012 to October 3, 2014: $32,849.28 (wage and overtime pay owed)
*Calculations*:

- $14.24 (actual wage rate) x 40 hours = $569.60 (required weekly wage pay)
- $14.24 (actual wage rate) x 1.5 = $21.36 (overtime rate) x 32 overtime hours = $683.52 (required weekly overtime)
- $569.60 (required weekly wage) + $683.52 (required weekly overtime) = $1,253.12 (required total weekly rate)
- $1,253.12 (required total weekly rate) x 144 weeks = $180,449.28 (required total)
- $1,025 (rate Debtor paid per week) x 144 weeks = $147,600 (total amount paid)
- $180,449.28 (required total) - $147,600 (total amount paid) = $32,849.28 (amount owed)

Additionally, for the period from October 4, 2014 to December 24, 2014, Muhammad was only paid $175 a week for 10 weeks, for a total of $1,750. However, he should have been paid $1,253.12 in wage and overtime pay for approximately 12 weeks during this period. Muhammad is owed roughly $18,299.92 in wage and overtime pay from October 4, 2014 to December 24, 2014. This is calculated by subtracting the total Muhammad was actually paid from the amount Muhammad was required to be paid in wages and overtime for this period. For example:

October 4, 2014 to December 24, 2014: $13,287.44 (wage and overtime pay owed)
*Calculations*:
- $1,253.12 (required total weekly rate) x 12 weeks = $15,037.44 (required total)
- $175 (amount Debtor paid per week) x 10 weeks = $1,750 (total amount paid)
- $15,037.44 (required total) - $1,750 (total amount paid) = $13,287.44 (amount owed)

Total Unpaid Wages and Overtime Owed: $46,136.72
(January 1, 2012 to December 24, 2014)

The liquidated damages are 200% of $46,136.72, and therefore amount to $92,273.44. An employee can recover both federal liquidated damages, which are designed to compensate for the delay in payment, and state liquidated damages, which are "punitive in nature." *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 264 (S.D.N.Y. 2008).

*Spread of Hours Pay and Liquidated Damages*

Although these estimates could be quantified in much better detail upon receipt of discovery from the Debtor, Muhammad is owed roughly $ in spread of hours pay. This is calculated by multiplying the applicable minimum wage rate for the relevant years by the number of shifts each week in which Muhammad worked more than ten hours from start to finish. For example:

January 1, 2012 – December 30, 2013: $4,524 (spread-of-hours-pay owed)
- 6 (days/week of shifts over ten hours) x $7.25/hour (minimum wage rate) x 104 weeks = $4,524

December 31, 2013 – December 24, 2014: $2,448 (spread-of-hours-pay owed)
- 6 (days/week of shifts over ten hours) x $8.00/hour (minimum wage rate) x 51 weeks = $2,448

Total Spread of Hours Pay Owed: $6,972
(January 1, 2012 to December 24, 2014)

The liquidated damages are 100% of $6,972. Therefore, the liquidated damages are an additional $6,972.

3

*Notice and Record-Keeping Violations*

Pursuant to NYLL § 198(1-d), Muhammad is entitled to $5,000 in damages for Debtor's failure to: (1) provide him with any wage notice, on or before February first of each subsequent year of employment containing information outlined in NYLL § 195(1), including information such as the rate of pay, any allowances claimed as part of the minimum wage, and notice of deductions taken as required by NYLL §§ 193, 195; and (2) provide him with a statement with every payment of wages, listing dates of work covered by the payment of wages, rates of pay per day, gross wages, deductions, and net wages as required by NYLL § 195(3).

*Attorneys' Fees, Costs, and Prejudgment Interest*

In an amount to be determined.

*Estimated Damages Overall*

| Minimum Wage and Overtime Pay | Amount Owed |
|---|---|
| January 1, 2012 to December 24, 2014 | $46,136.72 |
| Liquidated Damages on Minimum Wage and Overtime Pay (100% under federal law and 100% under state law) | $92,273.44 |
| **Spread of Hours Pay** | |
| January 1, 2012 to December 24, 2014 | $6,972 |
| Liquidated Damages on Spread-of-Hours Pay Owed (100% under state law) | $6,972 |
| **Notice and Record-Keeping Violations** | $5,000 |
| **TOTAL** | **$157,354.16 + attorney's fees, costs, and prejudgment interest** |

## III. Priority Claim

*Minimum Wage and Overtime Pay*

June 25, 2014 - December 24, 2014: $15,968.62
- $14.24 x 40 hours x 26 weeks = $14,809.60 (wages)

4

- $21.36 x 32 hours (overtime) x 26 weeks = $17,771.52 (overtime)
- $1,025 ($ actually paid per week) x 14.5 weeks + $1,750 (payment during final period) = $16,612.50 (amount paid)
- Total owed ($14,809.60 + $17,771.52) – ($16,612.50) = 15,968.62

*Spread of Hours Pay*

June 25, 2014 - December, 24 2014: $1,248
- 6 days/week of shifts over ten hours x minimum wage rate of $8.00/hour x 26 weeks = $1,248

*Notice and Record-Keeping Violations*

Wage statement violations
- 25 weeks x $100 per week = $2,500

Notice violations
- 25.7 weeks x $50 per week = $1,285

   Total = $3,785

*Estimated Priority Damages Overall*

| Minimum Wage & Overtime Pay Period | Amount Owed |
|---|---|
| June 25, 2014 - December, 24 2014 | $15,968.62 |
| **Spread-of-Hours Pay Owed** | |
| June 25, 2014 - December, 24 2014 | $1,248 |
| **Notice and Record Keeping Violations** | |
| | $3,785 |
| **TOTAL OWED** | **$21,001.62 + attorney's fees, costs, and prejudgment interest** |
| **MAXIMUM PRIORITY CLAIM** | **$12,475.00** |

The Debtor owed Muhammad unpaid wages for work performed in the 180 days before the bankruptcy filing on December 24, 2014. At the same wage rates outlined above for the final year of his employment, in the 180 days prior to the bankruptcy filing, Muhammad's unpaid

5

wages were approximately $21,001.62. Pursuant to 11 U.S.C. § 507(a)(4), this amount is more than the statutory cap, $12,475.00. Therefore, Muhammad claims $12,475.00 as a priority claim.

## IV. POST-PETITION WAGE CLAIM

*Minimum Wage and Overtime Pay*

December 25, 2014 – January 23, 2015: $5,012.48
- $1,253.12 (required total weekly rate) x 4 weeks = $5,012.48

*Spread of Hours Pay*

December 25, 2014 – December 30, 2014: $48
- 6 days of shifts over ten hours x $8.00/hour (minimum wage rate) = $48

December 31, 2014 – January 23, 2015: $183.75 (spread-of-hours-pay owed)
- 6 (days/week of shifts over ten hours) x $8.75/hour (minimum wage rate) x 3.5 weeks = $183.75

    Total: $231.75

*Notice and Record-Keeping Violations*

Wage Statement Violations
    December 25, 2014 - January 23, 2015: $400
    4 weeks x $100.00 per week = $400

Notice Violations
    December 25, 2014 - January 23, 2015: $200
    4 weeks x $50.00 per week = $200

| Minimum Wage and Overtime Pay | Amount Owed |
|---|---|
| December 25, 2014 - January 23, 2015 | $5,012.48 |
| Liquidated Damages on Minimum Wage and Overtime Pay (100% under federal law and 100% under state law) | $10,024.96 |
| **Spread of Hours Pay** | |

6

| | |
|---|---|
| December 25, 2014 - January 23, 2015 | $231.75 |
| Liquidated Damages on Spread-of-Hours Pay Owed (100% under state law) | $231.75 |
| **Notice and Record-Keeping Violations** | $600 |
| **TOTAL WITHOUT LIQUIDATED DAMAGES** | $5,844.23 |
| **TOTAL WITH LIQUIDATED DAMAGES** | $16,100.94 |

7

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

In re:                                                         Case No. 14-75667 (AST)

Motor Parkway Enterprises, Inc.,                               Chapter 11

                                    Debtor
------------------------------------------------------------ x

## **AFFIDAVIT OF SERVICE**

STATE OF NEW YORK)
COUNTY OF SUFFOLK)s:-

        Carol Smith, being duly sworn deposes that deponent is not a party to the above-
captioned action, is over the age of 18 years and resides at West Islip, New York.

        On November 9, 2015 deponent served the within DEBTOR'S OBJECTION TO
ALLOWANCE OF CLAIM upon the following parties, at the addresses designated by said
parties for that purpose, by depositing a true copy of the same, enclosed in a post-paid properly
addressed wrapper in an official depository under the exclusive care and custody of the United
States Postal Service within the State of New York:

Office of the U.S. Trustee
Long Island Federal Courthouse
560 Federal Plaza
Central Islip, NY 11722

Sohail Muhammad
33 County Line Road
Farmingdale, NY 11735

                                                         _____
                                                         Carol Smith

Sworn to before me this
9th day of November, 2015

*/s/ Janine M. Zarrilli*
Notary Public
*Janine M. Zarrilli*
*Notary Public, State of New York*
*No. O1ZA5084708*
*Qualified in Nassau County*
*Commission Expires September 8, 2017*

KAYE SCHOLER LLP
Scott D. Talmadge
Holly M. Martin
250 West 55th Street
New York, New York 10019
Telephone: (212) 836-8000
Facsimile:  (212) 835-8689
*Attorneys for Sohail Muhammad*

**Hearing Date: February 10, 2016 at 2:00 p.m.**
**Objection Deadline: February 3, 2016**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
In re:                                                        :
                                                              :   Chapter 11
Motor Parkway Enterprises, Inc.,                              :   Case No. : 14-75667-ast
                                                              :
                       Debtor.                                :
-------------------------------------------------------------x

### MOTION OF SOHAIL MUHAMMAD FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE PRIORITY WAGE CLAIM AGAINST MOTOR PARKWAY ENTERPRISES, INC.

Sohail Muhammad, by and through his undersigned attorneys, respectfully submits this motion for the allowance and payment of an administrative priority wage claim (the "Motion") against Motor Parkway Enterprises, Inc. ("Motor Parkway" or the "Debtor").  In support of the Motion, Mr. Muhammad respectfully represents as follows:

### PRELIMINARY STATEMENT

1.      Mr. Muhammad was a low wage, limited English proficiency hourly employee of Motor Parkway.  Since 2006, he worked as a "cashier" for the Debtor's Long Island gas station, regularly working twelve hours a day, six days a week.  He continued working after the Debtor filed for bankruptcy on December 24, 2014, for which he has not been paid legally required minimum wage or his agreed upon wage of hire, overtime pay, and spread of hours pay.  Nor did the Debtor provide Mr. Muhammad with wage notices in English and in his primary language,

1

Urdu, as required by New York Labor Law ("NYLL") § 195.  As detailed in Schedule I, Mr. Muhammad worked through January 23, 2015.

2.      The Debtor operated as long as it did because Mr. Muhammad worked long hours.  Mr. Muhammad has received nothing from the Debtor or anyone else for his post-petition work.  Accordingly, Mr. Muhammad seeks administrative expense priority for his claim against the Debtor for his unpaid post-petition wages and related federal and state law penalties.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

4.      Venue over this matter is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

## PROCEDURAL BACKGROUND

6.      On December 24, 2014, Motor Parkway commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.  Initially, Motor Parkway's case was jointly administered with several other debtor entities.[1]  However, on July 21, 2015, following the conversion of many of those cases to chapter 7 cases, the Court vacated its prior order for joint administration. [D.I. 33].

7.      Mr. Muhammad filed a proof of claim against the Debtor.  A copy of that proof of claim, executed under penalty of perjury (the "Proof of Claim") is attached to this Motion as

---

[1] This Motion does not affect other debtor entities that filed for bankruptcy the same day, namely: Medford Development Corp. (14-75666), Holbrook Development Corp. (14-75671), Airport Development Corp. (14-75683), Wheeler Development Corp. (14-75668), Smithtown Development Corp. (14-75669), Brentwood Development Corp. (14-75670), Carman Development Corp. (14-75672), Ronkonkoma Development Corp. (14-75676), Islandia Development Corp. (14-75677), Oceanside Enterprises, Inc. (14-75678), Islip Development Corp. (14-75679), Westbury Enterprises Inc. (14-75680), Port Jefferson Development Corp. (14-75675) and Maple Avenue Hauppauge Development Corp. (14-75674).

Exhibit B.[2]  The Proof of Claim includes a description and calculation of Mr. Muhammad's post-petition administrative expense claim against the Debtor.[3]

**RELIEF REQUESTED**

8.      Pre-petition, and for some time after each petition date, Motor Parkway operated a gas station on Long Island.  Mr. Muhammad was employed by Motor Parkway as a gas station "cashier" following the petition date, as reflected on Schedule I.

9.      Mr. Muhammad respectfully requests that his claim for post-petition wages and penalties arising under federal and state law for failure to pay post-petition wages be treated as an administrative expense claim against Motor Parkway pursuant to Section 503(b)(1)(A)(i) of the Bankruptcy Code.

10.      As further detailed in the Proof of Claim, Motor Parkway violated the New York Labor Law and the Fair Labor Standards Act, the latter codified in 29 U.S.C. §§ 201 et. seq. (the "FLSA").  Motor Parkway failed to pay Mr. Muhammad minimum wage or his agreed upon wage of hire, overtime compensation for certain time periods and spread of hours pay for those days in which he worked shifts over ten hours from start to finish in violation of Sections 206(a) and 207(a) of the FLSA and Sections 191 and 652 of the NYLL.  Furthermore, the Debtor failed to provide Mr. Muhammad with a wage notice in his native language or a statement with every payment of wages, listing dates of work covered by the payment of wages, rates, pay per day, gross wages, deductions and net wages in violation of Section 195 of the NYLL.  In the case of

---

[2] The Proof of Claim describes what Mr. Muhammad is owed for both pre-petition and post-petition work.

[3] As explained herein and in the Proof of Claim, Mr. Muhammad never received a wage statement during his employment with the Debtor.  Accordingly, Mr. Muhammad's claims herein are necessarily good faith estimates of the total amount he is owed.  Mr. Muhammad will revise the calculation of his claims as necessary should he obtain the Debtors' relevant records.

these violations, both federal and state law provide that Mr. Muhammad is entitled to liquidated damages in addition to unpaid wages in the amount of 100% of the unpaid wages.   FLSA § 216(b); NYLL § 663.  Mr. Muhammad's administrative expense wage claim is summarized on Schedule I hereto.

11.    Mr. Muhammad continued working for the Debtor even after the Debtor voluntarily commenced its bankruptcy case, despite the fact that he was not being paid for his work.  During this time, the Debtor accrued the federal and state violations described above.

12.    Post-petition wage claims are properly characterized as administrative expenses and are entitled to priority status under Section 503(b)(1)(A) of the Bankruptcy Code. Specifically, "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including the actual, necessary costs and expenses of preserving the estate including wages, salaries, and commissions for services rendered after the commencement of the case . . ." 11 U.S.C. § 503(b)(1)(A)(i).

13.    As evidenced by the Proof of Claim, the Debtor's failure to pay Mr. Muhammad post-petition wages left him without compensation for months.  Mr. Muhammad's claim for post-petition unpaid wages is plainly entitled to administrative expense priority under Section 503(b)(1)(A) of the Bankruptcy Code.   Furthermore, federal and state law penalties imposed resulting from the Debtor's failure to pay Mr. Muhammad as required by law are also entitled to administrative expense priority status under Section 503(b)(1)(A) of the Bankruptcy Code.  *See In re Metro Fulfillment, Inc.*, 294 B.R. 306, 312 (B.A.P. 9th Cir. 2003).  For example, in *Metro Fulfillment*, as here, the debtor failed to pay its packing and shipping department employees any post-petition wages.  The debtor there was liable for state law penalties, which, along with the employees' post-petition wages owed were given administrative claim priority status.  *See id.* at

4

308.  In reversing the bankruptcy court's decision with respect to administrative expense priority for penalties arising out of failure to pay post-petition wages, the Ninth Circuit Bankruptcy Appellate Panel held that "the [penalty] obligations here at issue . . . arose out of Debtor's failure postpetition to comply with its obligations under state law." *Id.* at 312.  The situation here is no different.

## RESERVATION OF RIGHTS

14.    Mr. Muhammad reserves the right to amend, modify, or supplement his request for an administrative expense priority claim at any time and in any respect.

## CONCLUSION

WHEREFORE, Mr. Muhammad respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit A, (i) approving and allowing the post-petition portion of Mr. Muhammad's claim as an administrative expense claim against the Debtor pursuant to Section 503(b)(1)(A)(i) of the Bankruptcy Code, (ii) providing that the post-petition portion of Mr. Muhammad's claim be paid as an administrative priority claim pursuant to Section 507(a)(2) of the Bankruptcy Code and (iii) granting Mr. Muhammad such other and further relief as is just and proper.

Dated: New York, New York
January 8, 2016

By:      s/ Scott D. Talmadge

KAYE SCHOLER LLP
Scott D. Talmadge
Holly M. Martin
250 West 55th Street
New York, New York 10019
Telephone: (212) 836-8000
Facsimile:  (212) 835-8689

*Attorneys for Sohail Muhammad*

6

Schedule I

| Employee Claimant | Post-Petition Wage Period | Wages Owed | Notice and Record Keeping Violations | Federal And State Penalties | Administrative Expense Claim |
|---|---|---|---|---|---|
| Sohail Muhammad | 12/25/2014-1/23/2015 | $5,244.23 | $600 | $10,256.71 | $16,100.94 |

KAYE SCHOLER LLP
Scott D. Talmadge
Holly M. Martin
250 West 55th Street
New York, New York 10019
Telephone: (212) 836-8000
Facsimile:  (212) 835-8689
*Attorneys for Sohail Muhammad*

**Hearing Date: February 10, 2016**
**Objection Deadline: February 3, 2016**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re:                                                          :
                                                                :     Chapter 11
Motor Parkway Enterprises, Inc.,                                :     Case No. : 14-75667-ast
                                                                :
                    Debtor.                                     :
------------------------------------------------------------x

<u>**NOTICE OF THE MOTION OF SOHAIL MUHAMMAD FOR ALLOWANCE AND**</u>
<u>**PAYMENT OF ADMINISTRATIVE PRIORITY WAGE CLAIM AGAINST MOTOR**</u>
<u>**PARKWAY ENTERPRISES, INC.**</u>

**PLEASE TAKE NOTICE** that on January 8, 2016, Sohail Muhammad, by and through his

undersigned attorneys, has respectfully submitted the *Motion of Sohail Muhammad for Allowance and*

*Payment of Administrative Priority Wage Claim Against Motor Parkway Enterprises, Inc.* (the

"<u>Motion</u>").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion is scheduled for

**February 10, 2016 at 2:00 p.m. (Eastern Time)**, or as soon thereafter as counsel may be heard,

before the Honorable Alan S. Trust, United States Bankruptcy Judge, at the United States Bankruptcy

Court for the Eastern District of New York, Alfonse M. D'Amato Federal Courthouse, 290 Federal

Plaza, Central Islip, New York 11722.

**PLEASE TAKE FURTHER NOTICE** that the responses and objections, if any, to the

Motion and the relief requested herein are due on **February 3, 2016**, and must be made in writing,

1

conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York and be filed with the Bankruptcy Court electronically in accordance with General Order M-242.  Only those responses that are timely filed, served and received will be considered at the hearing.

      **PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the objection deadline, relief requested therein may be deemed unopposed, and may be granted by the Bankruptcy Court without a hearing.

Dated:  New York, New York
       January 8, 2016

<div align="right">

By:    *s/ Scott D. Talmadge*

KAYE SCHOLER LLP
Scott D. Talmadge
Holly M. Martin
250 West 55th Street
New York, New York 10019
Telephone: (212) 836-8000
Facsimile:  (212) 835-8689

*Attorneys for Sohail Muhammad*

</div>

2

# EXHIBIT A

KAYE SCHOLER LLP
Scott D. Talmadge
Holly M. Martin
250 West 55th Street
New York, New York 10019
Telephone: (212) 836-8000
Facsimile: (212) 835-8689
*Attorneys for Sohail Muhammad*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re:                                              :
                                                    :    Chapter 11
Motor Parkway Enterprises, Inc.,                    :    Case No. : 14-75667-ast
                                                    :
              Debtor.                               :
------------------------------------------------------------x

**[PROPOSED] ORDER GRANTING THE MOTION OF SOHAIL MUHAMMAD FOR**
**ALLOWANCE AND PAYMENT OF ADMINISTRATIVE PRIORITY WAGE CLAIM**
**AGAINST MOTOR PARKWAY ENTERPRISES, INC.**

Upon the *Motion of Sohail Muhammad for Allowance and Payment of Administrative Priority Wage Claim Against Motor Parkway Enterprises, Inc.* (the "Motion"); and the Court having jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and due and proper notice of the Motion having been made; and it appearing that no other or further notice need be provided; and after due consideration and good cause appearing therefore, it is hereby:

ORDERED that the Motion is granted as set forth herein; and it is further

ORDERED that Sohail Muhammad's claim arising post-petition is allowed and shall be afforded administrative expense priority status pursuant to 11 U.S.C. § 503(b)(1)(A)(i) against Motor Parkway Enterprises, Inc. in the amount of $16,100.94; and it is further

EXHIBIT A - Proposed Order

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: Central Islip, New York
       [_____], 2016

_____
THE HONORABLE ALAN S. TRUST
UNITED STATES BANKRUPTCY JUDGE

EXHIBIT A - Proposed Order

# EXHIBIT B

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT    Eastern District of New York | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br><br>Motor Parkway Enterprises, Inc. | Case Number:<br><br>8-14-75667-ast | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Sohail Muhammad | |
|---|---|
| Name and address where notices should be sent:<br><br>33 County Line Road<br>Farmingdale, NY 11735<br><br>Telephone number:  (516) 225-1119    email:  sohail khanhk@yahoo.com | **COURT USE ONLY**<br><br>☐ Check this box if this claim amends a previously filed claim.<br><br>Court Claim Number:_____<br>*(If known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br><br><br>Telephone number:          email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim.  Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:**          $                    157,354.16

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim.  Attach a statement that itemizes interest or charges.

| **2. Basis for Claim:**   Unpaid Wages<br>(See instruction #2) |
|---|

| **3. Last four digits of any number by which creditor identifies debtor:** __ __ __ __ | **3a. Debtor may have scheduled account as:**<br>_____<br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br>__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __<br>(See instruction #3b) |
|---|---|---|

| **4. Secured Claim (See instruction #4)**<br>Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.<br><br>**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other<br>**Describe:**<br><br>**Value of Property:** $_____<br><br>**Annual Interest Rate_____%** ☐ Fixed  or  ☐ Variable<br>**(when case was filed)** | **Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**<br><br>$_____<br><br>**Basis for perfection:**<br><br>**Amount of Secured Claim:**   $_____<br><br>**Amount Unsecured:**   $_____ |
|---|---|

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).  If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

| ☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).<br><br>☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7). | ☑ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8). | ☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).<br><br>☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__). | **Amount entitled to priority:**<br><br>$          12,475.00 |
|---|---|---|---|

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| **6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6) |
|---|

B10 (Official Form 10) (04/13)

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 9 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (See instruction #7, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.   ☐ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor,   ☐ I am a guarantor, surety, indorser, or other codebtor.
                                                                      or their authorized agent.     (See Bankruptcy Rule 3005.)
                                                                      (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Sohail Muhammad
Title:
Company:
Address and telephone number (if different from notice address above):
33 County Line Road
Farmingdale, NY 11735

Telephone number: (516) 225-1119        email: sohail_khanhk@yahoo.com

(Signature)                     (Date) 4/3/15

_Penalty for presenting fraudulent claim:_ Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

_The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply._

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents required by FRBP 3001(c). You may add a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line or you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

## ATTACHMENT TO PROOF OF CLAIM OF SOHAIL MUHAMMAD

### I. Facts

Sohail Muhammad ("Muhammad") worked as a cashier at several gas stations located or owned by Medford Development Company ("Medford"), Motor Parkway Enterprises, Inc. ("Motor Parkway"), A-Point Development Company ("A-Point"), Oceanside Enterprises, Inc. ("Oceanside"), D&J Development Company (Isp?), and Wheeler Development Company ("Wheeler" and collectively with Medford, Motor Parkway, A-Point Oceanside, Isp and Wheeler, which are jointly and severally liable to Muhammad) and the "Debtors") from approximately 2006 through January 2015. The Debtor's mailing address is 701 W. Montauk Highway Bayshore, N.Y. 11706. Muhammad submits this proof of claim against Medford, Motor Parkway, A-Point, Oceanside, Isp and Wheeler, which are jointly and severally liable to Muhammad in an amount of at least **$157,354.16** in unpaid wages and liquidated damages for claims from on or about January 1, 2012 to December 2014. Muhammad is also entitled to attorneys' fees and costs under both state and federal law and prejudgment interest pursuant to N.Y. C.P.L.R. § 5001. Mr. Muhammad has similar and related claims against certain debtors whose debtor-in-possession claims. Mr. Muhammad also has post-petition claims for his work from December 2014 to January 2015 in the amount of **$16,100.94**.

In violation of New York Labor Law ("NYLL") and the Fair Labor Standards Act ("FLSA") Medford (?) failed to pay Muhammad his earned wages, correct overtime compensation and spread of hours pay for those days in which he worked over 10 hours from start to finish (?) failed to provide Muhammad with a wage notice in English and Muhammad's primary language, Urdu, prior to or before February 1st of each subsequent year of employment including information such as the rate of pay, any allowances claimed as part of the minimum wage, and rate of deductions, and failed to provide Muhammad with a wage statement with every payment of wages, listing dates of work covered by the payment of wages, rates of pay, per day, gross wages, deductions and net wages. 29 U.S.C. §§ 206, 207; N.Y. Labor Law §§ 190, 195, 194-a, 652; 12 N.Y.C.R.R. § 142-2.1, 142-2.2, 142-2.4. Discovery of the Debtor's records will be necessary to quantify the wages the Debtor owes to Muhammad precisely.

At the start of his employment, Muhammad worked solely as a cashier for Oceanside Enterprises Inc. On or about January 1, 2012 he was promoted. While his promotion in pay duties included duties each day to approximately 14 gas stations owned or controlled by cash and making deposits. He kept a log for Debtor called a "Daily Cash Deposit Detail" sheet. Mr. Muhammad typically worked 6 days per week for 12 hours per day totaling approximately 72 hours per week. Debtor usually paid Muhammad in two separate payments each week: one payment of for $175 and one for $880. The $880 payment indicated Muhammad's hourly rate was $80 and his overtime rate was $120. The $175 payment was paid to Muhammad by check

---

[1] Mr. Muhammad stated working for the Debtors sometime in 2006 and stopped working on January 2015, but the calculation begins January 1, 2012 when Mr. Muhammad's unpaid wage claim is based and ends on December 2014 (the date the Debtor filed for bankruptcy). Post-petition unpaid wages from December 2014 to Mr. Muhammad's last day of work January 2015 will be claimed by him and an pursued as an administrative expense according to 11 U.S.C. § 503.

and paid as his "salary." In reality the divided payment system served as a way for Debtor to provide Muhammad with an alternate minimum wage while avoiding payment of a higher overtime rate. Therefore, based on his $925 weekly wage for a 72-hour work week, Muhammad's actual hourly wage was $14.24 and his actual overtime rate was $21.36. Given these figures, Muhammad should have been paid $1,612 per week. Instead of paying him more than $925 accordingly, Muhammad is owed $2,832 per week in unpaid wages from January 1, 2012 to October 30, 2014 (144 weeks) totaling $98,928.

From on or about October 30, 2014 through December 29, 2014, Muhammad did not receive his full wage despite continuing to work 72 hours per week. From October 30, 2014 to on or about December 15, 2014, he was paid approximately $10 weekly. Muhammad received only $75 per week. From December 15, 2014 to December 29, 2014, Muhammad was not paid any wages. For this last period, Muhammad is still owed $8,744 in hourly and overtime wages.

Both federal and state law allow for liquidated damages in addition to unpaid wages in the amount of 100% of the unpaid wages in the case of federal law, and in the amount of 100% under New York state law. 29 U.S.C. § 216; N.Y. Labor Law § 663.B. These statutes also allow for the recovery of attorneys' fees and costs. 29 U.S.C. § 216; N.Y. Labor Law §§ 198, 663. Finally, unless otherwise provided by statute, New York allows for 9% interest on any sum awarded pursuant to N.Y. C.P.L.R. § 5004.

## II. Quantification of Categories and Damages

*Minimum Wage, Overtime Pay and Liquidated Damages*

Although these estimates could be quantified much more definitively upon receipt of discovery from the Debtor, Muhammad is owed roughly $98,928 in wage and overtime pay from January 1, 2012 to October 30, 2014 (144 weeks). This is calculated by first determining Muhammad's weekly wage and overtime rate. Muhammad's weekly wage is determined by multiplying his actual hourly rate of $14.24 by 40 hours. Muhammad's weekly overtime rate is determined by multiplying his actual hourly rate of $14.24 by one-and-a-half multiplied by the number of hours over 40 that Muhammad worked per week. Next the weekly wage rate is added to the weekly overtime rate to determine Muhammad's total weekly rate. The total weekly rate is then multiplied by 144 weeks from which the amount Muhammad was actually paid is subtracted. For example:

January 1, 2012 to October 30, 2014: $98,928 (wage and <u>overtime</u> pay owed)
*Calculations*:

- $14.24 (actual wage rate) x 40 hours = $569.60 (required <u>weekly</u> wage pay)
- $14.24 (actual wage rate) x 1.5 = $21.36 (overtime rate) x 32 overtime hours = $683.52 (required weekly overtime)
- $569.60 (required weekly wage) + $683.52 (required weekly overtime) = $1,253.12 (required total weekly rate)
- $1,253.12 (required total weekly rate) x 144 weeks = $180,449.28 (required total) _____
- $925 (rate Debtor paid per week) x 144 weeks = $133,200 (total amount paid) _____
- $180,449.28 (required total) - $133,200 (total amount paid) = $47,249.28 (amount owed) _____

2

A daily for the period from October 2014 to December 2014 Muhammad was only paid $175 a week for 10 weeks for a total of $50. However he should have been paid $612 in wage and overtime pay for approximately 12 weeks during this period. Muhammad is owed roughly $5,992 in wage and overtime pay from October 2014 to December 24, 2014. This is calculated by subtracting the total Muhammad was actually paid from the amount Muhammad was required to be paid in wages and overtime for this period. For example:

October 2014 to December 2014 $5744 (wage and overtime pay owed)
*Calculations:*

- $612 (required total weekly rate) x 12 weeks = $5744 (required total) _____
- $175 (amount Debtor paid per week) x 10 weeks = $50 (total amount paid) _____
- $5744 (required total) - $50 (total amount paid) = $5744 (amount owed) _____

   Total Unpaid Wages and Overtime Owed $5352 _____
   (January 2012 to December 2014)

The liquidated damages are 100% of $5352 and therefore amount to $5744. An employee can recover both federal liquidated damages which are designed to compensate for the delay in payment and state liquidated damages which are "punitive in nature." *Yu G. Ke v. Saigon Grill, Inc*, 595 F. Supp. 2d 240 (S.D.N.Y. 2008).

*Spread of Hours Pay and Liquidated Damages*

Although these estimates could be quantified much better detail upon receipt of discovery from the Debtor, Muhammad is owed roughly $92 in spread of hours pay. This is calculated by multiplying the applicable minimum wage rate for the relevant years by the number of shifts each week in which Muhammad worked more than ten hours from start to finish. For example:

January 2012 – December 2013 $24 (spread-of-hours-pay owed)

- 6 (days/week of shifts over ten hours) x $7.25/hour (minimum wage rate) x 104 weeks = $24

December 2013 – December 2014 $48 (spread-of-hours-pay owed)

- 6 (days/week of shifts over ten hours) x $8.00/hour (minimum wage rate) x 51 weeks = $48

   Total Spread of Hours Pay Owed $92 _____
   (January 2012 to December 2014)

The liquidated damages are 100% of $92. Therefore the liquidated damages are a modest total $92 _____

3

*Notice and Record-Keeping Violations*

Pursuant to N Y L L § 194-d(M) Plaintiff am adds is entitled to $90 in damages for Debtor's failure to provide him with any wage record or before February 1st of each subsequent year of employment containing information about as required in N Y L L § 195 adding information about such as the rate of pay any allowances claimed as part of the minimum wage and rate of deductions taken as required by N Y L L § § 195(3) and (2) provide him with a statement with every payment of wages the dates of work covered by the payment of wages rates of pay per day, gross wages deductions and net wages as required by N Y L L § 195(3).

*Attorneys' Fees, Costs, and Prejudgment Interest*

In an amount to be determined.

*Estimated Damages Overall*

| Minimum Wage and Overtime Pay | Amount Owed |
|---|---|
| January 2012 to December 2014 | $78,652 |
| Liquidated Damages on Minimum Wage and Overtime Pay (100% under federal law and 100% under state law) | $97,244 |
| **Spread of Hours Pay** | |
| January 2012 to December 2014 | $92 |
| Liquidated Damages on Spread-of-Hours Pay Owed (100% under state law) | $92 |
| **Notice and Record-Keeping Violations** | $90 |
| **TOTAL** | **$157,354.16 + attorney's fees, costs, and prejudgment interest** |

**III. Priority Claim**

*Minimum Wage and Overtime Pay*

June 2014 - December 2014 $14,852      _____
- $14.14 x 40 hours x 26 weeks = $14,910 (wages)

4

- $23.16 \times 32$ hours (overtime) $\times 26$ weeks $= \$7,752$ (overtime)
- $\$25$ (actually paid per week) $\times 45$ weeks $+ \$0$ (payment during final period) $= \$8,204$ (minimum unpaid)
- Total owed ($\$8,204 + \$7,752 - \$6,620 = \$6,662$

*Spread of Hours Pay*

June 2014 - December 2014 $898$          _____
- 6 days/week of shift over ten hours x minimum wage rate of $\$8.00$/hour x 26 weeks = $898$

*Notice and Record-Keeping Violations*

Wage statement violations
- 25 weeks x $\$90$ per week = $\$90$

Notice violations
- 27 weeks x $\$50$ per week = $\$85$

    Total = $\$85$          _____

*Estimated Priority Damages Overall*

| Minimum Wage & Overtime Pay Period | Amount Owed |
|---|---|
| June 2014 - December 2014 | $\$6,662$ |
| **Spread-of-Hours Pay Owed** | |
| June 2014 - December 2014 | $898$ |
| **Notice and Record Keeping Violations** | |
| | $\$85$ |
| **TOTAL OWED** | **$21,001.62 + attorney's fees, costs, and prejudgment interest** |
| **MAXIMUM PRIORITY CLAIM** | **$12,475.00** |

The Debtor owed Muhammad unpaid wages for work performed in the 180 days before the bankruptcy filing on December 2014. At the same wage rates outlined above for the full year of his employment in the 180 days prior to the bankruptcy filing, Muhammad's unpaid

5

wages were approximately $962. Pursuant to 11 U.S.C. § 507(a) am out-time ce
bankte statuty cap $4750. Therefore Muhammad claims $4750 as a priority claim.

## IV. POST-PETITION WAGE CLAIM

*Minimum Wage and Overtime Pay*

December 2014 – January 2015 $928 _____
- $232 (required total weekly rate) x 4 weeks = $928

*Spread of Hours Pay*

December 2014 – December 30 2014 $8 ____
- 6 days of .8 overtime hours x $10 hour (minimum wage rate) = $8

December 30 2014 – January 2015 $875 (spread-of-hours pay owed)
- 6 (days/week of .8 overtime hours) x $35 hour (minimum wage rate) x 35 weeks = $875

    Total $875 _____

*Notice and Record-Keeping Violations*

Wage Statement Violations
        December 2014 - January 2015 $40 _____
        4 weeks x $10.00 per week = $40

Notice Violations
        December 2014 - January 2015 $20 _____
        4 weeks x $5.00 per week = $20

| Minimum Wage and Overtime Pay | Amount Owed |
|---|---|
| December 2014 - January 2015 | $928 |
| Liquidated Damages on Minimum Wage and Overtime Pay (100% under federal law and 100% under state law) | $1496 |
| Spread of Hours Pay | |

| | |
|---|---|
| December 2014 - January 2015 | $2375 |
| Liquidated Damages on Spread-of-Hours Pay Owed (100% under state law) | $2375 |
| **Notice and Record-Keeping Violations** | $100 |
| **TOTAL WITHOUT LIQUIDATED DAMAGES** | $8423 |
| **TOTAL WITH LIQUIDATED DAMAGES** | $16094 |

7

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

In re:                                                    Case No. 14-75667 (AST)

Motor Parkway Enterprises, Inc.,                          Chapter 11

                            Debtor
------------------------------------------------------------- x

### DEBTOR'S (1) OBJECTION TO THE MOTION OF CERTAIN EMPLOYEE CLAIMANTS FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE WAGE CLAIMS; AND (2) STATEMENT OF UNDISPUTED FACTS

Motor Parkway Enterprises, Inc. (the "Debtor"), the above-referenced debtor and debtor-in-possession, by and through its attorneys, Macco & Stern, LLP, (1) objects to the *Motion of Sohail Muhammad Claimants for Allowance and Payment of Administrative Priority Wage Claims against Motor Parkway Enterprises, Inc.*, dated January 8, 2016 [Docket No. 77], filed by Sohail Muhammad (the "Claimant"), and (2) sets forth its statement of undisputed facts as the proof of claim filed by the Claimant, and respectfully sets forth as follows:

### PROCEDURAL BACKGROUND

1.      On December 24, 2014, (the "Petition Date") the Debtor and fourteen associated entities filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[1]

2.      The Debtor is authorized to operate as a debtor-in-possession under Bankruptcy Code §§1108 and 1109.  To date, the Office of the United States Trustee (the "UST") has not appointed a chapter 11 trustee or examiner, nor has an official committee of unsecured creditors been formed.

------------------------------

[1] The fifteen associated entities, with case numbers, are as follows: (1) Medford Development Corp., 14-75666 (AST); (2) Motor Parkway Enterprises, Inc., 14-75667 (AST); (3) Airport Development Corp., 14-75683 (AST); (4) Wheeler Development LLC, 14-75668 (AST); (5) Smithtown Development Corp., 14-75669 (AST); (6) Brentwood Development Corp., 14-75670 (AST); (7) Holbrook Development Corp., 14-75671 (AST); (8) Carman Development Corp., 14-75672 (AST); (9) Maple Avenue Hauppauge Dev. Corp., 14-75674 (AST); (10) Port Jefferson Development Corp., 14-75675 (AST); (11) Ronkonkoma Development Corp., 14-75676 (AST); (12) Islandia Development Corp., 14-75676 (AST); (13) Oceanside Enterprises Corp., 14-75678 (AST); (14) Islip Development Corp., 14-75679 (AST); and (15) Westbury Enterprises Inc., 14-75680 (AST).

3.      On or about April 17, 2015, Muhammad filed a proof of claim in the Debtor's bankruptcy case, assigned proof of claim number 14, in the amount of $157,354.16, including $12,475 as a priority unsecured claims (the "Claim").

4.      On or about November 9, 2015, Debtor filed objections to proofs of claim filed by certain claimants, including the Claim filed by the Claimant (the "Claim Objection") [Docket No. 44].

5.      On December 24, 2015, the Claimant filed opposition to the Claim Objection [Docket No. 72].

6.      On January 6, 2016, a hearing was held before the Court, whereby the Debtor was directed to contact Claimants' attorneys and submit a statement of undisputed facts as to the Claim and Claim Objections.

7.      On or about January 8, 2016, the Claimant filed the aforementioned Motion.

### FACTUAL BACKGROUND

8.      Since 1986, the Debtor has operated a gas station at the real property located at, and known as 260 Motor Parkway, Brentwood, New York.

### Marketing of Islandia, Inc.

9.      Steven Keshtgar ("Keshtgar") is the principal of the Debtor, as well as various other entities, including twenty (21) other gas stations (collectively, the "Keshtgar Entities").

10.     Marketing of Islandia, Inc. ("Marketing") is a corporation formed by Steven Keshtgar under the laws of the State of New York.

11.     Marketing was a corporation that acted a centralized manager of the income and expenses of the Keshtgar Entities, including the Debtor.

12.    At all relevant times, Marketing had its own, independent staff, which was paid by Marketing directly.

13.    At all relevant times, the Debtor had its own, independent staff, which was paid by the Debtor directly.

### OBJECTION TO THE MOTION AND STATEMENT OF UNDISPUTED FACTS

14.    At all relevant times, post prior to and after the Petition Date, Debtor did not employ the Claimant.

15.    However, Marketing employed the Claimant directly.

16.    Part of Claimant's responsibilities, as an employee of Marketing, was to travel between various gas stations owned and operated by Keshtgar, including the Debtor.

17.    However, Debtor did not employ Claimant, and paid Marketing for any services provided.

18.    Upon information and belief, Marketing would pay Claimant regularly, including reimbursement for mileage traveling between gas stations.

19.    The application for employment submitted by Claimant was for employment by Marketing.

20.    Marketing issues paystubs for the Claimant.

21.    Marketing issues a W-2 for the Claimant.

22.    Pursuant to the attachment to the Claim, Claimant states that he was a cashier at Oceanside Enterprises, Inc., before being promoted and required to travel between fourteen (14) gas stations collecting cash and making deposits.

23.    This was not a promotion within the Debtor, but rather his terms of employment with Marketing.

24.     Upon information and belief, Marketing has paid Claimant all amounts due and owing, and complied with all provisions of New York State and Federal wage and labor laws.

25.     Based on the foregoing, Debtor disputes all facts relating the Claim, including that the Claimant was employed by the Debtor.

26.     Furthermore, Debtor seeks an order denying the Motion and disallowing the Claim in its entirety, as previously stated in the Claim Objection.

27.     Debtor and all of the other Keshtgar Entities were audited by the Department of Labor in 2007 (the "Audit").

28.     After the Audit, Keshtgar installed hand scanners in the Debtor and all of the related gas station entities.

29.     In order to generate payroll, employees must clock into the system by using their social security number and having their biometrics scanned by the hand scanner.

30.     Due to the precise record keeping, Debtor is aware of when all employees arrive at work and clock out.

31.     Payroll is generated based on the hand scanners.

32.     Since the Audit, Debtor has been inspected by the Department of Labor approximately three (3) more time and found to be in compliance.

33.     A similar request for relief was previously made in the Claim Objections, but the Claimant's filing of this Motion requires a response from the Debtor.

**WHEREFORE,** the Debtor respectfully requests that Court deny the Motion and disallow the Claim in its entirety, and grant such other and different relief as the Court deems just and proper.

Dated: February __2__, 2016
      Islandia, New York

                      **MACCO & STERN, LLP**
                      Attorneys for the Debtor

By: _____
            Michael J. Macco
            2950 Express Drive South, Suite 109
            Islandia, New York 11749
            (631) 549-7900

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x

In re:                                                  Case No. 14-75667 (AST)

Motor Parkway Enterprises, Inc.,                        Chapter 11

                              Debtor
--------------------------------------------------------------- x

## **AFFIDAVIT OF SERVICE**

STATE OF NEW YORK)
COUNTY OF SUFFOLK)s:-

          Carol Smith, being duly sworn deposes that deponent is not a party to the above-
captioned action, is over the age of 18 years and resides at West Islip, New York.

          On February 2, 2016 deponent served the within DEBTOR'S (1) OBJECTION TO THE
MOTION OF CERTAIN EMPLOYEE CLAIMANTS FOR ALLOWANCE AND PAYMENT
OF ADMINISTRATIVE WAGE CLAIMS; AND (2) STATEMENT OF UNDISPUTED
FACTS upon the following parties, at the addresses designated by said parties for that purpose,
by depositing a true copy of the same, enclosed in a post-paid properly addressed wrapper in an
official depository under the exclusive care and custody of the United States Postal Service
within the State of New York:

United States Trustee
Long Island Federal Courthouse
560 Federal Plaza – Room 560
Central Islip, NY  11722-4437

Holly Meredith Martin, Esq.
Kaye Scholer LLP
250 West 55th Street
New York, New York  10019

                                                        _____
                                                        Carol Smith

Sworn to before me this
2nd day of February, 2016

*/s/ Janine M. Zarrilli*
Notary Public
*Janine M. Zarrilli*
*Notary Public, State of New York*
*No. 01ZA5084708*
*Qualified in Nassau County*
*Commission Expires September 8, 2017*



Scott Talmadge
+1 212 836 8000 office
holly.martin@kayescholer.com

250 West 55th Street
New York, NY 10019-9710
+1 212 836 8000 main
+1 212 836 6391 fax

February 9, 2016

**_VIA ELECTRONIC FILING_**
United States Bankruptcy Court
Eastern District of New York
Alfonse D'Amato Federal Courthouse
290 Federal Plaza
Central Islip, New York 11722

Re:     Motor Parkway Enterprises, Inc.     Case No. 14-75667 (AST)

Dear Judge Trust,

    In connection with the Court's request at the January 6, 2016 hearing, we hereby set forth the following statement of undisputed facts as to proof of claim number 14 (the "Muhammad Claim").

    On February 2, 2016, counsel for the Debtor filed the _Debtor's (1) Objection to the Motion of Certain Employee Claimants for Allowance and Payment of Administrative Wage Claims; and (2) Statement of Undisputed Facts_ (the "Debtor's Objection") [Dkt. 83].  There is no information set forth in the Debtor's Objection that is undisputed.

                                        Respectfully,


                                         /s/ Scott D. Talmadge
                                        Scott D. Talmadge
                                        **KAYE SCHOLER LLP**
                                        250 West 55th Street
                                        New York, New York 10019
                                        Telephone: (212) 836-8000
                                        Facsimile:  (212) 835-8689
                                        _Attorney for Certain Current and_
                                        _Former Employees of the Debtors_


Chicago      Los Angeles    Silicon Valley
Frankfurt    New York       Washington, DC
London       Shanghai       West Palm Beach

63318892

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

In re:                                                    Case No. 14-75667 (AST)

Motor Parkway Enterprises, Inc.,                          Chapter 11

                              Debtor

------------------------------------------------------------- x

## DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO PROOF OF CLAIM AND IN OPPOSITION OF A MOTION TO PAY AN ADMINISTRATIVE EXPENSE WAGE CLAIMS

Motor Parkway Enterprises, Inc. (the "Debtor"), the above-referenced debtor and debtor-in-possession, by and through its attorneys, Macco & Stern, LLP, files this memorandum of law in support of its objection to the proof of claim filed by Sohail Muhammad ("Muhammad"); and (2) in further opposition to the *Motion of Sohail Muhammad for Allowance and Payment of Administrative Priority Wage Claims against Motor Parkway Enterprises, Inc. Corp.* (the "Motion"), dated January 8, 2016 [Docket No. 77], and respectfully sets forth as follows:

### PROCEDURAL BACKGROUND

1.      On December 24, 2014, (the "Petition Date") the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtor is authorized to operate as a debtor-in-possession under Bankruptcy Code §§1108 and 1109. To date, the Office of the United States Trustee (the "UST") has not appointed a chapter 11 trustee or examiner, nor has an official committee of unsecured creditors been formed.

3.      On or about April 17, 2015, Muhammad filed a proof of claim in the Debtor's bankruptcy case, assigned proof of claim number 14, in the amount of $157,354.16, including $12,475 as a priority unsecured claims (the "Claim").

1

4.      On or about November 9, 2015, Debtor filed an objection to the Claim (the "Claim Objection") [Docket No. 44].

5.      On December 24, 2015, Muhammad filed opposition to the Claim Objection [Docket No. 72].

6.      On January 6, 2016, a hearing was held before the Court, whereby the Debtor was directed to contact Muhammad's attorneys and submit a statement of undisputed facts as to the Claim and Claim Objection.

7.      On or about January 8, 2016, the Muhammad filed the aforementioned Motion.

8.      On or about February 3, 2016, the Debtor filed its opposition to the Motion and statement of undisputed facts as to the Claim and Claim Objections.

## ARGUMENT

9.      Muhammad has failed to meet his burden of proof.

10.     Muhammad has failed to show that he was ever employed the Debtor at any time, or much less, a creditor of the Debtor in any capacity.

### Muhammad Has Failed to Meet His Burden

11.     Pursuant to Bankruptcy Code §502(a) and Rule 3001(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the filing of a proof of claim generally constititutes *prima facie* evidence of the validity and amount of the claim.

12.     However, upon an objection to a claim, the Court, after notice and hearing, shall determine the allowed amount of the claim.  *See* Bankruptcy Code §502(b).

13.     The party objecting to a claim bears the initial burden to produce "some evidence to overcome the rebuttable presumption of validity." *In re Koontz,* 2010 WL 5625883, 7-8 (Bankr. N.D. Ind. 2010).

2

14. "Once the objecting party produces evidence rebutting the claim, the burden of proof shifts to the claimant to produce evidence establishing the validity of the claim. Thus, once an objection is made to the proof of claim, the ultimate burden of persuasion as to the claim's validity and amount rests with the claimant." *In re Consumers Realty & Dev. Co., Inc.,* 238 B.R. 418, 423 (8th Cir. 1999) (citing *In re Alleghany Int'l, Inc.,* 954 F.2d 167 (3rd Cir. 1992).

15. This case highlights the potential issue that would arise if the burden of proof was not with a claimant. If a debtor was forced to disprove a claimant's position, the debtor would be forced into an untenable position of having to prove a negative.

16. This is presently the case in this proceeding, where there are no records in the Debtor's possession because there was no relationship between the Debtor and Muhammad.

17. Here, Muhammad filed the proof of claim with a self-serving statement prepared by his attorney as the only attachment, with no documentary evidence of the claim attached thereto.

18. It is respectfully submitted that this initial filing is deficient.

19. However, if the Court should find that Muhammad established *prima facie* evidence of the validity of the amount of the Claim by its filing, the Debtor has shifted the burden of persuasion back to Muhammad by the filing of the Claim Objection.

20. Accordingly, Muhammad currently bears the burden of persuasion as to the Claim.

21. Muhammad has failed to produce sufficient evidence to meet the burden of persuasion as to the Claim.

3

*Muhammad Did Not Work for the Debtor*

22.      As set forth in the affidavit of Saverio Settanni (the "Settanni Affidavit"), annexed hereto as **Exhibit A**, the Debtor never employed Muhammad, either prior to or after the Petition Date.

23.      Likewise, nothing in the Debtor's paperwork indicates that Muhammad was ever employed by the Debtor.

24.      However, Muhammad was an employee of two other entities owned by the principal of the Debtor: (1) Marketing of Islandia, Inc. ("Marketing"); and (2) Middle Island Development Corp. ("Middle Island").

25.      Accordingly, any claim for unpaid wages should be filed against Marketing or Middle Island, neither of which have filed cases under title 11 of the United States Code.

26.      Since the burden of persuasion is on Muhammad to establish the validity of a filed proof of claim after an objection to the claim is made, and equity and fairness dictate that the Debtor will be unable to prove a negative, Muhammad must show that he was an employee of the Debtor during the relevant periods.

27.      Based on the foregoing, Muhammad has failed to meet his burden of proof.

28.      There is no evidence that Muhammad was, at any time, an employee of the Debtor, and, therefore, to the contrary, all evidence supports the Debtor's position that Muhammad was employed by other entities, and the claim filed by Muhammad should be disallowed in its entirety.

**WHEREFORE,** it is respectfully submitted that the Court enter an order granting the

Debtor's Claim Objection and disallowing the Claim in its entirety, denying the Motion to pay

the Claim, and grant such other and different relief as the Court deems just and proper.

Dated: March __, 2016
      Islandia, New York

                                    **MACCO & STERN, LLP**
                                    Attorneys for the Debtor

                     By:    _____
                                    Michael J. Macco
                                    2950 Express Drive South, Suite 109
                                    Islandia, New York 11749
                                    (631) 549-7900



Scott Talmadge
+1 212 836 8000 office
holly.martin@kayescholer.com

250 West 55th Street
New York, NY 10019-9710
+1 212 836 8000 main
+1 212 836 6391 fax

March 7, 2016

***VIA ELECTRONIC FILING***
United States Bankruptcy Court
Eastern District of New York
Alfonse D'Amato Federal Courthouse
290 Federal Plaza
Central Islip, New York 11722

Re:   Motor Parkway Enterprises, Inc.      Case No. 14-75667 (AST)

Dear Judge Trust,

On January 8, 2016, we filed the Motion of Sohail Muhammad for Allowance and
Payment of Administrative Priority Wage Claim Against Motor Parkway Enterprises, Inc. on
behalf of Sohail Muhammad (the "<u>Motion</u>") [Dkt. 77].

We wish to withdraw the Motion.

Respectfully,

Scott D. Talmadge
**KAYE SCHOLER LLP**
250 West 55th Street
New York, New York 10019
Telephone: (212) 836-8000
Facsimile:  (212) 835-8689
*Attorney for Sohail Muhammad*

Chicago          Los Angeles      Silicon Valley
Frankfurt        New York         Washington, DC
London           Shanghai         West Palm Beach

63318892

Kara E. Neaton, Esq.
Kaye Scholer LLP
250 West 55th Street
New York, New York  10019-9710
Telephone:  (212) 836-8000
Facsimile:  (212) 836-8689
kara.neaton@kayescholer.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
In re:                                                                    :
                                                                              :    Chapter 11
Motor Parkway Enterprises, Inc.,                       :    Case No. : 14-75667-ast
                                                                              :
                       Debtor.                                       :
-----------------------------------------------------------------x

## DECLARATION OF SOHAIL MUHAMMAD

1. My name is Sohail Muhammad.  I submit this declaration in support of my claims in the above-captioned matter and in opposition to the objections to those claims.

**Employment with Debtor and Debtor's Affiliates**

2. From about 2006 until around March or April of 2012, I worked as a cashier at the Oceanside Enterprises, Inc. gas station, owned and run by Steven Keshtgar.

3. From around March or April of 2012, I worked for a group of gas stations on Long Island.  As I understand it, Steven Keshtgar owned and ran the entire gas station operation through companies that he set up, including the Debtor in this matter.  The whole operation was managed day-to-day by Sudheer Kumar, working for the company Marketing Inc. of Islandia.  The offices for the whole gas station operation were at the site of Marketing Inc. of Islandia.

4. The claim for which I submit this declaration concerns my time working for Debtor after I was promoted to my new position in March or April of 2012.

1

5. Around March or April of 2012, Mr. Keshtgar and Mr. Kumar promoted me to a new position. I thought it was a promotion because Keshtgar and Kumar stopped charging me for supposedly lost inventory, once I took this new job. Also, they promised me a day off in my weekly schedule for the first time, although that often did not happen.

6. In my new job, I drove among fourteen different gas station locations run by Mr. Kumar for Mr. Keshtgar to collect money from the safe. I would then deposit that money into the gas stations' bank accounts. At times, I also filled in for store cashiers who were absent.

7. The companies that owned the gas stations I travelled to include Debtor, Medford Development Corporation, Airport Development Corporation, Oceanside Enterprises, Inc., Islip Development Corporation, Holbrook Development Corporation, and Wheeler Development Corporation.

8. Typically, I would contact Steven Keshtgar and Sudheer Kumar daily. Since my job consisted of travelling, often at very early hours, I would usually not stop by the office. Instead, at the beginning of my work day, I would call both Keshtgar and Kumar to let them know I was on the road. At the end of the day, I would also call them. In addition, Keshtgar would routinely call me to ask what competitor gas stations were charging for gas.

9. As I collected money from the gas stations and deposited the money at the bank, I kept detailed records of the money I collected and deposited on "Daily Cash Deposit Detail" forms. Attached hereto as Exhibit A is an example of such a form with the accompanying deposit slips.

2

10. At the end of every day, I would take a picture of this form with the totals of the collections from the various gas stations with my phone and send it to Mr. Keshtgar or Mr. Kumar.  I also faxed a copy to the office.

11. The banks I visited to deposit money from the gas stations had my identification on file as the person who would deposit money into the accounts of all of the gas stations I visited.

12. I also collected and deposited rent checks from mechanics at some of the gas stations.  I would deposit the money in the bank account of the gas stations.

13. Sudheer Kumar and I both had our names on a membership card with Restaurant Depot for Motor Parkway Enterprises.  Attached hereto as Exhibit B is a copy of the front and back of the membership card.  I used this card to buy fruits for Wheeler and cookies for the 7-Eleven store at Motor Parkway.  I would bring the cookies to the store for them to sell when Saeed, the manager of the 7-Eleven at Motor Parkway, called me and asked for them.

14. I also would bring cash to the bank to get coins for the manager at the store at Motor Parkway.

15. Another task I performed was to train the gas station cashiers and attendants at the different gas stations, including Motor Parkway, how to respond to an inspection by the County Department of Consumer Affairs or the Fire Marshal.  Inspectors would come from time to time to the various gas stations to look at the pumps and the Veeder-Root machines, which are machines inside the stores which show whether there is a leak or other problems in the pumps.  To prepare for these inspections, I would explain the paperwork to the cashiers and the attendants, so they could handle these inspections

themselves.  If they did not know how to respond, the gas station where they worked could be fined.  I also checked the pumps once a week to make sure there were no cracks in the pumps.  Attached hereto as Exhibit C is a form that I used about once a month to identify which gas stations I had given safety instructions to.

16. When Keshtgar changed prices on items in the gas station stores, I would go to the different gas stations to label the coolers or the shelves with the new prices.

17. Sometimes, at Sudheer Kumar's request, I would give rides to employees at different gas stations, including Motor Parkway, who needed them to get to work, even though the rides were after my regular hours.

**Work schedule**

18. On regular work days, I would generally work 12-hour days.  Sometimes, I would also work for several hours on my day off.

19. I did not sign in to any location, and after I stopped working as a cashier in early 2012, I never used a hand scanner, and no one ever told me to use a hand scanner.

20. For two months after I started my new job in 2012, I worked seven days per week for 12 hours each day. Mr. Kumar and Mr. Keshtgar told me that one of these days was for training.  I was never paid for the seventh day I worked each week.  In reality, my training for the new job lasted less than one full day.

21. After this initial two-month period, which ended around May of 2012, I worked six days per week for 12 hours and one day for about 3 hours until around October of 2012.

22. After the beginning of October 2012, I worked six 12-hour days per week and had one day off each week.

4

23. Beginning in mid-2013, I started working seven days per week, working 12-hour shifts each day for a total of 84 hours per week.

24. My schedule remained at 84 hours per week above, except that I sometimes worked more or hours. For example, sometimes I would start work at 3 a.m. to collect money before the bank opened in the morning.

**Pay schedule**

25. When I started the new job, Mr. Kumar explained to me how I would be paid. I was supposed to be paid based on a weekly rate.

26. When I first started in my new position in 2012, I was promised $800 per week. In around 2013, I was promised $850 per week. From around 2014 until the end of my employment with Debtor and other entities, I was promised $900 per week.

27. My wages were paid to me using two different regular payments.

28. The first payment consisted of a weekly check for $175. These checks were from Marketing Inc. of Islandia.

29. The rest of my wages were paid in cash. Every month, I would call Mr. Kumar and/or Mr. Keshtgar and tell them I would need to be paid. Ali would then write out checks from one of Mr. Keshtar's gas station companies to another. For example, the check written on March 22, 2014 was written from "Medford Development Corp." to "Bohemia Development." A copy of the check stub for that check is attached hereto as Exhibit D.

30. Ali would normally take the check to the gas station location to which the check was written and lock it in the safe for me to pick up. However, if I saw him at the bank or in the office, Ali would give me the check directly.

31. When I came to collect money from that location, I would pick up the check for my wages. Ali told me when I could deposit the check. I would then take the check to the bank and deposit it. Then, a few days later, the cashier at that store would pay me cash as my wages from the register of the location listed as the payor on the check I had deposited. During the almost three years I was paid this way, some of the cash payments came from the Motor Parkway gas station.

32. These cash payments were equal to the remainder of my pay for one month after I had received the $175 weekly checks. For example, when my pay was $900 per week, the $175 checks left $725 per week to be paid to me at the end of the month. Usually, that payment covered four weeks and was for $2,900 ($725 x 4 = $2,900) or for $3,625 for five weeks ($725 x 5 = $3625).

33. As a result of this system, over the course of a year, the larger share of my wages were paid in cash at some point by the fourteen gas stations I used to visit, including the gas station on Motor Parkway. At the end of the year, I would receive a W-2 from Marketing Inc. of Islandia for the sum of the weekly checks for $175. I would receive another W-2 from one of the gas station companies reporting the sum of the cash payments I received from the various gas stations over the course of the year. Attached hereto as Exhibit E is a copy of the W-2 form I received for 2013, from Ronkonkoma Development Corp. and a copy of a form from the Unemployment Insurance Division of the New York State Department of Labor attributing those payments in 2014 to Middle Island Development Corp. I do not know why the office attributed all of that pay to those two companies. The pay came from all of the different gas station companies.

6

34. I was paid in the manner described above through the end of August 2014. I never received an overtime rate for the hours I worked over 40 in a week for that period. I also never received a notice explaining my pay rate when I was hired for this job. I never received a wage statement for the cash payments I received.

**End of My Employment with the Keshtgar Gas Stations**

35. My employers gave me time off for the month of December 2014 and I went away.

36. In January of 2015, I heard from Sudheer Kumar that the gas stations were in bankruptcy and that my job was gone.

37. I met with another manager, Mr. Ali, later in January, at Motor Parkway, and he told me he would let me know about another job. He never got back to me. I also asked Keshtgar for work and never heard back from him.

**Failure to Pay**

38. My employers never paid me the usual cash payment for September, October, and November of 2014, but I continued to receive my weekly checks for $175 during this period. Thus, I was never paid the $9,425 (13 weeks times $725 per week) in cash I was supposed to be paid for those thirteen weeks.

39. In addition, I was never reimbursed for some of my expenses. I generally drove over 3,500 miles per month in this job. I was usually reimbursed for gas that I purchased but never for the full mileage. The Internal Revenue Service mileage rates for cars are as follows: .555 in 2012; .565 in 2013; and .560 in 2014. Using these rates, my estimated mileage, and subtracting the gas reimbursements I received, I believe I am owed about $39,000 in unreimbursed mileage expenses.

40. Also, the last check I received for gas reimbursement bounced on about 12/19/14.  The check was for about $685.  Attached hereto as Exhibit F is a notice from the bank.  I have still not received that payment of $685, and I had to pay a $10 fine because the check bounced.

41. In the last year I worked for the Keshtgar gas stations, Sudheer Kumar would often ask me to deposit my own money into the accounts of different gas stations in order to make sure that Keshtgar had enough money in those accounts.  Usually, I would be reimbursed the next day or within a few days by the cashier at the gas station to which I had made the loan.  However, in late November 2014, I made a deposit in the account of Medford for $10,000 that I withdrew from my personal bank account, at Sudheer Kumar's request.  I have never been paid back for that loan.  Attached as Exhibit G is a copy of the bank statement showing my withdrawal of $10,000 on November 17, 2014.

**Conclusion**

42. I understand that Debtor is claiming that I only worked for Marketing Inc. of Islandia and not for it.  This is not true.  I worked for all of the gas stations as parts of one operation, taking care of their deposits and the other matters described above.  They all paid me, but they paid me in cash.

43. I have reviewed the attachment to the Proof of Claim I submitted in this matter. The person who helped me prepare my original proof of claim misunderstood some things and incorrectly estimated my claim, including incorrectly stating that I worked post-petition giving rise to an administrative expense claim.   With this declaration, I am

8

clarifying the mistakes in that attachment.

l certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct. Executed on March 6, 2016.

_____

Sohail Muhammad

# Exhibit A

# DAILY CASH DEPOSIT DETAIL

| DATE | 9/21/14 | Current | | | 2014 |
|------|---------|---------|---|---|------|
| S,NO | NAME OF STATION | $AMOUNT | DEPOSIT IN A/C | ATM | REMARKS |
| | Holbrook | 3500 | 1Slip | | N. Drop |
| | Medford | 4000 | Motor parkway | | BANK |
| | A-B mart | 2000 | Motor parkway | | N. Drop |
| | Bohemia | 1800 | 1Slip | | N. Drop |
| | Ronkonkoma | 5000 | Wheeler | | N. Drop |
| | 1Slip | 3400 | Wheeler | | N. Drop |
| | Iscandia | 4000 | Wheeler | | N. Drop |
| | Brentwood | 4200 | Wheeler | | N. Drop |
| | Suffolk B.P | 5500 | Wheeler | | N. Drop |
| | TOTAL | 33400 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | Deposit | 150 909.83 | | | |
| | Current | 33400 | | | |
| | | | | | |
| | TOTAL | 184309 83 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

# DAILY CASH DEPOSIT DETAIL

| | | | | | 2014 |
|---|---|---|---|---|---|
| DATE | 9/19,20/14 | | | | |
| S,NO | NAME OF STATION | $AMOUNT | DEPOSIT IN A/C | ATM | REMARKS |
| | Midwood | | | | |
| | part 2 | 7182 | Midwood | — | |
| | Northport | | | | |
| | part 2 | 14106 | Suffolk | — | |
| | Smith town | | | | |
| | part 3 | 7590 | Midwood | 1000 | |
| | Maple | | | | |
| | part 3 | 5228 | Brentwood | | |
| | Ronkonkoma (4) | 538.83 | Marketing | 1000 | |
| | part 3 | 12934 | Brentwood | 2000 | |
| | M. Island | | | | |
| | part 2 | 5110 | Brentwood | — | |
| | Centereach | 5817 | Midwood | 1000 | |
| | Port Jefferson | 2095 | Midwood | — | |
| | Coram | | | | |
| | part 3 | 10662 | Motor parkway | — | |
| | Medford | | | | |
| | part 3 | 40484 | Bohemia | 2000 | |
| | A-B Mart | | | | |
| | part 2 | 6978 | Motor parkway | 1000 | N. Drop |
| | Holbrook | | | | |
| | part 3 | 17595 | Islip | 1000 | N. Drop |
| | Bohemia | | | | |
| | part 3 | 7870 | Islip | 1000 | N. Drop |
| | Islip | | | | |
| | part 2 | 6720 | Islip | 1000 | N. Drop |
| | TOTAL | 150909.83 | | | |

DEPOSIT RECORD COPY

DEPOSIT RECORD COPY

50-1211-214

50-1211-214

MOTOR PARKWAY ENTERPRISES INC.

MIDWOOD ENTERPRISES INC.

**ATLANTIC BANK**
A Division of New York Commercial Bank • Member FDIC
400 MADISON AVENUE
NEW YORK, NEW YORK 10017

**ATLANTIC BANK**
A Division of New York Commercial Bank • Member FDIC
960 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10001

DATE 9/21/14

DATE 09/19/2014

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | 4000 | 00 |
| COIN | | |
| CHECKS | | |
| | 100×12 | |
| | 20×140 | |

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | 5813 | 00 |
| COIN | | |
| CHECKS | 100×14 | |
| | 50×27 | |
| | 20×138 | |
| | 10×38 | |
| | 5×43 | |
| | 1×13 | |

ROSLYN SAVINGS BANK
WESTBURY LOCUST AVE
SEP 17 2014

TELLER #0140

TOTAL FROM OTHER SIDE
OR ATTACHED LIST

TOTAL FROM OTHER SIDE
OR ATTACHED LIST

$

$

4000 00

4185 00

4000 00

5817 00

Checks and other items are received for deposit subject to the provisions of the Uniform Commercial Code or any applicable collection agreement.

Checks and other items are received for deposit subject to the provisions of the Uniform Commercial Code or any applicable collection agreement.



New York Commercial Bank 395  Route 112                    Patchogue NY 11772
  SEQ: 57   TLR:7164 BR:065  DATE:09/22/14  TIME:12:46 pm  FUNDS:0
APPL ACCT #      TRCO              AMOUNT              NEW BALANCE
ND  XXXXXXXX8020 MO+              $4,000.00
MOTOR PARKWAY ENTERPRISES INC      CASH IN:            $4,000.00
                                   CHECKS IN:          $0.00
                                   CASH OUT:           $0.00



DEPOSIT RECORD COPY
50-1211-214

DEPOSIT RECORD COPY
50-1211-214

BOHEMIA DEVELOPMENT CORP

MOTOR  PARKWAY  ENTERPRISES INC.

ATLANTIC BANK
A Division of New York Commercial Bank • Member FDIC
660 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10001

ATLANTIC BANK
A Division of New York Commercial Bank • Member FDIC
400 MADISON AVENUE
NEW YORK, NEW YORK 10017

DATE 9/90,19/14

DATE 9/15/20/15

Medes
p·3

Cursm
3

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | 10186 | 0 |
| COIN | | |
| CHECKS LIST EACH SEPARATELY | | |
| 1. 100 × 102 | | |
| 3. 50 × 85 | | |
| 5. 20 × 1286 | | |
| 8. 10 × 815 M | | |
| 5 × 22 | | |
| 1 × 164 | | |

TOTAL FROM OTHER SIDE
OR ATTACHED LIST

40 48 0

| | | |
|---|---|---|
| CURRENCY | 10562 | |
| CHECKS | | |
| 10 × 7 | | |
| 50 × 24 | | |
| 20 × 407 | | |
| 10 × 43 | | |
| 5 × 10 | | |
| 1 × 142 | | |

TOTAL FROM OTHER SIDE
OR ATTACHED LIST

10662 0

$ 40486 0

$ 10562 0

New York Commercial Bank 395  Route 112                    Patchogue NY 11772

BatchCode NY 11772

SEQ: 11    TLR:7164 BR:065   DATE:09/22/14   TIME:12:48 pm   FUNDS:0
APPL ACCT #   : TPCD          : AMOUNT              NEW BALANCE
NO   XXXXXXXXX7924 MD#:       $40,484.00
BOHEMIA DEVELOPMENT CORP.     CASH IN:            $40,484.00
BOHEMIA EXXON STORE #31720    CHECKS IN:                $0.00
                              CASH OUT:                 $0.00

DEPOSIT RECORD COPY
50-1211-214

**WHEELER DEVELOPMENT LLC**

ATLANTIC BANK
A Division of New York Commercial Bank • Member FDIC
900 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10001

DATE 09/25/2014
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | 4200 | 00 |
| COIN | | |
| CHECKS LIST EACH SEPARATELY | | |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| TOTAL FROM OTHER SIDE OR ATTACHED LIST | | |

DEPOSIT RECORD COPY
50-1211-214

**ISLIP DEVELOPMENT CORPORATION**

ATLANTIC BANK
A Division of New York Commercial Bank • Member FDIC
387 PARK AVENUE SOUTH
NEW YORK, NYE 10016

DATE 7/9/2014
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL

(2)

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | 6720 | 00 |
| COIN | | |
| CHECKS LIST EACH SEPARATELY | | |
| 1 | | |
| 2 | | |
| 3 | 100×18 | |
| 4 | | |
| 5 | 50×14 | |
| 6 | | |
| 7 | 20×189 | |
| 8 | | |
| 9 | 10×80 | |
| 10 | | |
| 11 | 5×38 | |
| 12 | | |
| 13 | 1×165 | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| TOTAL FROM OTHER SIDE OR ATTACHED LIST | 6720 | 00 |

New York Commercial Bank
1601 Veterans Mem. Hwy.
Islandia, NY 11749
TLR:8767 BR:801 : 13
ACCT # XXXXXXX7937 DD+
TRCD BREUER DEVELOPMENT LLC
RUGG EXXON

DATE:09/22/14  TIME:10:16 am  FUNDS:0
AMOUNT        NEW BALANCE
CASH IN:    $5,000.00
CHECKS IN:  $0.00
CASH OUT:   $0.00
            $5,000.00

TOTAL

FOR DUPLICATE DEPOSITS
USE CARBON PAPER
OF PAD TO MAKE COPIES
ENTRIES ON

---

New York Commercial Bank
1601 Veterans Mem. Hwy.
Islandia, NY 11749
TLR:8767 BR:801 : 13
ACCT # XXXXXXX7937 DD+
TRCD BREUER DEVELOPMENT LLC
RUGG EXXON

DATE:09/22/14  TIME:10:15 am  FUNDS:0
AMOUNT        NEW BALANCE
CASH IN:    $3,400.00
CHECKS IN:  $0.00
CASH OUT:   $0.00
            $3,400.00

TOTAL

FOR DUPLICATE DEPOSITS
USE CARBON PAPER
OF PAD TO MAKE COPIES
ENTRIES ON

**DEPOSIT RECORD COPY**
90-1211-214

**WHEELER DEVELOPMENT LLC**

**ATLANTIC BANK**
A Division of New York Commercial Bank • Member FDIC
960 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10001

DATE 9/21/14
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | | |
| COIN | | |
| CHECKS LIST EACH SEPARATELY | | |
| 1 | 10049 | |
| 2 | | |
| 3 | 5048 | |
| 4 | | |
| 5 | | |

---

RC D

**DEPOSIT RECORD COPY**
90-1211-214

**WHEELER DEVELOPMENT LLC**

**ATLANTIC BANK**
A Division of New York Commercial Bank • Member FDIC
960 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10001

DATE 09/21/14
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | 5000 | 00 |
| COIN | | |
| CHECKS LIST EACH SEPARATELY | | |
| 1 | 100x10 | 1000 00 |
| 3 | 50x12 | 600 00 |
| 5 | 25x116 | 2900 00 |
| 7 | 10x15 | 150 00 |
| 9 | 5x49 | 245 00 |
| 11 | 20x3 | 105 00 |
| | | |
| TOTAL FROM OTHER SIDE OR ATTACHED LIST | 5000 | |

New York Commercial Bank
1601 Veterans Mem. Hwy.
Islandia, NY 11749
SEQ: 17   TLR:8767 BR:801   DATE:09/22/14   TIME:10:17 am   FUNDS:0

| SIDE | ACCT # | TRCD | AMOUNT | NEW BALANCE |
|------|--------|------|--------|-------------|
|  | XXXXXXXX7937 | DD+ | $4,200.00 | |
|  | WHEELER DEVELOPMENT LLC | | CASH IN: | $4,200.00 |
|  | RAUGE EXXON | | CHECKS IN: | $0.00 |
|  | | | CASH OUT: | $0.00 |

New York Commercial Bank
1601 Veterans Mem. Hwy.
Islandia, NY 11749
SEQ: 19   TLR:8767 BR:801   DATE:09/22/14   TIME:10:19 am   FUNDS:0

| SIDE | ACCT # | TRCD | AMOUNT | NEW BALANCE |
|------|--------|------|--------|-------------|
|  | XXXXXXX7995 | DD+ | $6,720.00 | |
|  | WING DEVELOPMENT CORP | | CASH IN: | $6,720.00 |
|  | MOBIL | | CHECKS IN: | $0.00 |
|  | | | CASH OUT: | $0.00 |

**WHEELER DEVELOPMENT LLC**

## ATLANTIC BANK
A Division of New York Commercial Bank • Member FDIC
960 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10001

DATE 9/21/14

DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | 630 | |
| COIN | | |
| CHECKS LIST EACH SEPARATELY | | |
| 1 100×7 | | |
| 3 50×12 | | |
| 5 20×122 | | |
| 7 10×10 | | |
| 9 5×21 | | |
| 11 | | |
| 13 | | |
| 15 | | |
| 17 | | |
| 19 | | |
| 21 | | |
| 23 | | |
| 25 | | |
| 27 | | |
| TOTAL FROM OTHER SIDE OR ATTACHED LIST | | |
| PLEASE RE-ENTER TOTAL HERE | | |

Checks and other items are received for deposit subject to the provisions of the Uniform Commercial Code or any applicable collection agreement.

---

**WHEELER DEVELOPMENT LLC**

## ATLANTIC BANK
A Division of New York Commercial Bank • Member FDIC
960 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10001

DATE 9/21/14

DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | 5500 | |
| COIN | | |
| CHECKS LIST EACH SEPARATELY | | |
| 1 100×8 | | |
| 3 50×4 | | |
| 5 20×200 | | |
| 7 10×50 | | |
| 9 | | |
| 11 | | |
| 13 | | |
| 15 | | |
| 17 | | |
| 19 | | |
| 21 | | |
| 23 | | |
| 25 | | |
| 27 | | |
| TOTAL FROM OTHER SIDE OR ATTACHED LIST | | |
| PLEASE RE-ENTER TOTAL HERE | | |

Checks and other items are received for deposit subject to the provisions of the Uniform Commercial Code or any applicable collection agreement.

FOR DUPLICATE DEPOSIT SLIPS USE CARBON PAPER FROM BACK OF PAD TO MAKE COPIES OF ENTRIES ON THIS SIDE

New York Commercial Bank
1601 Veterans Mem. Hwy
Islandia, NY 11749
SEQ: 11 TLR:8767 BR:801 DATE:09/22/14 TIME:10:15 am FUNDS:0
APPL ACCT # TRCD AMOUNT NEW BALANCE
DD XXXXXXXXX7927 DD+ $4,000.00
WHEELER DEVELOPMENT LLC CASH IN: $4,000.00
HAUPPAUGE EXXON CHECKS IN: $0.00
CASH OUT: $0.00

TOTAL FORWARD TO OTHER SIDE

ADDITIONAL CHECK LISTING SPACE

FOR DUPLICATE DEPOSIT SLIPS USE CARBON PAPER FROM BACK OF PAD TO MAKE COPIES OF ENTRIES ON THIS SIDE

New York Commercial Bank
1601 Veterans Mem. Hwy
Islandia, NY 11749
SEQ: 9 TLR:8767 BR:801 DATE:09/22/14 TIME:10:14 am FUNDS:0
APPL ACCT # TRCD AMOUNT NEW BALANCE
DD XXXXXXXX7937 DD+ $5,500.00
WHEELER DEVELOPMENT LLC CASH IN: $5,500.00
HAUPPAUGE EXXON CHECKS IN: $0.00
CASH OUT: $0.00

TOTAL FORWARD TO OTHER SIDE

**DEPOSIT SAID TO CONTAIN**
Hibiscis/Islip
DATE 9/20/21/16
CURRENCY: 18595
COINS: 3500 (1)
CHECKS:
TOTAL DEPOSIT 21095

**BAG NUMBER**
20479874

**DEPOSIT SAID TO CONTAIN**
Current
DATE
CURRENCY: 8000 + 5500
COINS: 4200 + 400
CHECKS: 3400
TOTAL DEPOSIT 25100

**BAG NUMBER**
20480096

Islip + Islandia + Suffolk + R.G + B. Wood

**DEPOSIT SAID TO CONTAIN**
Islip
DATE 9/19, 28/14
CURRENCY:
COINS: 6720
CHECKS:
TOTAL DEPOSIT 6720

**BAG NUMBER**
20480097

**DEPOSIT SAID TO CONTAIN**
Bohemia
DATE 9/19, 20/21/16
CURRENCY: 7320
COINS: 7870 + 1800
CHECKS:
TOTAL DEPOSIT 9320
9670

**BAG NUMBER**
20479875

**DEPOSIT SAID TO CONTAIN**
A-B / postepard
DATE 9/20, 15/21/16 4
CURRENCY: 2000
COINS: 6778
CHECKS:
TOTAL DEPOSIT 8778

**BAG NUMBER**
20479871

DEPOSIT RECORD COPY
50-1211-214

SUFFOLK ENTERPRISES INC.

ATLANTIC BANK
A Division of New York Commercial Bank · Member FDIC
424S BROADWAY
NEW YORK, NY 10033

DATE 9/19/20/16

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | 14106 | 0 |
| COIN | | |
| CHECKS | | |

100 x 25
50 x 43
20 x 459
10 x 26
5 x 1
1 x 11

TOTAL 14106 00



DEPOSIT RECORD COPY
50-1211-214

MIDWOOD ENTERPRISES INC.

ATLANTIC BANK
A Division of New York Commercial Bank · Member FDIC
960 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10001

DATE 9/18/20/16

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | 2095 | 0 |
| COIN | | |
| CHECKS | | |

100 x 3
50 x 4
20 x 5
10 x
5 x
1 x

TELLER #0140

TOTAL 2095 00

DEPOSIT RECORD COPY
50-1211-214

MIDWOOD ENTERPRISES INC.

ATLANTIC BANK
A Division of New York Commercial Bank • Member FDIC
960 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10001

DATE 9/19, 20/14

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | 7187 | 0 |
| COIN | | |
| CHECKS | | |
| 100 X 13 | | |
| 50 X 7 | | |
| 20 X 234 | | |
| 10 X 23 | | |
| 5 X 12 | | |
| 1 X 62 | | |

7182

---

DEPOSIT RECORD COPY
50-1211-214

BRENTWOOD DEVELOPMENT CORP.

ATLANTIC BANK
A Division of New York Commercial Bank • Member FDIC
387 PARK AVENUE SOUTH
NEW YORK, NY 10016

DATE 9/19, 20/14

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | 5110 | 00 |
| COIN | | |
| CHECKS | | |
| 100 48 | | |
| 50 16 | | |
| 20 161 | | |
| 10 15 | | |
| 5 25 | | |
| 1 38 | | |

5110

New York Commercial Bank 2130 Middle Country Rd. Centereach, NY 11720
DATE:09/22/14 TIME:10:29 am FUNDS:0
APPL ACCT # TRCD AMOUNT NEW BALANCE
08 XXXXXXX $5,110.00 $16,381.82-
BRENTWOOD DEVELOPMENT CORP CASH IN: $5,110.00
CHECKS IN: $0.00
CASH OUT: $0.00

TOTAL

New York Commercial Bank 2130 Middle Country Rd. Centereach, NY 11720
SEQ: 142 TLR:7651 BR:056 DATE:09/22/14 TIME:10:27 am FUNDS:0
APPL ACCT # TRCD AMOUNT NEW BALANCE
30 XXXXXXX8088 MD $7,182.00 $65,274.00
MIDWOOD ENTERPRISES INC CASH IN: $7,182.00
MIDWOOD EXXON CHECKS IN: $0.00
CASH OUT: $0.00

TOTAL

DEPOSIT RECORD COPY

50-1211-214

BRENTWOOD DEVELOPMENT CORP.

ATLANTIC BANK
A Division of New York Commercial Bank • Member FDIC
387 PARK AVENUE SOUTH
NEW YORK, NY 10016

DATE

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | 5226 | 00 |
| COIN | | |
| CHECKS | | |
| 1 | 100 x 10 | |
| 2 | 50 x 10 | |
| 3 | 20 x 10 | |
| 4 | 10 x 23 | |
| 5 | 5 x 8 | |
| 6 | 1 x 168 | |

5226

| | Commercial Bank 2150 Middle Country Rd. | | | | | |
|---|---|---|---|---|---|---|
| SEQ: 146 | TLR/TELL BR:050 | DATE:03/22.14 | TIME:13:01 am | PAGE:2 | | |
| ACCT # | TRUD | | AMOUNT | NEW BALANCE | | |
| ID   XXXXXXXX706 ND# | | | $3,723.05 | $10,283.00 | | |
| GREENWOOD DEVELOPMENT Corp | | | CASH IN | $3,723.05 | | |
| | | | CHARGES IN | $0.00 | | |
| | | | CASH OUT | $0.00 | | |



DEPOSIT RECORD COPY
50-1211-214

**BRENTWOOD DEVELOPMENT CORP.**

ATLANTIC BANK
A Division of New York Commercial Bank • Member FDIC
387 PARK AVENUE SOUTH
NEW YORK, NY 10016

DATE

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | | |
| COIN | | |
| CHECKS | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| TOTAL FROM OTHER SIDE OR ATTACHED LIST | 1293. | |

Checks and other items are received for deposit

DEPOSIT RECORD COPY
50-1211-214

MIDWOOD ENTERPRISES INC.

**ATLANTIC BANK**
A Division of New York Commercial Bank • Member FDIC
960 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10001

DATE 9/19, 20/14

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | 7592 | 00 |
| COIN | | |
| CHECKS | | |
| 100 X 15 | | |
| 50 X 19 | | |
| 20 X 217 | | |
| 10 X 37 | | |
| 5 X 5 | | |
| 1 X 1.45 | | |

TOTAL 7592 00

---

DEPOSIT RECORD COPY
50-1211-214

MARKETING INC. OF ISLANDIA

**ATLANTIC BANK**
A Division of New York Commercial Bank • Member FDIC
960 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10001

DATE 09/19/14 ~ 09/20/14

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | | |
| COIN | | |
| CHECKS | 538 | 83 |
| 17753 | 356 | 00 |
| 0850446 | 182 | 83 |

NEW YORK COMMERCIAL BANK
MONICON HOBAUER, FDCT
SEP 2 2 2014
TELLER #06

TOTAL 538 83





```
New York Commercial Bank
3425 Veterans Memorial Hwy,
Ronkonkoma NY 11779
 SEQ: 14   TLR:7946 BR:807   DATE:09/22/14  TIME: 9:54 am  FUNDS:0
APPL ACCT #      TRCD               AMOUNT              NEW BALANCE
ND   800000038020 HD+          $2,000.00
MOTOR PARKWAY ENTERPRISES INC         CASH IN:           $2,000.00
                                      CHECKS IN:           $0.00
                                      CASH OUT:            $0.00
```

```
New York Commercial Bank
3425 Veterans Memorial Hwy,
Ronkonkoma NY 11779
 SEQ: 14   TLR:7946 BR:807   DATE:09/22/14  TIME: 9:56 am  FUNDS:0
APPL ACCT #      TRCD               AMOUNT              NEW BALANCE
ND   800000038020 HD+          $4,959.00
MOTOR PARKWAY ENTERPRISES INC         CASH IN:           $4,959.00
                                      CHECKS IN:           $0.00
                                      CASH OUT:            $0.00
```

DEPOSIT RECORD COPY

50-1211-214

**ISLIP DEVELOPMENT CORPORATION**

**ATLANTIC BANK**
A Division of New York Commercial Bank - Member FDIC
387 PARK AVENUE SOUTH
NEW YORK, NY 10016

DATE 1/21/14

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | 1600 | 00 |
| COIN | | |
| CHECKS | | |

DEPOSIT RECORD COPY

50-1211-214

**ISLIP DEVELOPMENT CORPORATION**

**ATLANTIC BANK**
A Division of New York Commercial Bank - Member FDIC
387 PARK AVENUE SOUTH
NEW YORK, NY 10016

DATE 09/20/14

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | 7970 | 00 |
| COIN | | |
| CHECKS | 1700 | 00 |
| | 1150 | 00 |
| | 4400 | 00 |
| | 330 | 00 |
| | 135 | 00 |
| | 105 | 00 |

New York Commercial Bank
2415 Veterans Memorial Hwy.
Ronkonkoma NY 11779
SEQ: 8       TLR:7946 BR:807    DATE:09/22/14  TIME: 9:49 am   FUNDS:0
APPL ACCT #       TRCD.                    AMOUNT              NEW BALANCE
NO: xxxxxxxx7995 MD+                       $7,970.00           $5,970.00
ISLIP DEVELOPMENT CORP                     CASH IN:            10.00
ISLIP MOBIL                                CHECKS IN:          90.00
                                           CASH OUT:

New York Commercial Bank
2415 Veterans Memorial Hwy.
Ronkonkoma NY 11779
SEQ: 8       TLR:7946 BR:807    DATE:09/22/14  TIME: 9:46 am   FUNDS:0
APPL ACCT #       TRCD.                    AMOUNT              NEW BALANCE
NO: xxxxxxxx7995 MD+                       $1,800.00           $1,800.00
ISLIP DEVELOPMENT CORP                     CASH IN:            10.00
ISLIP MOBIL                                CHECKS IN:          90.00
                                           CASH OUT:

**DEPOSIT RECORD COPY**

50-1211-214

**ISLIP DEVELOPMENT CORPORATION**

**ATLANTIC BANK**
387 PARK AVENUE SOUTH
NEW YORK, NY 10016

DATE

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | | |
| COIN | | |
| CHECKS | | |

**DEPOSIT RECORD COPY**

50-1211-214

**ISLIP DEVELOPMENT CORPORATION**

**ATLANTIC BANK**
387 PARK AVENUE SOUTH
NEW YORK, NY 10016

DATE

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | | |
| COIN | | |
| CHECKS | | |

New York Commercial Bank
7425 Veterans Memorial Hwy,
Ronkonkoma NY 11779
SEQ: 12     TLR:7946 BR:607    DATE:09/22/14   TIME: 9:53 am   FUNDS:0
APPL ACCT #          TRCD                 AMOUNT                 NEW BALANCE
ID:  100350087995 MUW                     $17,595.00
SLIP DEVELOPMENT CORP                     CASH IN:              $17,595.00
SLIP MOBIL                                CHECKS IN:            $0.00

New York Commercial Bank
7425 Veterans Memorial Hwy,
Ronkonkoma NY 11779
SEQ: 10     TLR:7946 BR:607    DATE:09/22/14   TIME: 9:51 am   FUNDS:0
APPL ACCT #          TRCD                 AMOUNT                 NEW BALANCE
ID:  100350087995 MUW                     $3,700.00
SLIP DEVELOPMENT CORP                     CASH IN:              $3,700.00
SLIP MOBIL                                CHECKS IN:            $0.00

# Exhibit B



The person whose name appears on the account under which this membership card was issued is responsible for all checks written as payment for purchases by anyone using this card. Lost or stolen cards should be reported to RD branch where the card was issued. This card is the property of Restaurant Depot and must be surrendered upon request. Use of the card is governed by Restaurant Depot's customer policies.

MOTOR PARKWAY ENTERPRISES
MEMBER   4/14/2014
SINCE

# Exhibit C

| | | | | MARKETING INC OF ISLANDIA |
|---|---|---|---|---|
| | | | | SYSTEM STAT REPORT/ 10-DAYS |
| S.NO | NAME OF STATION | RECEIVED | DATE | MISSING DATE |
| 1 | AIRPORT | | | |
| 2 | OCEANSIDE | | | |
| 3 | BOHEMIA | | Night Guy | |
| 4 | ISLANDIA | | | |
| 5 | MEDFORD | | | |
| 6 | HAUPPAUGE | | | |
| 7 | RONKONKOMA | | Yes Night guy | |
| 8 | SUNOCO HUNGT. | | Yes Night Guy | |
| 9 | SUNOCO MAPLE | | Yes Night Guy | |
| 10 | HAUPPAUGE MOTR | | | |
| 11 | WESTBURY SHELL | | | |
| 12 | WESTBURY MOBIL | | | |
| 13 | PATCHOGUE | | | |
| 14 | NORTPORT | | Yes Night Guy | |
| 15 | CORAM | | Yes Night Guy 5/19/14 | |
| 16 | SMITHTOWN | | | |
| 17 | HOLBROOK | | | |
| 18 | ISLIP | | Yes Night | |
| 19 | BRENTWOOD | | | |
| 20 | SUFFOLK | | | |
| 21 | CENT. MOBIL | | Yes Night gut | |
| 22 | STONEY BROOK | | | |
| 23 | MOTOR PKWAY | | | |
| 24 | VALLEY STREAM | | | |
| 25 | LAKE RONK BP | | | |
| 26 | PORT JEFF | | Yes Night | |
| 27 | CEDARHURST | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

# Exhibit D

MEDFORD DEVELOPMENT CORP.

BOHEMIA DEVELOPMENT

16538

3/22/2014

2,900.00

NY COMMERCIAL

2,900.00

# Exhibit E

Case 8-14-75667-ast    Doc 97-5    Filed 03/07/16    Entered 03/07/16 18:04:59

Copy C, for employees records

## Form W-2 Wage and Tax Statement 2013

| a Control number 0018-00183H30 0000000026-000100 | | Void | c Employer's name, address, and ZIP code RONKONKOMA DEVELOPMENT CORP 701 W MONTAUK HWY BAYSHORE NY 11706 | | Department of the Treasury - Internal Revenue Service OMB No. 1545-0008 | |
|---|---|---|---|---|---|---|
| b Employer's identification number 26-3442334 | d Employee's social security number | | | | 1 Wages, tips, other compensation 23055.00 | 2 Federal income tax withheld 1939.81 |
| | | | | | 3 Social security wages 23055.00 | 4 Social security tax withheld 1429.41 |
| 13 Statutory employee | Retirement plan | Third-party sick pay | | | 5 Medicare wages and tips 23055.00 | 6 Medicare tax withheld 334.30 |
| 12 See Instrs. for Box 12 NYSDI | 14 Other 17.40 | | e Employee's name, address, and ZIP code MUHAMMAD SOHAIL 33 COUNTY LINE RD FARMINGDALE NY 11735 | | 7 Social security tips | 8 Allocated tips |
| | | | | | 9 Advance EIC payment | 10 Dependent care benefits |
| | | | | | 11 Nonqualified plans | |
| 15 State NY | Employer's state ID No. 263442334 | 16 State wages, tips, etc. 23055.00 | 17 State income tax 994.41 | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

Copy B, to be filed with employees FEDERAL tax return

## Form W-2 Wage and Tax Statement 2013

| a Control number 0018-00183H30 0000000026-000100 | | Void | c Employer's name, address, and ZIP code RONKONKOMA DEVELOPMENT CORP 701 W MONTAUK HWY BAYSHORE NY 11706 | | Department of the Treasury - Internal Revenue Service OMB No. 1545-0008 | |
|---|---|---|---|---|---|---|
| b Employer's identification number 26-3442334 | d Employee's social security number | | | | 1 Wages, tips, other compensation 23055.00 | 2 Federal income tax withheld 1939.81 |
| | | | | | 3 Social security wages 23055.00 | 4 Social security tax withheld 1429.41 |
| 13 Statutory employee | Retirement plan | Third-party sick pay | | | 5 Medicare wages and tips 23055.00 | 6 Medicare tax withheld 334.30 |
| 12 See Instrs. for Box 12 NYSDI | 14 Other 17.40 | | e Employee's name, address, and ZIP code MUHAMMAD SOHAIL 33 COUNTY LINE RD FARMINGDALE NY 11735 | | 7 Social security tips | 8 Allocated tips |
| | | | | | 9 Advance EIC payment | 10 Dependent care benefits |
| | | | | | 11 Nonqualified plans | |
| 15 State NY | Employer's state ID No. 263442334 | 16 State wages, tips, etc. 23055.00 | 17 State income tax 994.41 | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

Copy 2, to be filed with employees tax return for NY

## Form W-2 Wage and Tax Statement 2013

| a Control number 0018-00183H30 0000000026-000100 | | Void | c Employer's name, address, and ZIP code RONKONKOMA DEVELOPMENT CORP 701 W MONTAUK HWY BAYSHORE NY 11706 | | Department of the Treasury - Internal Revenue Service OMB No. 1545-0008 | |
|---|---|---|---|---|---|---|
| b Employer's identification number 26-3442334 | d Employee's social security number | | | | 1 Wages, tips, other compensation 23055.00 | 2 Federal income tax withheld 1939.81 |
| | | | | | 3 Social security wages 23055.00 | 4 Social security tax withheld 1429.41 |
| 13 Statutory employee | Retirement plan | Third-party sick pay | | | 5 Medicare wages and tips 23055.00 | 6 Medicare tax withheld 334.30 |
| 12 See Instrs. for Box 12 NYSDI | 14 Other 17.40 | | e Employee's name, address, and ZIP code MUHAMMAD SOHAIL 33 COUNTY LINE RD FARMINGDALE NY 11735 | | 7 Social security tips | 8 Allocated tips |
| | | | | | 9 Advance EIC payment | 10 Dependent care benefits |
| | | | | | 11 Nonqualified plans | |
| 15 State NY | Employer's state ID No. 263442334 | 16 State wages, tips, etc. 23055.00 | 17 State income tax 994.41 | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

## Form W-2 Wage and Tax Statement 2013

| a Control number | | Void X | c Employer's name, address, and ZIP code | | Department of the Treasury - Internal Revenue Service OMB No. 1545-0008 | |
|---|---|---|---|---|---|---|
| b Employer's identification number | Employee's social security number | | | | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
| | | | | | 3 Social security wages | 4 Social security tax withheld |
| 13 Statutory employee | Retirement plan | Third-party sick pay | | | 5 Medicare wages and tips | 6 Medicare tax withheld |
| 12 See Instrs. for Box 12 | 14 Other | | e Employee's name, address, and ZIP code | | 7 Social security tips | 8 Allocated tips |
| | | | | | 9 Advance EIC payment | 10 Dependent care benefits |
| | | | | | 11 Nonqualified plans | |
| 15 State | Employer's state ID No. | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

# Exhibit F



**Member FDIC**

**NEW YORK COMMUNITY BANK**

DATE: 12/19/14

IF YOUR ACCOUNT BALANCE IS NEGATIVE THEN YOU ARE RECEIVING A COPY OF THE CHECK AND THE ORIGINAL CHECK WILL BE MAILED TO YOU AS SOON AS YOU MAKE A DEPOSIT WITH GOOD FUNDS TO YOUR ACCOUNT TO COVER THE OVERDRAFT AMOUNT.

THE ENCLOSED CHECK, WHICH WAS RECENTLY CASHED OR DEPOSITED TO ONE OF YOUR ACCOUNTS WAS RETURNED UNPAID AND THE ACCOUNT REFERENCED ON THIS NOTICE HAS BEEN CHARGED FOR THE CHECK AMOUNT PLUS A SERVICE CHARGE OF $10.00 . PLEASE ADJUST YOUR RECORDS ACCORDINGLY.

ACCOUNT NUMBER: ███████2781

| AMOUNT OF ITEM | DESCRIPTION |
|---|---|
| 685.02 | DEPOSITED ITEM REVERSAL |
| 10.00 | ACTIVITY CHARGE |

SOHAIL MUHAMMAD
33 COUNTY LINE RD
FARMINGDALE NY 11735-3722

# Exhibit G

PRINTSET ████████████████████████ Case 8-14-75667-ast   Doc 97-7   Filed 03/07/16    Entered 03/07/16 18:04:59

1801 VETERANS HIGHWAY
ISLANDIA, NY 11749
(631)348-0888
001

SOHAIL MUHAMMAD
33 COUNTY LINE RD
FARMINGDALE NY 11735-6502

Statement Date: 12/16/14 Account Number: ███████████

************** My Community Free Checking ████████ *********************

**********   REWARD POINT SUMMARY   ████████ ******************
STMT DATE  DESCRIPTION                 BEGINNING    POINTS     REDEEMED/    ENDING
                                       BALANCE +   EARNED  -   EXPIRED  =  BALANCE
11/25/2014 Even >More Rewards              30          0          30          0
************************************************************************

Account Summary
Previous Statement Date: 11/14/14
       Beginning                 Interest                  Service          Ending
        Balance   +  Deposits  + Paid -  Withdrawals - Charge   %   Balance
      17,071.03         .00       .00     17,071.03      .00            .00

Account Detail
    Date Description                     Credits        Debits      Balance
    11/14 Balance Forward                                          17,071.03
    11/17 Withdrawal                                 10,000.00-      7,071.03
    11/24 Withdrawal                                  5,000.00-      2,071.03
    11/25 CLOSEOUT                                    2,071.03-           .00

Statement from 11/15/14 Thru 11/25/14

*************Summary of Deposit Accounts **********************************
AP    ACCOUNT                    BALANCE INT-RATE%   YTD-INT YTD-PENALTY   MATURITY
CK    ██████████                    .00

    EFF 11/1/14, THE ADDRESS TO REPORT A LOSS RELATING TO A SUBSTITUTE
    CK POSTED TO YOUR ACCT HAS CHANGED TO NEW YORK COMMERCIAL BANK, ATTN:
    RISK MGNT, NYCB PLAZA, 102 DUFFY AVE., HICKSVILLE, NY 11801.

    EFF 11/22/14, THE ADDRESS TO REPORT ERRORS OR QUESTIONS RELATING TO
    ELECTRONIC TRANSFERS HAS CHANGED TO NEW YORK COMMERCIAL BANK, ATTN:
    CARD SERVICES DEPT, NYCB PLAZA, 102 DUFFY AVE., HICKSVILLE, NY 11801

Kara E. Neaton, Esq.
Kaye Scholer LLP
250 West 55th Street
New York, New York  10019-9710
Telephone:  (212) 836-8000
Facsimile:  (212) 836-8689
kara.neaton@kayescholer.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
In re:                                                          :
                                                                :      Chapter 11
Motor Parkway Enterprises, Inc.,                                 :      Case No. : 14-75667-ast
                                                                :
                    Debtor.                                      :
-----------------------------------------------------------x

### DECLARATION OF CHITRA KHATRI

1.  My name is Chitra Khatri.  I submit this declaration in support of the claims of Sohail

    Muhammad in the above-captioned matter and in opposition to the objections to those

    claims.

2.  I worked for about two years as a daytime cashier at the Holbrook gas station location of

    the gas station business owned and operated by Steven Keshtgar.  In the course of

    working there, I came to know an employee of Mr. Keshtgar's gas station operation

    named Sohail Muhammad.

3.  Mr. Muhammad worked as a different type of cashier from me.  He would travel from

    gas station to gas station collecting money and depositing it in the gas stations' bank

    accounts.

4.  Every few months, Mr. Muhammad would come to my gas station to pick up a check

    from my gas station's safe. The check would be made out from one gas station to the

    Holbrook gas station. He would then deposit that check into the Holbrook gas station's

2016-03-07 17:08        MCPL Centereach Fax 6315859595 >> 16466164648           P 3/4

account.  Then, a day or two later, or after a weekend, he would return and I would pay

him his wages for the past month in cash, using the money he had deposited.

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct. Executed on March 7, 2016.

Chitra Khatri

Scott D. Talmadge, Esq.
Kaye Scholer LLP
250 West 55th Street
New York, New York  10019-9710
Telephone:  (212) 836-8000
Facsimile:  (212) 836-8689
holly.martin@kayescholer.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

```
------------------------------------------------------x
In re:                                            :
                                                  :   Chapter 11
Motor Parkway Enterprises, Inc.,                  :   Case No. : 14-75667-ast
                                                  :
                  Debtor.                         :
------------------------------------------------------x
```

### MEMORANDUM OF LAW IN SUPPORT OF CREDITOR SOHAIL MUHAMMAD'S PROOF OF CLAIM AND IN OPPOSITION TO DEBTOR'S OBJECTIONS

By and through his attorneys at Kaye Scholer, LLP, Creditor Sohail Muhammad submits this statement in support of his Proof of Claim and in Opposition to Debtor Motor Parkway Enterprises, Inc.'s Objections.

### PRELIMINARY STATEMENT

Under federal and state labor law, Debtor Motor Parkway employed Creditor Muhammad on its own and jointly with other individuals and entities that were part of the Keshtgar gas station enterprise and it is liable for the failure to pay him properly.  That Debtor and its joint employers paid Mr. Muhammad "off the books" in cash explains why it has no records of his employment, but it does not alter the economic reality that he worked for it and was paid by it and was, legally, its employee.  Under labor law, each and every joint employer that employs an employee is jointly and severally liable for failure to pay legally-required wages to an employee.  Moreover, under both state and federal law, labor law violations result in statutorily-specified liquidated damages.  The Supreme Court established long ago that liquidated damages under the

1

Fair Labor Standards Act (FLSA) are not waivable. Since federal liquidated damages serve a compensatory purpose and state liquidated damages under the New York Labor Law ("NYLL") serve a punitive purpose, courts have held that both are available to employees who have been underpaid in violation of those Acts.  Finally, the minimum wage for employees who fall under New York's wage order for miscellaneous industries includes an extra hour of pay each day at the minimum wage for any day in which the spread of hours in the employee's work schedule is greater than ten hours from the start of the work day to the end.  Thus, Debtor is obligated to pay Creditor for unpaid wages owed, including spread of hours pay, and federal and state liquidated damages.

## FACTS

From around April 2012 until the end of 2014, creditor Sohail Muhammad worked as a traveling cashier for a gas station enterprise on Long Island. Steven Keshtgar, among other individuals and entities, owned and ran this enterprise. Muhammad Decl. ¶¶ 2-4, 35-37. Keshtgar assigned Sudheer Kumar to manage the day-to-day operation of the gas station enterprise through the company Marketing Inc. of Islandia, which served as the central office for the operation. *Id.* at ¶ 3. In short, Mr. Muhammad worked for the entire gas station enterprise under the regular direction of Mr. Keshtgar and Mr. Kumar.

**Creditor's Work for Debtor and the Other Parts of Keshtgar's Gas Station Enterprise**

Starting in 2006, Creditor Muhammad worked as a cashier in one of the gas stations. *Id.* at ¶ 2. However, around March or April of 2012, he was promoted to another position. *Id.* at ¶ 4-5.  Creditor Muhammad's new position involved driving among fourteen different gas stations owned by corporate entities under Mr. Keshtgar, including Debtor's gas station and gas stations

2

owned by Medford Development Corporation, Oceanside Enterprises, Inc., Islip Development Corporation, Holbrook Development Corporation, and Wheeler Development. *Id.* at ¶¶ 6-7.

Creditor Muhammad completed various tasks for each of these gas stations, including Debtor. For each of the gas stations, including for Debtor Motor Parkway, Creditor Muhammad collected cash from each station's safe to deposit into the bank account of the corporation that owned that particular gas station. Muhammad Decl. ¶¶ 6, 9; *see* Muhammad Decl. Ex. A. Sometimes, Mr. Kumar or Mr. Keshtgar told Creditor Muhammad to take money from some of these corporate accounts and even Mr. Muhammad's personal money and add it to a particular account that needed more money. Muhammad Decl. ¶ 41. In this way, the money from all of the gas stations was frequently intermingled. Creditor Muhammad was on file at the bank as a person who frequently made deposits into all of these accounts, including Debtor's corporate account. *Id.* at ¶ 11.

In addition, at Debtor's gas station and Wheeler's gas station, Creditor Muhammad brought merchandise when it was requested by store managers. Muhammad Decl. ¶ 13; *see* Muhammad Decl. Ex. B. At gas stations where there were mechanics, Creditor Muhammad collected rent checks from the garages and deposited those checks into the corporate accounts. Muhammad Decl. ¶ 12. At all gas stations, including Debtor, Creditor Muhammad trained workers to monitor gas station safety and prepare for inspections. *Id.* at ¶ 15; *see* Muhammad Decl. Ex. C. At Debtor's gas station, Creditor Muhammad would bring cash to the bank to get coins for the manager at the store at Debtor's gas station. Muhammad Decl. ¶ 14. When Keshtgar decided to change prices on merchandise at the stores, Creditor Muhammad made sure the new prices were advertised at each gas station. *Id.* at ¶ 16. At Sudheer Kumar's request, Creditor

3

Muhammad gave rides to gas station employees who needed to get to work, including to Debtor's gas station. *Id.* at ¶ 17.

Creditor Muhammad also completed work assignments for Mr. Kumar and Mr. Keshtgar individually. Each day, Creditor Muhammad would report to Mr. Kumar when he would start working. Muhammad Decl. ¶ 8. He would report the day's deposits to either Mr. Kumar, Mr. Keshtgar or both of them every day. *Id.* at ¶ 10. Additionally, he would fax the deposits to the Marketing Inc. of Islandia office. *Id.* Every day, Creditor Muhammad would also monitor gas and merchandise prices at competitor gas stations and report and record these figures for Mr. Keshtgar himself. *Id.* at ¶ 8.

**Debtor Paid Creditor Muhammad**

Debtor paid Creditor Muhammad directly, along with other gas stations. Muhammad Decl. ¶¶ 29-31, 33; *see e.g.*, Muhammad Decl. Ex. D. However, Debtor and the other gas stations paid Mr. Muhammad in cash and off the books. As set for in Mr. Muhammad's declaration, while Marketing Inc. of Islandia would pay him $175 per week by check for his 72-84 hours of work, the rest of his pay would come monthly from the cash registers of the different gas stations. In any given month, he would deposit a check for the amount of his cash pay for the past month into the account of a gas station designated by the office. He would then return to the gas station a day or a few days later to be paid by that gas station in cash. Debtor was one of the gas stations that paid Mr. Muhammad in cash in this manner.

In the fall of 2014, Mr. Muhammad stopped receiving these cash payments and only received $175 per week for September through November 2014. Thus, for his last thirteen weeks of work, he was never paid the additional $725 per week in cash that had been part of his agreed upon wages. Muhammad Decl. ¶¶ 38. As a result, his pay fell below the federal and state

4

minimum wage.  As in the earlier period, he did not receive overtime or spread of hours pay for this period.

<div align="center"><u>**ARGUMENT**</u></div>

I.  **Debtor jointly employed Creditor Sohail Muhammad and is thus jointly and severally liable for Creditor Muhammad's Claim.**

Creditor Muhammad worked for a gas station operation owned and run by Steven Keshtgar, which included at least fourteen gas stations, each operating under a separate corporate entity, and with centralized financial operations run out of the Marketing Inc. of Islandia office. Under labor law, the formal distinctions among the various gas station corporations do not affect their liability for unpaid wages owed.  Under labor law, all of the entities that "suffered or permitted" him to work for them, regardless of labels or formalities, were his employer. Whether debtor is seen as part of a single enterprise consisting of all the gas station corporations or as a joint employer with those other corporations, Debtor, like the other corporate entities in bankruptcy, as well as Mr. Keshtgar, Mr. Kumar, and Marketing, Inc. of Islandia, is jointly and severally liable for all of the hours that Mr. Muhammad worked for this interconnected gas station operation for which he was not properly paid.

Thus, contrary to Debtor's argument, the fact that he was also employed by another entity, Marketing, Inc. of Islandia is irrelevant to Debtor's liability. Instead, the question that determines Debtor's liability is whether Debtor suffered or permitted Creditor Muhammad to work.  This is not a close case. Mr. Muhammad routinely performed work for Debtor and was repeatedly paid by Debtor.  The fact that Debtor paid him in cash and "off the books" does not absolve it of liability.  Indeed, Debtor's unlawful failure to notify Mr. Muhammad of the terms of his pay or to provide him with wage statements when it paid him gives rise to additional penalties against Debtor under the New York Labor Law.

<div align="center">5</div>

A.  Applicable Law

   *1.  Employment Under the Fair Labor Standards Act*

   The FLSA's definition of the employment relationship is famously broad, both explicitly

and in its interpretation. *Rutherford Food Corp. v McComb*  , 331 U.S. 722, 728 (1947) ("The

[FLSA] definition of 'employ' is broad."); *U.S. v Rosenwasser*  , 323 U.S. 360, 363 n.3 (1945)

(quoting Sen. Hugo Black 81 Cong. Rec. 7657 (1938)) (noting that the FLSA standard for

"employee" "'had been given 'the broadest definition that has ever been included in any one

act'"); *Zheng v Liberty Apparel Co. Inc.*   , 355 F.3d 61, 66 (2d Cir. 2003) ("[The definition of

'employ' under the FLSA] is necessarily a broad one, in accordance with the remedial purpose of

the FLSA.").

   Under the FLSA, "'[e]mploy' includes to suffer or permit to work." 29 U.S.C. § 203(g)

(2015). An employee is "any individual employed by an employer." 29 U.S.C. § 203(e)(1)

(2015). An employer is "any person acting directly or indirectly in the interest of an employer in

relation to an employee." 29 U.S.C. § 203(d) (2015). The definition is independent of common

law or other employment law definitions. *Nationwide Mut. Ins. Co. v Darden*   , 503 U.S. 318, 326

(1992) ("This [definition of "employ" under the FLSA], whose striking breadth we have

previously noted . . . stretches the meaning of 'employee' to cover some parties who might not

qualify as such under a strict application of traditional agency law principles."); *Barfield v New

York City Health & Hosps. Corp.*  , 537 F.3d 132, 146 (2d Cir. 2008) (quoting *Zheng*  , 355 F.3d at

66) (finding that nurse employed by multiple staffing agencies for work at the same hospital was

employed by that hospital under the FLSA and stating that the "broad" definition of "employ"

under the FLSA requires a court to "'look[] beyond a defendant's formal control over the

physical performance of a plaintiff's work'"), *abrogation recognized*  on attorney fee

6

determination in *Adorno v Port Auth of New York and New Jersey*, 685 F. Supp. 2d 507

(S.D.N.Y. 2013). Thus, formal recognition of the employment relationship by the putative

employer is not required for the employer to be subject to the requirements of the FLSA.

2. *Joint Employment Under the Fair Labor Standards Act*

Under these broad definitions, one or more employers may jointly employ an employee.

29 C.F.R. § 791.2(a) (2016) (discussing joint employment). Each joint employer is jointly and

severally liable for any and all FLSA violations suffered by a jointly-employed employee during

that employee's employment with any joint employer, although entities remain separate

corporate entities in other areas of the law. *Id.* According to applicable regulations:

> if the facts establish that the employee is employed jointly by two
> or more employers, i.e., that employment by one employer is not
> completely disassociated from employment by the other
> employer(s), all of the employee's work for all of the joint
> employers during the workweek is considered as one employment
> for purposes of the Act. In this event, *all joint employers are
> responsible both individually and jointly for compliance* with all
> of the applicable provisions of the act, including the overtime
> provisions, with respect to the entire employment for the particular
> workweek.

*Id.* (emphasis added). *See also Arculeo v On-Site Sales & Marketing LLC*, 425 F.3d 193 (2005)

("There is well-established authority under this theory that . . . an employee . . . may impose

liability for certain violations of employment law not only on the nominal employer but also on

another entity comprising part of the single integrated employer."); *see also Chao v Barbeque*

*Ventures LLC*, No. 8:06CV676, 2007 WL 5971772, at *4 (D. Neb. Dec. 12, 2007) *aff'd*, 547

F.3d 938 (8th Cir. 2008) (assessing single employer theory to determine liability for overtime

payments); *Juarez v 449 Restaurant Inc.*, 29 F. Supp. 3d. 363, 367 (S.D.N.Y. 2014) (specifying

that the "single integrated enterprise" test assesses single employer status for FLSA purposes for

otherwise separate entities).

7

Federal courts have generally found liability for New York Labor Law violations to track liability under the FLSA. *See e.g. Galeana v Lemongrass on Broadway Corp.*, 2014 WL 1364493, at *15 (S.D.N.Y. Apr. 4, 2014); *see also Doo Nam Yang v ACBL Corp.*, 427 F. Supp. 2d 327, 342-43 (S.D.N.Y. 2005) (stating that the New York Labor Law definition of "employer" is "similarly expansive" when compared to the FLSA and holding that corporate owner was jointly and severally liable for labor law violations under FLSA and New York Labor Law); *see also Bonito v Avalon Partners Inc.*, 106 A.D.3d 625 (1st Dep't 2013) (reinstating claim of joint employer liability for individual who partly owned and managed the employer's business). Thus, if joint employment exists here, that gives rise to joint and several liability by the Debtor and other gas stations for both state and federal labor law violations.

Whether joint employment exists "depends upon all the facts in the particular case." 29 C.F.R. § 791.2(a) (2016). The DOL identifies the three following situations as situations in which joint employment exists: 1) where an arrangement exists to share or exchange employees; 2) where employers act in each other's interest in relation to the employee; or 3) where employers are "not completely dissociated" and "may be deemed to share control of the employee." 29 C.F.R. § 791.2(b) (2016). *See also Barfield*, 537 F.3d 132, 140-41 (finding and discussing implications of joint employment for overtime); *Terry v Spinelli*, 980 F. Supp. 2d 366 (E.D.N.Y. 2013) (concluding that "no reasonable jury" could find absence of joint employment even where joint employer did not formally control employee).

Given these broad definitions, the Supreme Court has directed that courts should evaluate joint employment under the FLSA based on economic reality rather than technical concepts. *Goldberg v Whitaker House Co-op Inc.*, 366 U.S. 28, 33 (1961). The Second Circuit applies the 'economic reality' test in a flexible manner, rejecting any rigid application of factors.

8

*Barfield*, 537 F.3d 132, 141-42. Instead, the Second Circuit encourages courts to make joint employment determinations based on "the circumstances of the whole activity . . . viewed in light of economic reality." *Zheng*, 655 F.3d at 71-72. These factors have included determination of rate and method of pay, whether employees were shared among entities, supervision, control over employees' work schedules and conditions of employment, performance of functions essential to the enterprise, the power to hire and fire, that work was performed on the premises, and permanence and duration of working relationships, among others. *Id.* at 72; *Carter v Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (presenting traditional factors whose exclusive application *Zheng* rejected as "unduly narrow," but which courts have since applied where relevant to facts); *Barfield*, 537 F.3d 132, 142-43 (explaining the tailored application of the test in three different cases); *see also Herman v RSR Sec. Serv. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (finding joint employment to find corporate chairman liable as a joint employer even where direct supervision of employees by chairman did not exist).

"[T]he 'economic reality' test—which has been distilled into a nonexclusive and overlapping set of factors—gives content to the broad 'suffer or permit' language in the statute." *Zheng*, 355 F.3d at 75-76. These tests are flexible and no one factor is dispositive, resulting in determinations based on the totality of the circumstances. *Barfield*, 537 F.3d 132, 141-42. The Second Circuit has described the economic realities test as "a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances," *id.* at 141-142, and "'a nonexclusive and overlapping set of factors' to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA," *id.* at 143 (quoting *Zheng*, 355 F.3d at 75-76). The Second Circuit has rejected a commitment to the exclusive use of factors courts have traditionally employed

9

under the economic realities include – including, but not limited to the power to hire and fire, supervision and control of work schedules and working conditions, determination of the rate of payment and/or maintenance of employment records – because such a test is "unduly narrow," instead encouraging courts to base their joint employment determinations on "the circumstances of the whole activity . . . viewed in light of economic reality," which can include some or all of these factors, but that is not rigidly limited to them or any single factor or set of factors. *Zheng*, 655 F.3d at 71-72; *see also Barfield*, 537 F.3d 132, 142 (explaining the tailored application of the test in three different cases); *Herman v RSR Sec. Serv. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (finding joint employment to find corporate chairman liable as a joint employer even where direct supervision of employees by chairman did not exist).

Employers may be jointly liable under either a) a single enterprise theory in which multiple entities employ a worker by virtue of their participation in a single enterprise; and/or b) a joint employment theory in which separate entities are all employers, but may not be a single enterprise. The United States Department of Labor (DOL) recently issued guidance on how to evaluate claims of joint employment, including "horizontal" joint employment where different seemingly distinct businesses either form a single enterprise or are considered joint employers. *See* U.S. Dep't of Labor Wage & Hour Div., Adm'rs Interpretation No. 2016-1: Joint Employment Under the Fair Labor Standards Act and Seasonal Agricultural Worker Protection Act, 7 (issued Jan. 20, 2016), *available at* http://www.dol.gov/whd/flsa/Joint_Employment_AI.pdf, at 6-9 (describing factors for horizontal joint employment and addressing joint employment generally).

"Single enterprise," "single integrated enterprise" and horizontal joint employment tests focus on the interrelatedness of operations and, while no one factor is dispositive in analyzing

10

joint employment, this test may consider ownership, overlapping management, control over operations, inter-mingling (including administrative operations), supervision, supervisory authority, common employees, shared clients or customers and agreements between employers. *Juarez v 449 Restaurant Inc.*, 29 F. Supp. 3d 363, 366-68 (S.D.N.Y. 2014) (finding that facts pled alleged joint employment when considering interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control and stating that chain of restaurants and chain operator were "not insulate[d] from liability . . . because all Defendants that compose the enterprise count as Plaintiff's employer"); *Bravo v Established Burger One LLC*, No. 12 CIV. 9044 CM, 2013 WL 5549495, at *8 (S.D.N.Y. Oct. 8, 2013) (finding joint employment relationship was alleged where corporate defendants "moved employees and food among restaurants," paid employees using similar methods and from the same office, jointly advertised, and managed burger restaurants as one entity); *Chen v TYT E. Corp.*, No. 10 CIV. 5288 PAC, 2012 WL 5871617, at *3-5 (S.D.N.Y. Mar. 21, 2012) (granting summary judgment for plaintiffs where corporate owners were considered a single entity for purposes of the FLSA where restaurants were commonly managed, shared some physical spaces, and jointly operated labor relations or where an economic realities test was used); *Perez v Westchester Foreign Autos Inc.*, No. 11 CIV. 6091 ER, 2013 WL 749497, at *6-8 (S.D.N.Y. Feb. 28, 2013) (failing to grant motion to dismiss where chain of car dealerships and corporate officers were a single employer for the purposes of the FLSA).

   B.  Joint Employment in this Case

   Debtor Motor Parkway jointly employed Creditor Muhammad and thus is liable for FLSA violations committed during his employment. Under the applicable definition of employment and any iteration of the test for joint employment, Debtor Motor Parkway was

11

Creditor Muhammad's employer and joint employer and thus is liable for labor law violations

Creditor Muhammad suffered while he worked for Debtor and all other entities within the

Keshtgar gas station enterprise.

  a. *Motor Parkway Employed Mr. Muhammad.*

  Debtor Motor Parkway, among other entities, at the very least "suffer[ed] or permit[ed]"

Creditor Muhammad to work, which is all that is required to "employ" someone under the

FLSA.  Specifically, Creditor Muhammad regularly worked for Debtor and was paid by Debtor.

Mr. Muhammad provided a range of services for Debtor, including depositing its money in its

bank accounts, purchasing products for its retail store, bringing it coins, and training its

employees to respond to inspections. Debtor directly requested or was at least aware that

Creditor Muhammad was performing all of these tasks to further its own interests, thereby

suffering or permitting Creditor Muhammad to work for it.

  Moreover, Debtor, along with other entities in the gas station operation, would pay Mr.

Muhammad a part of his wages.  In some months, Mr. Muhammad would deposit funds into the

account of Motor Parkway, and then the cashier of the gas station would subsequently pay him

the cash portion of his wages from cash obtained from that account.

  Thus, there is no question that Mr. Muhammad was "employed" by Motor Parkway.

  b. *Motor Parkway Jointly Employed Mr. Muhammad with the Other Gas Stations in Mr.*

   *Keshtgar' Enterprise.*

  Debtor Motor Parkway and the other gas stations at which Creditor Muhammad worked,

together with Marketing Inc. of Islandia, present a textbook case of joint employment. The

connections between all of these entities are both numerous and significant. Following the

DOL's recent guidance, *see especially page 8,* the joint employment relationship is evident: 1)

Mr. Keshtgar ultimately owned all of the gas stations; 2) Mr. Keshtgar, with the assistance of Mr. Kumar and through Marketing Inc. of Islandia, ran all of the gas stations; 3) Mr. Keshtgar, with the assistance of Mr. Kumar, had control over all of the gas stations and ran them as one enterprise, including transferring funds from one gas station to another to cover payroll;  and 4) the operations were financially intermingled and staff was shared, including Mr. Muhammad, who reported the deposits of all of the gas stations in a single daily ledger. Clearly, these operations were far beyond the "not completely dissociated" joint employment criterion adopted by the DOL and instead were highly integrated, as the fact that Creditor Muhammad was dispatched to work on any given day for fourteen gas stations demonstrates.

Creditor Muhammad was also paid directly by multiple gas stations he worked for, including Debtor Motor Parkway. Thus, Creditor Muhammad was a jointly employed employee of Debtor Motor Parkway because Debtor Motor Parkway was part of the larger, single operation that made up the Keshtgar gas station enterprise.

Following a reasonable and fact-based assessment, it is not a controversial assertion that Debtor Motor Parkway employed Creditor Muhammad and was a joint employer with other entities within the Keshtgar gas station enterprise, but rather an undeniable reflection of the circumstances. Under the explicit language of the FLSA and its interpretations, Debtor employed Creditor Muhammad. Under any conceptualization of the joint employment test, Debtor Motor Parkway jointly employed Creditor Muhammad.  Thus, it is jointly and severally liable for FLSA and New York Labor Law violations suffered by Creditor Muhammad during his employment with the Keshtgar enterprise.

**II.    Creditor Muhammad is Entitled to Liquidated Damages under the Fair Labor Standards Act.**

13

The FLSA prohibits employers from paying less than the minimum wage (Section 206) for each hour worked or an overtime rate of less than one-and-a-half times the regular rate of pay for hours worked over 40 in a week (Section 207).

Claims under Sections 206 and 207 of the FLSA, as well as for liquidated damages, accrue "when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends." 29 C.F.R. § 790.21(b). The FLSA recognizes that not paying the legally-minimum wage causes harms. Thus, to compensate workers who have not been paid correctly under Sections 206 or 207, Section 216(b) of the FLSA provides

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

Thus, the statutorily-mandated damages for violations of the substantive provisions is the payment of 100% of unpaid wages as liquidated damages.[1]

The Supreme Court ruled early on that liquidated damages based on an undisputed underpayment cannot be waived. *Brooklyn Savings Bank v O'Neil,* 324 U.S. 697 (1945). In that case, the employee was eventually paid the wages he was owed and then sued to recover liquidated damages. The Court explained that

> The legislative history of the Fair Labor Standards Act shows an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and wellbeing and the free flow of goods in interstate commerce. The statute was a recognition of the fact that, due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts

---

[1] 29 U.S.C. § 260 allows for a good faith defense to the mandate to pay 100% liquidated damages, but that provision is clearly not applicable here.

14

> on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce. To accomplish this purpose, standards of minimum wages and maximum hours were provided. Neither petitioner nor respondent suggests that the right to the basic statutory minimum wage could be waived by any employee subject to the Act. No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act. We are of the opinion that the same policy considerations which forbid waiver of basic minimum and overtime wages under the Act also prohibit waiver of the employee's right to liquidated damages.

324 U.S. at 706-07.  Thus, once the employer fails to pay minimum wages or overtime pay on the required pay day, the employee is entitled not only to those unpaid wages, but also to liquidated damages and those damages cannot be waived.

Creditor Muhammad is owed minimum wage and unpaid overtime pay under the FLSA. He is therefore entitled to liquidated damages equal to the amount owed under the FLSA, and he cannot waive his claim to liquidated damages.

### III.   Creditor Muhammad is Also Entitled to State Law Liquidated Damages in an Amount Equal to 100% Unpaid Wages.

New York Labor Law also requires payment of a minimum wage, Section 663, and its implementing regulations require payment of an overtime rate of one-and-a-half times the regular rate.  12 NYCRR § 142-2.1 and 2.2.  NYLL § 191(1)(a) requires payment of agreed-upon wages on a weekly basis for manual employees.  NYLL § 198(1-a) provides for payment of liquidated damages of 100% for any wage claim in which the employee prevails.  *See also* NYLL § 663(1) (100% liquidated damages for violations of minimum wage requirements).[2]

Courts can award 100% liquidated damages under both the FLSA and the NYLL. Various courts have held that courts can award liquidated damages under both the FLSA and the NYLL, because they serve different purposes:  FLSA liquidated damages are compensatory, *see*

---

[2] As under federal law, state law allows for a good-faith defense.  NYLL §§ 198(1-a) and 663(1).  Again, that defense is inapplicable here.

15

*Brooklyn Savings Bank* , 324 U.S. at 707, whereas liquidated damages under the NYLL are

punitive.  *See e.g. Kim v Kum Gang Inc.,*        2015 WL 2222438 at *29 (S.D.N.Y. March 19,

2015), citing *Yu G. Ke v Saigon Grill Inc.*        , 595 F. Supp.2d 240, 261-62 (S.D.N.Y. 2008).  *See*

*also Perez v Platinum Plaza 400 Cleaners Inc.*        , 2015 WL 1881080 at *3 (S.D.N.Y. Apr. 24,

2015); *Rosendo v Everbrighten Inc.*        , 2015 WL 1600057 at *5-6 (S.D.N.Y. Apr. 7, 2015); *Jin M.*

*Cao v Wu Liang Ye   Lexington Restaurant,*   2010 WL 40159391 at *5 (S.D.N.Y. Sept. 30, 2010);

*but see Li Ping Fu v Pop Art Inc.,*        No. 10 Civ. 8562 (DLC) (AJP), 2011 WL 4552436, at *5

(S.D.N.Y. Sept. 19, 2011) (Report & Rec.), *adopted as modified on other grounds,*   2011 WL

6092309 (S.D.N.Y. Dec. 7, 2011); *Chun Je Yin v Kim,*    No. 07–CV–1236 (DLI)(JO), 2008 WL

906736, at *7 (E.D.N.Y. Apr. 1, 2008).  Therefore, claimants are entitled to both federal and

state liquidated damages.

Creditor Muhammad has valid claims for unpaid wages under the NYLL, and is therefore

entitled to liquidated damages under the NYLL.

**IV.    Creditor Muhammad is Entitled to Damages for Violations of NYLL Requirements**

**for Spread of Hours Pay**

New York Labor Law authorizes the promulgation of wage orders for different

industries.  The wage order for miscellaneous industries, which includes gas stations, can be

found at 12 N.Y.C.R.R. Part 142.  Those regulations set forth New York State's rules concerning

the minimum wages to be paid to workers.

Among other rules, the New York minimum wage regulations for miscellaneous

industries requires employers to pay an extra hour at the minimum wage for any day in which the

"spread of hours" from the start of the work day to the end of the work day is greater than 10

hours.  12 NYCRR § 142-2.4.

16

Since Creditor Muhammad generally worked 12-hour shifts, he is entitled to spread of hours pay.

## **CONCLUSION**

For the foregoing reasons, Debtor is liable for unpaid wages to Creditor Muhammad under the FLSA and New York Labor Law, including liquidated damages and spread of hours pay.

Dated:  New York, New York
       March 7, 2016

                         By:  *sScott D. Talmadge*
                         KAYE SCHOLER LLP
                         250 West 55th Street
                         New York, New York 10019
                         Telephone: (212) 836-8000
                         Facsimile:  (212) 835-8689
                         *Attorneys for Sohail Muhammad*

17

| Employee | SSN | Check Number | Check Date | Gross Pay |
|---|---|---|---|---|
| SOHAIL, MUHAMMAD | | 50608 | 12/5/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50596 | 11/28/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50584 | 11/21/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50571 | 11/14/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50558 | 11/7/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50545 | 10/31/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50532 | 10/24/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50519 | 10/17/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50505 | 10/10/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50493 | 10/3/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50480 | 9/26/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50467 | 9/19/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50454 | 9/12/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50441 | 9/5/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50429 | 8/29/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50416 | 8/22/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50403 | 8/15/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50390 | 8/8/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50377 | 8/1/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50364 | 7/25/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50351 | 7/18/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50338 | 7/11/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50326 | 7/3/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50313 | 6/27/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50300 | 6/20/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50287 | 6/13/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50274 | 6/6/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50262 | 5/30/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50250 | 5/23/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50238 | 5/16/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50226 | 5/9/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50215 | 5/2/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50203 | 4/25/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50191 | 4/18/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50179 | 4/11/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50167 | 4/4/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50155 | 3/28/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50143 | 3/21/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50131 | 3/14/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50119 | 3/7/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50107 | 2/28/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50094 | 2/21/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50082 | 2/14/2014 | 175 |

| | | | |
|---|---|---|---|
| SOHAIL, MUHAMMAD | 50070 | 2/7/2014 | 175 |
| SOHAIL, MUHAMMAD | 50058 | 1/31/2014 | 175 |
| SOHAIL, MUHAMMAD | 50046 | 1/24/2014 | 175 |
| SOHAIL, MUHAMMAD | 50034 | 1/17/2014 | 175 |
| SOHAIL, MUHAMMAD | 50022 | 1/10/2014 | 175 |
| SOHAIL, MUHAMMAD | 50010 | 1/3/2014 | 175 |

2/20/2016                       Report Creation

## From-To Gross Pay/Employee

Report Created: 2/20/2016 2:17:49 PM        Back to Report List | Export To Excel | Export To CSV

| Employee | SSN | Div | Dept | Check Number | Check Date | Gross Pay |
|----------|-----|-----|------|--------------|------------|-----------|
| SOHAIL, MUHAMMAD | | | 0100 | 50097 | 1/20/2015 | 925.14 |
| SOHAIL, MUHAMMAD | | | 0100 | 50095 | 12/16/2014 | 861.44 |
| SOHAIL, MUHAMMAD | | | 0100 | 50093 | 12/9/2014 | 865.40 |
| SOHAIL, MUHAMMAD | | | 0100 | 50091 | 11/28/2014 | 868.16 |
| SOHAIL, MUHAMMAD | | | 0100 | 50089 | 11/25/2014 | 863.00 |
| SOHAIL, MUHAMMAD | | | 0100 | 50087 | 11/18/2014 | 873.32 |
| SOHAIL, MUHAMMAD | | | 0100 | 50085 | 11/12/2014 | 865.88 |
| SOHAIL, MUHAMMAD | | | 0100 | 50083 | 10/31/2014 | 866.48 |
| SOHAIL, MUHAMMAD | | | 0100 | 50081 | 10/24/2014 | 852.80 |
| SOHAIL, MUHAMMAD | | | 0100 | 50079 | 10/17/2014 | 874.88 |
| SOHAIL, MUHAMMAD | | | 0100 | 50077 | 10/10/2014 | 870.32 |
| SOHAIL, MUHAMMAD | | | 0100 | 50075 | 10/3/2014 | 883.28 |
| SOHAIL, MUHAMMAD | | | 0100 | 50073 | 9/26/2014 | 870.68 |
| SOHAIL, MUHAMMAD | | | 0100 | 50071 | 9/19/2014 | 878.84 |
| SOHAIL, MUHAMMAD | | | 0100 | 50069 | 9/12/2014 | 876.08 |
| SOHAIL, MUHAMMAD | | | 0100 | 50067 | 9/5/2014 | 882.92 |
| SOHAIL, MUHAMMAD | | | 0100 | 50065 | 8/29/2014 | 878.48 |
| SOHAIL, MUHAMMAD | | | 0100 | 50063 | 8/25/2014 | 883.64 |
| SOHAIL, MUHAMMAD | | | 0100 | 50061 | 8/15/2014 | 873.08 |
| SOHAIL, MUHAMMAD | | | 0100 | 50059 | 8/8/2014 | 868.04 |
| SOHAIL, MUHAMMAD | | | 0100 | 50037 | 5/23/2014 | 848.24 |
| SOHAIL, MUHAMMAD | | | 0100 | 50035 | 5/16/2014 | 858.20 |
| SOHAIL, MUHAMMAD | | | 0100 | 50033 | 5/12/2014 | 854.36 |
| SOHAIL, MUHAMMAD | | | 0100 | 50031 | 5/2/2014 | 855.80 |
| SOHAIL, MUHAMMAD | | | 0100 | 50029 | 4/18/2014 | 881.84 |
| SOHAIL, MUHAMMAD | | | 0100 | 50027 | 4/11/2014 | 890.60 |
| SOHAIL, MUHAMMAD | | | 0100 | 50025 | 3/28/2014 | 843.92 |
| SOHAIL, MUHAMMAD | | | 0100 | 50023 | 3/24/2014 | 851.12 |
| SOHAIL, MUHAMMAD | | | 0100 | 50021 | 3/14/2014 | 855.44 |
| SOHAIL, MUHAMMAD | | | 0100 | 50019 | 3/7/2014 | 848.00 |
| SOHAIL, MUHAMMAD | | | 0100 | 50017 | 2/28/2014 | 848.00 |
| SOHAIL, MUHAMMAD | | | 0100 | 50015 | 2/21/2014 | 848.00 |
| SOHAIL, MUHAMMAD | | | 0100 | 50013 | 2/14/2014 | 848.00 |
| SOHAIL, MUHAMMAD | | | 0100 | 50011 | 2/7/2014 | 848.00 |
| SOHAIL, MUHAMMAD | | | 0100 | 50009 | 1/31/2014 | 848.00 |
| SOHAIL, MUHAMMAD | | | 0100 | 50007 | 1/24/2014 | 848.00 |
| SOHAIL, MUHAMMAD | | | 0100 | 50005 | 1/17/2014 | 848.00 |
| SOHAIL, MUHAMMAD | | | 0100 | 50001 | 1/3/2014 | 848.00 |
| SOHAIL, MUHAMMAD | | | 0100 | 50003 | 1/3/2014 | 848.00 |

Back to Report List

Copyright ©2003 All Rights Reserved.
Designated trademarks and brands are the property of their respective owners.
Use of this web site constitutes acceptance of the User Agreement and Privacy Policy.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
290 Federal Plaza
Central Islip N Y 11722

IN RE: Motor Parkway Enterprises, Inc

Case No. 14-75667-ast

Chapter 11

Debtor

### REQUEST TO PLACE A RESTRICTION ON A FILED DOCUMENT(s) and/or CLAIM(s)

The  Court _____ requests that the Court determine if access to Document(s) _____ No. 95 _____
filed in CM/ECF should be restricted.

The document or claim contains:

- [✓] Personal identifiers as set forth in Bankruptcy Rule 9037
  - Social Security Number
  - Taxpayer Identification Number
  - Birth Date
  - The name of an individual, other than the debtor, known to be and identified as a minor
  - Financial Account Number
- [ ] Trade Secrets
- [ ] Confidential Research, Development or Commercial Information
- [ ] Scandalous or Defamatory Matter
- [ ] Other: _____

**NOW, THEREFORE, IT IS HEREBY ORDERED, THAT**

- [✓] The Clerk's Office is directed to restrict access to the document.

- [✓] The filer is ordered to re-file the document together with all attachments, **redacted** as required by Bankruptcy Rule 9037, on or before March 9, 2016 _____.

- [ ] The Clerk's Office is directed not to restrict access to the document for the following reason(s):
  _____
  _____



Dated: March 8, 2016
        Central Islip, New York

_____
        Alan S. Trust
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
290 Federal Plaza
Central Islip N Y 11722

IN RE:  Motor Parkway Enterprises, Inc.

Case No. 14-75667-ast

Chapter 11

Debtor

### REQUEST TO PLACE A RESTRICTION ON A FILED DOCUMENT(s) and/or CLAIM(s)

The  Court _____ requests that the Court determine if access to Document(s) _____ No. 97 _____
filed in CM/ECF should be restricted.

The document or claim contains:

- [✓] Personal identifiers as set forth in Bankruptcy Rule 9037
  - Social Security Number
  - Taxpayer Identification Number
  - Birth Date
  - The name of an individual, other than the debtor, known to be and identified as a minor
  - Financial Account Number
- [ ] Trade Secrets
- [ ] Confidential Research, Development or Commercial Information
- [ ] Scandalous or Defamatory Matter
- [ ] Other: _____

**NOW, THEREFORE, IT IS HEREBY ORDERED, THAT**

- [✓] The Clerk's Office is directed to restrict access to the document.

- [✓] The filer is ordered to re-file the document together with all attachments, **redacted** as required by Bankruptcy Rule 9037, on or before March 9, 2016 _____.

- [ ] The Clerk's Office is directed not to restrict access to the document for the following reason(s):
  _____
  _____



**Dated: March 8, 2016**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
290 Federal Plaza
Central Islip N Y 11722

IN RE:  Motor Parkway Enterprises, Inc.

Case No. 14-75667-ast

Chapter 11

Debtor

### REQUEST TO PLACE A RESTRICTION ON A FILED DOCUMENT(s) and/or CLAIM(s)

The  Court _____ requests that the Court determine if access to Document(s) _____ No. 102 _____
filed in CM/ECF should be restricted.

The document or claim contains:

☑ Personal identifiers as set forth in Bankruptcy Rule 9037
  • Social Security Number
  • Taxpayer Identification Number
  • Birth Date
  • The name of an individual, other than the debtor, known to be and identified as a minor
  • Financial Account Number
☐ Trade Secrets
☐ Confidential Research, Development or Commercial Information
☐ Scandalous or Defamatory Matter
☐ Other: _____

**NOW, THEREFORE, IT IS HEREBY ORDERED, THAT**

☑ The Clerk's Office is directed to restrict access to the document.

☑ The filer is ordered to re-file the document together with all attachments, **redacted** as required by Bankruptcy
   Rule 9037, on or before March 9, 2016 _____.

☐ The Clerk's Office is directed not to restrict access to the document for the following reason(s):
   _____
   _____



Dated: March 8, 2016
       Central Islip, New York

_____
       **Alan S. Trust**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

In re:                                                          Case No. 14-75667 (AST)

Motor Parkway Enterprises, Inc.,                                Chapter 11

                                        Debtor

------------------------------------------------------------ x

### AFFIDAVIT OF SAVERIO SETTANNI

STATE OF NEW YORK      )
                       ) s.s.:
COUNTY OF SUFFOLK      )

**SAVERIO SETTANNI,** being duly sworn, deposes and says:

1.      I am the general manager of Motor Parkway Enterprises, Inc. (the "Debtor"), and,

as such, and fully familiar with the facts and circumstances surrounding the above-referenced

bankruptcy case and the claim filed by Sohail Muhammad ("Muhammad").

2.      I make this affidavit in support of the Debtor's Memorandum of Law in support

of the Debtor's Claim Objection,[1] and in opposition of the Motion.

3.      At all relevant times, both prior to and after the Petition Date, I was the general

manager of the Debtor.

4.      I oversaw the Debtor's employees, and, as such, I knew each and every employee

of the Debtor

5.      The Debtor never employed Muhammad, either prior to or after the Petition Date.

6.      Muhammad was an employee of two other entities owned by the principal of the

Debtor, Steve Keshtgar ("Keshtgar"): (1) Marketing of Islandia, Inc. ("Marketing"); and (2)

Middle Island Development Corp. ("Middle Island").

_____

[1] All capitalized terms used but not herein defined shall have the meaning ascribed to them in the Debtor's
Memorandum of Law in Support of the Claim Objection.

1

7.      Between January 2014 and January 2015, Muhammad collected paychecks from both Marketing and Middle Island.

8.      Copies of the payments made to Muhammad from Marketing and Middle Island during that time period are collectively attached hereto as **Exhibit A** (the "Payments").

9.      Part of Muhammad's duties as an employee of Marketing was to drive between different stations owned by Keshtgar, including the Debtor, to collect cash from the registers.

10.      Although the Muhammad may have gone to the Debtor's premises to collect cash, he was never an employee of the Debtor and was never paid by the Debtor.

11.      The Debtor never employed Muhammad as a cashier.

12.      The Debtor never paid an employee in cash.

13.      The Debtor's books and records reflect no employee records related to Muhammad.

14.      There Debtor has no: (1) employment application; (2) completed W-2; (3) time sheets; and (4) paystubs for Muhammad.

15.      All documentation, including the Payments, reflect that Muhammad was regularly getting paid from both Marketing and Middle Island during the relevant period.

16.      I am familiar with Muhammad because he was an employee of Marketing and Middle Island.

17.      Part of my responsibilities as general manager of the Debtor included making schedules, reviewing time sheets and processing payroll.

18.      I never scheduled Muhammad to work, nor did he ever appear on a time sheet for the Debtor.

19.      I never processed payroll for Muhammad from the Debtor.

2

20.    Muhammad was an employee of Marketing and Middle Island and regularly received checks from both.

21.    Muhammad was never employed by the Debtor and, as such, is not owed any money by the Debtor.

SAVERIO SETTANNI

Sworn to before me this
7 th day of March, 2016

NOTARY PUBLIC

Cooper J Macco
Notary Public, State of NY
No. 02MA6279300
Qualified In Suffolk County
Commission Expires April 8, 2017

3

| Employee | SSN | Check Number | Check Date | Gross Pay |
|---|---|---|---|---|
| SOHAIL, MUHAMMAD | | 50608 | 12/5/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50596 | 11/28/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50584 | 11/21/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50571 | 11/14/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50558 | 11/7/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50545 | 10/31/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50532 | 10/24/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50519 | 10/17/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50505 | 10/10/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50493 | 10/3/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50480 | 9/26/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50467 | 9/19/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50454 | 9/12/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50441 | 9/5/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50429 | 8/29/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50416 | 8/22/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50403 | 8/15/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50390 | 8/8/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50377 | 8/1/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50364 | 7/25/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50351 | 7/18/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50338 | 7/11/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50326 | 7/3/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50313 | 6/27/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50300 | 6/20/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50287 | 6/13/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50274 | 6/6/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50262 | 5/30/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50250 | 5/23/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50238 | 5/16/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50226 | 5/9/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50215 | 5/2/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50203 | 4/25/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50191 | 4/18/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50179 | 4/11/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50167 | 4/4/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50155 | 3/28/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50143 | 3/21/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50131 | 3/14/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50119 | 3/7/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50107 | 2/28/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50094 | 2/21/2014 | 175 |
| SOHAIL, MUHAMMAD | | 50082 | 2/14/2014 | 175 |

| | | | |
|---|---|---|---|
| SOHAIL, MUHAMMAD | 50070 | 2/7/2014 | 175 |
| SOHAIL, MUHAMMAD | 50058 | 1/31/2014 | 175 |
| SOHAIL, MUHAMMAD | 50046 | 1/24/2014 | 175 |
| SOHAIL, MUHAMMAD | 50034 | 1/17/2014 | 175 |
| SOHAIL, MUHAMMAD | 50022 | 1/10/2014 | 175 |
| SOHAIL, MUHAMMAD | 50010 | 1/3/2014 | 175 |

**From-To Gross Pay/Employee**

Report Created: 2/20/2016 2:17:49 PM                Back to Report List | ⬛Export To Excel | ⬛Export To CSV

| Employee | SSN | Div | Dept | Check Number | Check Date | Gross Pay |
|---|---|---|---|---|---|---|
| SOHAIL, MUHAMMAD | | | 0100 | 50097 | 1/20/2015 | 925.14 |
| SOHAIL, MUHAMMAD | | | 0100 | 50095 | 12/16/2014 | 861.44 |
| SOHAIL, MUHAMMAD | | | 0100 | 50093 | 12/9/2014 | 865.40 |
| SOHAIL, MUHAMMAD | | | 0100 | 50091 | 11/28/2014 | 868.16 |
| SOHAIL, MUHAMMAD | | | 0100 | 50089 | 11/25/2014 | 863.00 |
| SOHAIL, MUHAMMAD | | | 0100 | 50087 | 11/18/2014 | 873.32 |
| SOHAIL, MUHAMMAD | | | 0100 | 50085 | 11/12/2014 | 865.88 |
| SOHAIL, MUHAMMAD | | | 0100 | 50083 | 10/31/2014 | 866.48 |
| SOHAIL, MUHAMMAD | | | 0100 | 50081 | 10/24/2014 | 852.80 |
| SOHAIL, MUHAMMAD | | | 0100 | 50079 | 10/17/2014 | 874.88 |
| SOHAIL, MUHAMMAD | | | 0100 | 50077 | 10/10/2014 | 870.32 |
| SOHAIL, MUHAMMAD | | | 0100 | 50075 | 10/3/2014 | 883.28 |
| SOHAIL, MUHAMMAD | | | 0100 | 50073 | 9/26/2014 | 870.68 |
| SOHAIL, MUHAMMAD | | | 0100 | 50071 | 9/19/2014 | 878.84 |
| SOHAIL, MUHAMMAD | | | 0100 | 50069 | 9/12/2014 | 876.08 |
| SOHAIL, MUHAMMAD | | | 0100 | 50067 | 9/5/2014 | 882.92 |
| SOHAIL, MUHAMMAD | | | 0100 | 50065 | 8/29/2014 | 878.48 |
| SOHAIL, MUHAMMAD | | | 0100 | 50063 | 8/25/2014 | 883.64 |
| SOHAIL, MUHAMMAD | | | 0100 | 50061 | 8/15/2014 | 873.08 |
| SOHAIL, MUHAMMAD | | | 0100 | 50059 | 8/8/2014 | 868.04 |
| SOHAIL, MUHAMMAD | | | 0100 | 50037 | 5/23/2014 | 848.24 |
| SOHAIL, MUHAMMAD | | | 0100 | 50035 | 5/16/2014 | 858.20 |
| SOHAIL, MUHAMMAD | | | 0100 | 50033 | 5/12/2014 | 854.36 |
| SOHAIL, MUHAMMAD | | | 0100 | 50031 | 5/2/2014 | 855.80 |
| SOHAIL, MUHAMMAD | | | 0100 | 50029 | 4/18/2014 | 881.84 |
| SOHAIL, MUHAMMAD | | | 0100 | 50027 | 4/11/2014 | 890.60 |
| SOHAIL, MUHAMMAD | | | 0100 | 50025 | 3/28/2014 | 843.92 |
| SOHAIL, MUHAMMAD | | | 0100 | 50023 | 3/24/2014 | 851.12 |
| SOHAIL, MUHAMMAD | | | 0100 | 50021 | 3/14/2014 | 855.44 |
| SOHAIL, MUHAMMAD | | | 0100 | 50019 | 3/7/2014 | 848.00 |
| SOHAIL, MUHAMMAD | | | 0100 | 50017 | 2/28/2014 | 848.00 |
| SOHAIL, MUHAMMAD | | | 0100 | 50015 | 2/21/2014 | 848.00 |
| SOHAIL, MUHAMMAD | | | 0100 | 50013 | 2/14/2014 | 848.00 |
| SOHAIL, MUHAMMAD | | | 0100 | 50011 | 2/7/2014 | 848.00 |
| SOHAIL, MUHAMMAD | | | 0100 | 50009 | 1/31/2014 | 848.00 |
| SOHAIL, MUHAMMAD | | | 0100 | 50007 | 1/24/2014 | 848.00 |
| SOHAIL, MUHAMMAD | | | 0100 | 50005 | 1/17/2014 | 848.00 |
| SOHAIL, MUHAMMAD | | | 0100 | 50001 | 1/3/2014 | 848.00 |
| SOHAIL, MUHAMMAD | | | 0100 | 50003 | 1/3/2014 | 848.00 |

Back to Report List

Copyright ©2003 All Rights Reserved.
Designated trademarks and brands are the property of their respective owners.
Use of this web site constitutes acceptance of the User Agreement and Privacy Policy.

Kara E. Neaton, Esq.
Kaye Scholer LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8000
Facsimile: (212) 836-8689
kara.neaton@kayescholer.com

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
In re:                                     :
                                           :   Chapter 11
Motor Parkway Enterprises, Inc.,           :   Case No. : 14-75667-ast
                                           :
              Debtor.                      :
-----------------------------------------------------------x
```

### DECLARATION OF SOHAIL MUHAMMAD

1. My name is Sohail Muhammad.  I submit this declaration in support of my claims in the above-captioned matter and in opposition to the objections to those claims.

**Employment with Debtor and Debtor's Affiliates**

2. From about 2006 until around March or April of 2012, I worked as a cashier at the Oceanside Enterprises, Inc. gas station, owned and run by Steven Keshtgar.

3. From around March or April of 2012, I worked for a group of gas stations on Long Island.  As I understand it, Steven Keshtgar owned and ran the entire gas station operation through companies that he set up, including the Debtor in this matter.  The whole operation was managed day-to-day by Sudheer Kumar, working for the company Marketing Inc. of Islandia.  The offices for the whole gas station operation were at the site of Marketing Inc. of Islandia.

4. The claim for which I submit this declaration concerns my time working for Debtor after I was promoted to my new position in March or April of 2012.

1

5. Around March or April of 2012, Mr. Keshtgar and Mr. Kumar promoted me to a new position. I thought it was a promotion because Keshtgar and Kumar stopped charging me for supposedly lost inventory, once I took this new job. Also, they promised me a day off in my weekly schedule for the first time, although that often did not happen.

6. In my new job, I drove among fourteen different gas station locations run by Mr. Kumar for Mr. Keshtgar to collect money from the safe. I would then deposit that money into the gas stations' bank accounts. At times, I also filled in for store cashiers who were absent.

7. The companies that owned the gas stations I travelled to include Debtor, Medford Development Corporation, Airport Development Corporation, Oceanside Enterprises, Inc., Islip Development Corporation, Holbrook Development Corporation, and Wheeler Development Corporation.

8. Typically, I would contact Steven Keshtgar and Sudheer Kumar daily. Since my job consisted of travelling, often at very early hours, I would usually not stop by the office. Instead, at the beginning of my work day, I would call both Keshtgar and Kumar to let them know I was on the road. At the end of the day, I would also call them. In addition, Keshtgar would routinely call me to ask what competitor gas stations were charging for gas.

9. As I collected money from the gas stations and deposited the money at the bank, I kept detailed records of the money I collected and deposited on "Daily Cash Deposit Detail" forms. Attached hereto as Exhibit A is an example of such a form with the accompanying deposit slips.

10. At the end of every day, I would take a picture of this form with the totals of the collections from the various gas stations with my phone and send it to Mr. Keshtgar or Mr. Kumar.  I also faxed a copy to the office.

11. The banks I visited to deposit money from the gas stations had my identification on file as the person who would deposit money into the accounts of all of the gas stations I visited.

12. I also collected and deposited rent checks from mechanics at some of the gas stations.  I would deposit the money in the bank account of the gas stations.

13. Sudheer Kumar and I both had our names on a membership card with Restaurant Depot for Motor Parkway Enterprises.  Attached hereto as Exhibit B is a copy of the front and back of the membership card.  I used this card to buy fruits for Wheeler and cookies for the 7-Eleven store at Motor Parkway.  I would bring the cookies to the store for them to sell when Saeed, the manager of the 7-Eleven at Motor Parkway, called me and asked for them.

14. I also would bring cash to the bank to get coins for the manager at the store at Motor Parkway.

15. Another task I performed was to train the gas station cashiers and attendants at the different gas stations, including Motor Parkway, how to respond to an inspection by the County Department of Consumer Affairs or the Fire Marshal.  Inspectors would come from time to time to the various gas stations to look at the pumps and the Veeder-Root machines, which are machines inside the stores which show whether there is a leak or other problems in the pumps.  To prepare for these inspections, I would explain the paperwork to the cashiers and the attendants, so they could handle these inspections

3

themselves.  If they did not know how to respond, the gas station where they worked could be fined.  I also checked the pumps once a week to make sure there were no cracks in the pumps.  Attached hereto as Exhibit C is a form that I used about once a month to identify which gas stations I had given safety instructions to.

16. When Keshtgar changed prices on items in the gas station stores, I would go to the different gas stations to label the coolers or the shelves with the new prices.

17. Sometimes, at Sudheer Kumar's request, I would give rides to employees at different gas stations, including Motor Parkway, who needed them to get to work, even though the rides were after my regular hours.

**Work schedule**

18. On regular work days, I would generally work 12-hour days.  Sometimes, I would also work for several hours on my day off.

19. I did not sign in to any location, and after I stopped working as a cashier in early 2012, I never used a hand scanner, and no one ever told me to use a hand scanner.

20. For two months after I started my new job in 2012, I worked seven days per week for 12 hours each day. Mr. Kumar and Mr. Keshtgar told me that one of these days was for training.  I was never paid for the seventh day I worked each week.  In reality, my training for the new job lasted less than one full day.

21. After this initial two-month period, which ended around May of 2012, I worked six days per week for 12 hours and one day for about 3 hours until around October of 2012.

22. After the beginning of October 2012, I worked six 12-hour days per week and had one day off each week.

4

23. Beginning in mid-2013, I started working seven days per week, working 12-hour shifts each day for a total of 84 hours per week.

24. My schedule remained at 84 hours per week above, except that I sometimes worked more or hours.  For example, sometimes I would start work at 3 a.m. to collect money before the bank opened in the morning.

**Pay schedule**

25. When I started the new job, Mr. Kumar explained to me how I would be paid.  I was supposed to be paid based on a weekly rate.

26. When I first started in my new position in 2012, I was promised $800 per week. In around 2013, I was promised $850 per week. From around 2014 until the end of my employment with Debtor and other entities, I was promised $900 per week.

27. My wages were paid to me using two different regular payments.

28. The first payment consisted of a weekly check for $175.  These checks were from Marketing Inc. of Islandia.

29. The rest of my wages were paid in cash. Every month, I would call Mr. Kumar and/or Mr. Keshtgar and tell them I would need to be paid. Ali would then write out checks from one of Mr. Keshtar's gas station companies to another. For example, the check written on March 22, 2014 was written from "Medford Development Corp." to "Bohemia Development."  A copy of the check stub for that check is attached hereto as Exhibit D.

30. Ali would normally take the check to the gas station location to which the check was written and lock it in the safe for me to pick up. However, if I saw him at the bank or in the office, Ali would give me the check directly.

31. When I came to collect money from that location, I would pick up the check for my wages. Ali told me when I could deposit the check. I would then take the check to the bank and deposit it. Then, a few days later, the cashier at that store would pay me cash as my wages from the register of the location listed as the payor on the check I had deposited. During the almost three years I was paid this way, some of the cash payments came from the Motor Parkway gas station.

32. These cash payments were equal to the remainder of my pay for one month after I had received the $175 weekly checks. For example, when my pay was $900 per week, the $175 checks left $725 per week to be paid to me at the end of the month. Usually, that payment covered four weeks and was for $2,900 ($725 x 4 = $2,900) or for $3,625 for five weeks ($725 x 5 = $3625).

33. As a result of this system, over the course of a year, the larger share of my wages were paid in cash at some point by the fourteen gas stations I used to visit, including the gas station on Motor Parkway. At the end of the year, I would receive a W-2 from Marketing Inc. of Islandia for the sum of the weekly checks for $175. I would receive another W-2 from one of the gas station companies reporting the sum of the cash payments I received from the various gas stations over the course of the year. Attached hereto as Exhibit E is a copy of the W-2 form I received for 2013, from Ronkonkoma Development Corp. and a copy of a form from the Unemployment Insurance Division of the New York State Department of Labor attributing those payments in 2014 to Middle Island Development Corp. I do not know why the office attributed all of that pay to those two companies. The pay came from all of the different gas station companies.

6

34. I was paid in the manner described above through the end of August 2014.  I never received an overtime rate for the hours I worked over 40 in a week for that period.  I also never received a notice explaining my pay rate when I was hired for this job.  I never received a wage statement for the cash payments I received.

**End of My Employment with the Keshtgar Gas Stations**

35. My employers gave me time off for the month of December 2014 and I went away.

36. In January of 2015, I heard from Sudheer Kumar that the gas stations were in bankruptcy and that my job was gone.

37. I met with another manager, Mr. Ali, later in January, at Motor Parkway, and he told me he would let me know about another job.  He never got back to me.  I also asked Keshtgar for work and never heard back from him.

**Failure to Pay**

38. My employers never paid me the usual cash payment for September, October, and November of 2014, but I continued to receive my weekly checks for $175 during this period.  Thus, I was never paid the $9,425 (13 weeks times $725 per week) in cash I was supposed to be paid for those thirteen weeks.

39. In addition, I was never reimbursed for some of my expenses.  I generally drove over 3,500 miles per month in this job.  I was usually reimbursed for gas that I purchased but never for the full mileage.  The Internal Revenue Service mileage rates for cars are as follows:  .555 in 2012; .565 in 2013; and .560 in 2014.  Using these rates, my estimated mileage, and subtracting the gas reimbursements I received, I believe I am owed about $39,000 in unreimbursed mileage expenses.

40. Also, the last check I received for gas reimbursement bounced on about 12/19/14. The check was for about $685. Attached hereto as Exhibit F is a notice from the bank. I have still not received that payment of $685, and I had to pay a $10 fine because the check bounced.

41. In the last year I worked for the Keshtgar gas stations, Sudheer Kumar would often ask me to deposit my own money into the accounts of different gas stations in order to make sure that Keshtgar had enough money in those accounts. Usually, I would be reimbursed the next day or within a few days by the cashier at the gas station to which I had made the loan. However, in late November 2014, I made a deposit in the account of Medford for $10,000 that I withdrew from my personal bank account, at Sudheer Kumar's request. I have never been paid back for that loan. Attached as Exhibit G is a copy of the bank statement showing my withdrawal of $10,000 on November 17, 2014.

**Conclusion**

42. I understand that Debtor is claiming that I only worked for Marketing Inc. of Islandia and not for it. This is not true. I worked for all of the gas stations as parts of one operation, taking care of their deposits and the other matters described above. They all paid me, but they paid me in cash.

43. I have reviewed the attachment to the Proof of Claim I submitted in this matter. The person who helped me prepare my original proof of claim misunderstood some things and incorrectly estimated my claim, including incorrectly stating that I worked post-petition giving rise to an administrative expense claim. With this declaration, I am

clarifying the mistakes in that attachment.

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct. Executed on March 6, 2016.

Sohail Muhammad

9

# Exhibit A

## DAILY CASH DEPOSIT DETAIL

| DATE | 9/21/14 | Current | | | 2014 |
|---|---|---|---|---|---|
| S,NO | NAME OF STATION | $AMOUNT | DEPOSIT IN A/C | ATM | REMARKS |
| | Holbrook | 3500 | Slip | | N.Drop |
| | Medford | 4000 | Motor parkway | | BANK |
| | A-B Mart | 2000 | Motor parkway | | N.Drop |
| | Bohemia | 1800 | Slip | | N.Drop |
| | Ronkonkoma | 5000 | Wheeler | | N.Drop |
| | Slip | 3400 | Wheeler | | N.Drop |
| | Islandia | 4000 | Wheeler | | N.Drop |
| | Brentwood | 4200 | Wheeler | | N.Drop |
| | Suffolk B.P | 5500 | Wheeler | | N.Drop |
| | TOTAL | 33400 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | Deposit | 150 909.83 | | | |
| | Current | 33400 | | | |
| | | | | | |
| | TOTAL | 184309 | 83 | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## DAILY CASH DEPOSIT DETAIL

| DATE | 9/19,20/14 | | | | 2014 |
|------|------------------|---------|----------------|------|---------|
| S,NO | NAME OF STATION | $AMOUNT | DEPOSIT IN A/C | ATM | REMARKS |
| | Midwood | | | | |
| | part 2 | 7182 | Midwood | — | |
| | Northport | | | | |
| | Part 2 | 14106 | Suffolk | — | |
| | Smithtown | | | | |
| | part 3 | 7590 | Midwood | 1000 | |
| | maple | | | | |
| | part 3 | 5228 | Brentwood | | |
| | Ronkonkoma (4) | 538·83 | Marketing | 1000 | |
| | (part 3) | 12934 | Brentwood | 2000 | |
| | M. Island | | | | |
| | part 2 | 5110 | Brentwood | — | |
| | Centereach | 5817 | Midwood | 1000 | |
| | Port Jefferson | 2095 | Midwood | — | |
| | coram | | | | |
| | part 3 | 10662 | motor parkway | — | |
| | Medford | | | | |
| | part 3 | 40484 | Bohemia | 2000 | |
| | A-B Mart | | | | |
| | part 2 | 6978 | Motor parkway | 1000 | N. Drop |
| | Holbrook | | | | |
| | part 3 | 17595 | Islip | 1000 | N. Drop |
| | Bohemia | | | | |
| | part 3 | 7870 | Islip | 1000 | N. Drop |
| | Islip | | | | |
| | part 2 | 6720 | Islip | 1000 | N. Drop |
| | TOTAL | 150909·83 | | | |





New York Commercial Bank ▓▓▓▓▓▓▓                          Patchogue NY 11772
SEQ:▓▓▓              DATE:09/22/14  TIME:12:46 PM  FUNDS:0
APPL ▓▓▓                          AMOUNT           NEW BALANCE
NO ▓▓▓                            $4,000.00
MOTOR PARKWAY ENTERPRISES INC     CASH IN:         $4,000.00
                                  CHECKS IN:       $0.00
                                  CASH OUT:        $0.00





DEPOSIT RECORD COPY [redacted]

**WHEELER DEVELOPMENT LLC**

ATLANTIC BANK

A Division of New York Community Bank • Member FDIC

1250 AVENUE OF THE AMERICAS, NEW YORK, NEW YORK

DATE 09/2[illegible]/2014

DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | 4200 | 00 |
| COIN | | |
| CHECKS | | |
| TOTAL FROM OTHER SIDE OR ATTACHED LIST | | |
| TOTAL | | |

[redacted]

---

DEPOSIT RECORD COPY [redacted]

**ISLIP DEVELOPMENT CORPORATION**

ATLANTIC BANK

A Division of New York Community Bank • Member FDIC

DATE 9/19/2014

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | 6720 | 00 |
| COIN | | |
| CHECKS | | |
| 100x18 | | |
| 50x14 | | |
| 20x189 | | |
| 10x8 | | |
| 5x38 | | |
| 1x165 | | |
| TOTAL | 6720 | 00 |

(2)

[redacted]

6720

New York Commercial Bank
1601 Veterans Mem. Hwy
Islandia, NY 11749

DATE: 09/22/14   TIME: 10:15 am   FUNDS:0

| | AMOUNT | NEW BALANCE |
|---|---|---|
| | $3,400.00 | |
| CASH IN: | | $3,400.00 |
| CHECKS IN: | | $0.00 |
| CASH OUT: | | $0.00 |

...ER DEVELOPMENT LLC
...AUGS EXXON

---

New York Commercial Bank
1601 Veterans Mem. Hwy
Islandia, NY 11749

DATE: 09/22/14   TIME: 10:16 am   FUNDS:0

| | AMOUNT | NEW BALANCE |
|---|---|---|
| | $5,000.00 | |
| CASH IN: | | $5,000.00 |
| CHECKS IN: | | $0.00 |
| CASH OUT: | | $0.00 |

...ER DEVELOPMENT LLC
...UGS EXXON

DEPOSIT RECORD COPY

WHEELER DEVELOPMENT LLC

ATLANTIC BANK

DATE 7/21/14

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | | |
| COIN | | |
| CHECKS | | |

R.C.D

DEPOSIT RECORD COPY

WHEELER DEVELOPMENT LLC

ATLANTIC BANK
980 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10000

DATE 09/21/14

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | 5000 | 00 |
| COIN | | |
| CHECKS | 1000 | 00 |
| | 600 | 00 |
| | 2900 | 00 |
| | 150 | 00 |
| | 245 | 00 |
| | 105 | 00 |

TOTAL FROM OTHER SIDE
OR ATTACHED LIST        5000

New York Commercial Bank
1601 Veterans Mem. Hwy.
Islandia, NY 11749

DATE:09/22/14   TIME:10:17 am   FUNDS:0

| AMOUNT | NEW BALANCE |
|--------|-------------|
| $4,200.00 | |
| CASH IN: | $4,200.00 |
| CHECKS IN: | $0.00 |
| CASH OUT: | $0.00 |

...ER DEVELOPMENT LLC
...RUGE EXXON

---

New York Commercial Bank
1601 Veterans Mem. Hwy.
Islandia, NY 11749

DATE:09/22/14   TIME:10:19 am   FUNDS:0

| AMOUNT | NEW BALANCE |
|--------|-------------|
| $6,720.00 | |
| CASH IN: | $6,720.00 |
| CHECKS IN: | $0.00 |
| CASH OUT: | $0.00 |

...P DEVELOPMENT CORP
...MOBIL



New York Commercial Bank
1601 Veterans Mem Hwy
Islandia, NY 11749
[redacted]
WHEELER DEVELOPMENT LLC
HALFHAUSE EXXON

| DATE:09/22/14 | TIME:10:13 am | FUNDS:0 |
|---|---|---|
| AMOUNT | | NEW BALANCE |
| $4,000.00 | | |
| CASH IN: | | $4,000.00 |
| CHECKS IN: | | $0.00 |
| CASH OUT: | | $0.00 |

FOR DUPLICATE DEPOSIT STYLES USE CARBON PAPER FROM BACK OF PAD TO MAKE COPIES OF ENTRIES ON THIS SIDE

TOTAL

New York Commercial Bank
1601 Veterans Mem. Hwy
Islandia, NY 11749
[redacted]
WHEELER DEVELOPMENT LLC
HALFHAUSE EXXON

| DATE:09/22/14 | TIME:10:14 am | FUNDS:0 |
|---|---|---|
| AMOUNT | | NEW BALANCE |
| $5,500.00 | | |
| CASH IN: | | $5,500.00 |
| CHECKS IN: | | $0.00 |
| CASH OUT: | | $0.00 |

ADDITIONAL CHECK LISTING SPACE

FOR DUPLICATE DEPOSIT STYLES USE CARBON PAPER FROM BACK OF PAD TO MAKE COPIES OF ENTRIES ON THIS SIDE

TOTAL

**DEPOSIT SAID TO CONTAIN**
Hibiscok/isl...
**DATE** 9/20/21/16

CURRENCY: 10591
COINS: 3500
CHECKS:
TOTAL DEPOSIT 21091

**BAG NUMBER**
20479874

**DEPOSIT SAID TO CONTAIN**
Current
**DATE**
Islip + Islandia + Suffolk + R.A + B. wood

CURRENCY: 5000 + 5500
COINS: 9200 + 400
CHECKS: 3400
TOTAL DEPOSIT 22100

**BAG NUMBER**
20480096

**DEPOSIT SAID TO CONTAIN**
ISL/IP
**DATE** 9/15,28/14

CURRENCY:
COINS: 6720
CHECKS:
TOTAL DEPOSIT 6720

**BAG NUMBER**
20480097

**DEPOSIT SAID TO CONTAIN**
Bohemia
**DATE** 9/19,20/21/11

CURRENCY: 9370
COINS: 7270 + 1600
CHECKS:
TOTAL DEPOSIT 2370
9670

**BAG NUMBER**
20479875

**DEPOSIT SAID TO CONTAIN**
A-B / postoped
**DATE** 9/20,13/2/11

CURRENCY: 2000
COINS: 6978
CHECKS:
TOTAL DEPOSIT 8978

**BAG NUMBER**
20479871













Case 8-14-75667-ast   Doc 108-1   Filed 03/09/16   Entered 03/09/16 15:51:02



New York Commercial Bank
5425 Veterans Memorial Hwy.
Ronkonkoma NY 11779

DATE: 09/22/14   TIME: 9:54 am   FUNDS: 0
                 AMOUNT                NEW BALANCE
                 $2,000.00
HOYDS PARKWAY ENTERPRISES INC   CASH IN:    $2,000.00
                 CHECKS IN:     $0.00
                 CASH OUT:     $0.00

New York Commercial Bank
5425 Veterans Memorial Hwy.
Ronkonkoma NY 11779

DATE: 09/22/14   TIME: 9:56 am   FUNDS: 0
                 AMOUNT                NEW BALANCE
                 $6,959.00
HOYDS PARKWAY ENTERPRISES INC   CASH IN:    $6,959.00
                 CHECKS IN:     $0.00
                 CASH OUT:     $0.00





New York Commercial Bank
Watatoma Memorial Hwy
Barboukour NY 11779
DATE: 09/22/1   TIME: 9:43 am  FUNDS:10
AMOUNT              NEW BALANCE
$17,495.00
CASH IN:           $17,595.00
CHECKS IN:            $0.00
CASH OUT:            $0.00
SLIM MOBIL



New York Commercial Bank
Watatoma Memorial Hwy
Barboukour NY 11779
DATE: 09/22/1   TIME: 9:15 am  FUNDS:10
AMOUNT              NEW BALANCE
$2,190.00
CASH IN:
CHECKS IN:            $0.00
SLIM MOBIL

# Exhibit B



The person whose name appears on the account under which this membership card was issued is responsible for all checks written as payment for purchases by anyone using this card. Lost or stolen cards should be reported to RD branch where the card was issued. This card is the property of Restaurant Depot and must be surrendered upon request. Use of the card is governed by Restaurant Depot's customer policies.

MOTOR PARKWAY ENTERPRISES
MEMBER   4/14/2014
SINCE

# Exhibit C

## MARKETING INC OF ISLANDIA
### SYSTEM STAT REPORT/ 10-DAYS

| S.NO | NAME OF STATION | RECEIVED | DATE | MISSING DATE |
|------|-----------------|----------|------|--------------|
| 1 | AIRPORT | | | |
| 2 | OCEANSIDE | | | |
| 3 | BOHEMIA | | Night Gray | |
| 4 | ISLANDIA | | | |
| 5 | MEDFORD | | | |
| 6 | HAUPPAUGE | | | |
| 7 | RONKONKOMA | | yes | Night guy |
| 8 | SUNOCO HUNGT. | | yes | Night truey |
| 9 | SUNOCO MAPLE | | yes | Night guy |
| 10 | HAUPPAUGE MOTR | | | |
| 11 | WESTBURY SHELL | | | |
| 12 | WESTBURY MOBIL | | | |
| 13 | PATCHOGUE | | | |
| 14 | NORTPORT | | yes Night Gry | |
| 15 | CORAM | | yes | Night Guy 5/19/14 |
| 16 | SMITHTOWN | | | |
| 17 | HOLBROOK | | | |
| 18 | ISLIP | | yes | Night |
| 19 | BRENTWOOD | | | |
| 20 | SUFFOLK | | | |
| 21 | CENT. MOBIL | | yes night gul. | |
| 22 | STONEY BROOK | | | |
| 23 | MOTOR PKWAY | | | |
| 24 | VALLEY STREAM | | | |
| 25 | LAKE RONK BP | | | |
| 26 | PORT JEFF | | yes | Night |
| 27 | CEDARHURST | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

# Exhibit D

Case 8-14-75667-ast    Doc 108-4    Filed 03/09/16    Entered 03/09/16 15:51:02

MEDFORD DEVELOPMENT CORP.

BOHEMIA DEVELOPMENT                                    3/22/2014                          16538

                                                                                    2,900.00

NY COMMERCIAL                                                                        2,900.00

# Exhibit E

Copy C, for employees records

## Form W-2 Wage and Tax Statement 2013

| | | | |
|---|---|---|---|
| a Control number 0018-00183H30 0000000026-000100 | c Employer's name, address, and ZIP code RONKONKOMA DEVELOPMENT CORP 701 W MONTAUK HWY BAYSHORE NY 11706 | Department of the Treasury - Internal Revenue Service OMB No. 1545-0008 | |
| b Employer's identification number    d Employer's social security number | | 1 Wages, tips, other compensation 23055.00 | 2 Federal income tax withheld 1939.81 |
| 13 Statutory employee   Retirement plan   Third-party sick pay | | 3 Social security wages 23055.00 | 4 Social security tax withheld 1429.41 |
| 12 See Instrs. for Box 12   14 Other NYSDI              17.40 | e Employee's name, address, and ZIP code MUHAMMAD SOHAIL 33 COUNTY LINE RD FARMINGDALE NY 11735 | 5 Medicare wages and tips 23055.00 | 6 Medicare tax withheld 334.30 |
| | | 7 Social security tips | 8 Allocated tips |
| | | 9 Advance EIC payment | 10 Dependent care benefits |
| | | 11 Nonqualified plans | |
| 15 State   Employer's state ID No. NY | 16 State wages, tips, etc. 23055.00 | 17 State income tax 994.41 | 18 Local wages, tips, etc.    19 Local income tax    20 Locality name |

This information is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

Copy B, to be filed with employees FEDERAL tax return

## Form W-2 Wage and Tax Statement 2013

| | | | |
|---|---|---|---|
| a Control number 0018-00183H30 0000000026-000100   Void | c Employer's name, address, and ZIP code RONKONKOMA DEVELOPMENT CORP 701 W MONTAUK HWY BAYSHORE NY 11706 | Department of the Treasury - Internal Revenue Service OMB No. 1545-0008 | |
| b Employer's identification number    d Employer's social security number | | 1 Wages, tips, other compensation 23055.00 | 2 Federal income tax withheld 1939.81 |
| 13 Statutory employee   Retirement plan   Third-party sick pay | | 3 Social security wages 23055.00 | 4 Social security tax withheld 1429.41 |
| 12 See Instrs. for Box 12   14 Other NYSDI              17.40 | e Employee's name, address, and ZIP code MUHAMMAD SOHAIL 33 COUNTY LINE RD FARMINGDALE NY 11735 | 5 Medicare wages and tips 23055.00 | 6 Medicare tax withheld 334.30 |
| | | 7 Social security tips | 8 Allocated tips |
| | | 9 Advance EIC payment | 10 Dependent care benefits |
| | | 11 Nonqualified plans | |
| 15 State   Employer's state ID No. NY | 16 State wages, tips, etc. 23055.00 | 17 State income tax 994.41 | 18 Local wages, tips, etc.    19 Local income tax    20 Locality name |

This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

Copy 2, to be filed with employees tax return for NY

## Form W-2 Wage and Tax Statement 2013

| | | | |
|---|---|---|---|
| a Control number 0018-00183H30 0000000026-000100 | c Employer's name, address, and ZIP code RONKONKOMA DEVELOPMENT CORP 701 W MONTAUK HWY BAYSHORE NY 11706 | Department of the Treasury - Internal Revenue Service OMB No. 1545-0008 | |
| b Employer's identification number    d Employer's social security number | | 1 Wages, tips, other compensation 23055.00 | 2 Federal income tax withheld 1939.81 |
| 13 Statutory employee   Retirement plan   Third-party sick pay | | 3 Social security wages 23055.00 | 4 Social security tax withheld 1429.41 |
| 12 See Instrs. for Box 12   14 Other NYSDI              17.40 | e Employee's name, address, and ZIP code MUHAMMAD SOHAIL 33 COUNTY LINE RD FARMINGDALE NY 11735 | 5 Medicare wages and tips 23055.00 | 6 Medicare tax withheld 334.30 |
| | | 7 Social security tips | 8 Allocated tips |
| | | 9 Advance EIC payment | 10 Dependent care benefits |
| | | 11 Nonqualified plans | |
| 15 State   Employer's state ID No. NY | 16 State wages, tips, etc. 23055.00 | 17 State income tax 994.41 | 18 Local wages, tips, etc.    19 Local income tax    20 Locality name |

This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

## Form W-2 Wage and Tax Statement 2013

| | | | |
|---|---|---|---|
| a Control number              Void X | c Employer's name, address, and ZIP code | Department of the Treasury - Internal Revenue Service OMB No. 1545-0008 | |
| b Employer's identification number    d Employer's social security number | | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
| 13 Statutory employee   Retirement plan   Third-party sick pay | | 3 Social security wages | 4 Social security tax withheld |
| 12 See Instrs. for Box 12   14 Other | e Employee's name, address, and ZIP code | 5 Medicare wages and tips | 6 Medicare tax withheld |
| | | 7 Social security tips | 8 Allocated tips |
| | | 9 Advance EIC payment | 10 Dependent care benefits |
| | | 11 Nonqualified plans | |
| 15 State   Employer's state ID No. | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc.    19 Local income tax    20 Locality name |

This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

# Exhibit F

 **NEW YORK COMMUNITY BANK** Member FDIC

DATE:  12/19/14

IF YOUR ACCOUNT BALANCE IS NEGATIVE THEN YOU ARE
RECEIVING A COPY OF THE CHECK AND THE ORIGINAL
CHECK WILL BE MAILED TO YOU AS SOON AS YOU MAKE A
DEPOSIT WITH GOOD FUNDS TO YOUR ACCOUNT TO
COVER THE OVERDRAFT AMOUNT.

THE ENCLOSED CHECK, WHICH WAS RECENTLY CASHED OR DE-
POSITED TO ONE OF YOUR ACCOUNTS WAS RETURNED UNPAID
AND THE ACCOUNT REFERENCED ON THIS NOTICE HAS BEEN
CHARGED FOR THE CHECK AMOUNT PLUS A SERVICE CHARGE OF
$ 10.00   .  PLEASE ADJUST YOUR RECORDS ACCORDINGLY.

ACCOUNT NUMBER: ████2781

| AMOUNT OF ITEM | DESCRIPTION |
|---|---|
| 685.02 | DEPOSITED ITEM REVERSAL |
| 10.00 | ACTIVITY CHARGE |

SOHAIL MUHAMMAD
33 COUNTY LINE RD
FARMINGDALE NY 11735-3722

# Exhibit G

```
                                    1601 VETERANS HIGHWAY
                                    ISLANDIA, NY 11749
                                    (631)348-0883
                                    801

        SOHAIL MUHAMMAD
        33 COUNTY LINE RD
        FARMINGDALE NY 11735-6502


    Statement Date: 12/16/14 Account Number: ████████


    *************  My Community Free Checking  ████████  **********************

    *********   REWARD POINT SUMMARY       ████████  **********************
    STMT DATE  DESCRIPTION                BEGINNING    POINTS    REDEEMED/   ENDING
                                          BALANCE +   EARNED  -  EXPIRED  = BALANCE
    11/25/2014 Even >More Rewards              30         0          30         0
    ******************************************************************

    Account Summary
    Previous Statement Date: 11/14/14
         Beginning               Interest                Service        Ending
          Balance   +  Deposits + Paid ~ Withdrawals - Charge    =     Balance
         17,071.03        .00       .00    17,071.03      .00              .00

    Account Detail
        Date Description                     Credits       Debits      Balance
    11/14 Balance Forward                                            17,071.03
    11/17 Withdrawal                                    10,000.00-    7,071.03
    11/24 Withdrawal                                     5,000.00-    2,071.03
    11/25 CLOSEOUT                                       2,071.03-         .00


    Statement from 11/15/14 Thru 11/25/14

    ***************Summary of Deposit Accounts *********************************
    AP    ACCOUNT              BALANCE INT-RATE%   YTD-INT YTD-PENALTY  MATURITY
    CK  ████████                  .00

        EFF 11/1/14, THE ADDRESS TO REPORT A LOSS RELATING TO A SUBSTITUTE
        CK POSTED TO YOUR ACCT HAS CHANGED TO NEW YORK COMMERCIAL BANK, ATTN:
        RISK MGMT, NYCB PLAZA, 102 DUFFY AVE., HICKSVILLE, NY 11801.

        EFF 11/22/14, THE ADDRESS TO REPORT ERRORS OR QUESTIONS RELATING TO
        ELECTRONIC TRANSFERS HAS CHANGED TO NEW YORK COMMERCIAL BANK, ATTN:
        CARD SERVICES DEPT, NYCB PLAZA, 102 DUFFY AVE., HICKSVILLE, NY 11801
```

Scott D. Talmadge, Esq.
Kaye Scholer LLP
250 West 55th Street
New York, New York 10019
Telephone:  (212) 836-8000
Facsimile:  (212) 836-8689

*Attorney for Sohail Muhammad*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
In re:                                          :
                                                :   Chapter 11
Motor Parkway Enterprises, Inc.,                :   Case No. : 14-75667-ast
                                                :
              Debtor.                           :
------------------------------------------------------------x
```

### NOTICE OF DEPOSITION OF CHITRA KHATRI

**PLEASE TAKE NOTICE** that Chitra Khatri will be traveling to Nepal on the day of the Evidentiary Hearing scheduled for March 14, 2016 at 10:00 a.m. making him unavailable to appear as a witness.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Rules 26, 30 and 32 of the Federal Rules of Civil Procedure (made applicable to this proceeding pursuant to Rules 7026, 7030, 7032 and 9014 of the Federal Rules of Bankruptcy Procedure), the undersigned counsel will take the deposition upon oral examination of Chitra Khatri, before a person duly authorized to administer oaths, at 250 West 55th Street, New York, New York 10019.  The subject matter of the deposition will be all matters pertinent to the proof of claim of Sohail Muhammad (Claim 14) in the above-captioned bankruptcy case.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

The deposition will begin at 10:00 a.m. (ET) on March 11, 2016.  The deposition may be recorded by both stenographic means and audiovisual recording.

Dated:  New York, New York
        March 9, 2016                    KAYE SCHOLER LLP

                                    By:  */s/ Scott D. Talmadge*          
                                    Scott D. Talmadge, Esq.
                                    250 West 55th Street
                                    New York, New York 10019
                                    Tel:  (212) 836-8000

Motor Parkway - Notice of Deposition Chitra Khatri

**VIA E-MAIL AND OVERNIGHT DELIVERY**

      Counsel to the Debtor
      MACCO & STERN LLP
      2950 Express Drive South
      Suite 109
      Islandia, NY 11749
      Telephone: (631) 549-7900
      E-Mail:     csmith@maccosternlaw.com

Motor Parkway - Notice of Deposition Chitra Khatri



Scott Talmadge
+1 212 836 8000 office
holly.martin@kayescholer.com

250 West 55th Street
New York, NY 10019-9710
+1 212 836 8000 main
+1 212 836 6391 fax

March 9, 2016

***VIA ELECTRONIC FILING***
United States Bankruptcy Court
Eastern District of New York
Alfonse D'Amato Federal Courthouse
290 Federal Plaza
Central Islip, New York 11722

Re:    Motor Parkway Enterprises, Inc.    Case No. 14-75667 (AST)

Dear Judge Trust,

    Our client, Mr. Sohail Muhammad, is a native speaker of Pushtu.  For the convenience of all parties, and at the instruction of your Courtroom Deputy, Ms. Yvette Mills, we have arranged to have an interpreter attend the March 14, 2016 evidentiary hearing regarding Mr. Muhammad's proof of claim.  The interpreter's name is Mr. Nasrum Minallah.

                                        Respectfully,


                                        _/s/ Scott D. Talmadge_____
                                        Scott D. Talmadge
                                        **KAYE SCHOLER LLP**
                                        250 West 55th Street
                                        New York, New York 10019
                                        Telephone: (212) 836-8000
                                        Facsimile: (212) 835-8689
                                        *Attorney for Sohail Muhammad*

| Chicago | Los Angeles | Silicon Valley |
| Frankfurt | New York | Washington, DC |
| London | Shanghai | West Palm Beach |

63318892

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

**Firm ID 11-2671938**
**Date: 3/23/16 @ 2:00 p.m.**

------------------------------------------------------------x

In Re:                                              Chapter 11

Motor Parkway Enterprises, Inc.,                    Case No.:  14-75667-AST

                              Debtor.
------------------------------------------------------------x

## NOTICE OF MOTION RE: OBJECTION TO NOTICE
## OF DEPOSITION OF CHITRA KHATRI AND MOTION
## FOR PROTECTIVE ORDER PURSUANT TO BANKRUPTCY RULE 7026(C)

SIR/MADAM:

 **PLEASE TAKE NOTICE** that upon the annexed Notice dated March 10, 2016,
the undersigned will move this Court before the Honorable Alan S. Trust, United States
Bankruptcy Judge, in courtroom 960, United States Bankruptcy Court, Long Island Federal
Courthouse, 290 Federal Plaza, Central Islip, New York 11722, on **March 23, 2016 @ 2:00 p.m.**
or as soon thereafter as counsel can be heard, for an Order which objects to the Notice of
Deposition and also seeks a protective order pursuant to Rules 7026 and 7032 of the Federal
Rules of Bankruptcy, together with such other and further relief as this court deems just
and proper.

 **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the proposed Order
must be in writing and filed with the Clerk of the Court, United States Bankruptcy Court, Eastern
District of New York, 290 Federal Plaza, Central Islip, New York, 11722, (a)(i) through the
Bankruptcy Court's electronic filing system (in accordance with General Order M-242), which
may be accessed (with a password which is available by contacting the Bankruptcy Court's
technical assistance at 631-712-6200, Monday through Friday, 8:30 a.m. to 5:00 p.m. ) through
the Internet at the Bankruptcy Court's website: www.nyeb.uscourts.gov using Netscape
Navigator software version 3.0 or higher, and (ii) in portable document format (PDF) using
Adobe Exchange software for conversion; or (b) if a party is unable to file electronically, such

1

party shall submit the objection in PDF format on a diskette in an envelope with the case name, case number, type and title of document, document number of the document to which the objection refers, and the file name on the outside of the envelope; or (c) if a party is unable to file electronically or use PDF format, such party shall submit the objection on a diskette in either Word, WordPerfect, or DOS text (ASC II) format.  An objection filed by a party with no legal representation shall comply with section (b) or (c) as set forth in this paragraph.  A hard copy of the objection, whether filed pursuant to section (a), (b), or (c), as set forth in this paragraph, shall be hand-delivered directly to the Chambers of the Honorable Alan S. Trust, and served so as to be received by Macco & Stern, LLP, 2950 Express Drive South, Suite 109, Islandia, New York 11749, Attn:  Cooper J. Macco, Esq. no later than **March 16, 2016 at 4:00 p.m.**

**PLEASE TAKE FURTHER NOTICE,** that answering papers if any, shall be filed with this Court, and served upon the undersigned within three (3) days of the return date of this motion.

Dated:  Melville, New York
March 10, 2016

MACCO & STERN, LLP.
Attorneys for the Debtors

By:
Cooper J. Macco
2950 Express Drive South, Suite 109
Islandia, NY  11749
(631) 549-7900

2

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

In re:                                                                    Case No. 14-75667 (AST)

Motor Parkway Enterprises, Inc.,                          Chapter 11

                                        Debtor
------------------------------------------------------------ x

### OBJECTION TO NOTICE OF DEPOSITION OF CHITRA KHATRI AND MOTION FOR PROTECTIVE ORDER PURSUANT TO BANKRUPTCY RULE 7026(C)

Motor Parkway Enterprises, Inc. (the "Debtor"), the above-referenced debtor and debtor-in-possession, hereby: objects to the Notice of Deposition (the "Notice") of Chitra Khatri ("Khatri"), dated March 9, 2016; and (1) moves the court for a protective order pursuant to Rules 7026 and 7032 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and respectfully sets forth as follows:

### PROCEDURAL BACKGROUND

1.      On December 24, 2014, (the "Petition Date") the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtor is authorized to operate as a debtor-in-possession under Bankruptcy Code §§1108 and 1109.  To date, the Office of the United States Trustee (the "UST") has not appointed a chapter 11 trustee or examiner, nor has an official committee of unsecured creditors been formed.

3.      On or about April 17, 2015, Sohail Muhammad ("Muhammad") filed a proof of claim in the Debtor's bankruptcy case, assigned proof of claim number 14, in the amount of $157,354.16, including $12,475 as a priority unsecured claims (the "Claim").

4.      On or about November 9, 2015, Debtor filed an objection to the Claim (the "Claim Objection") [Docket No. 44].

5.      On December 24, 2015, Muhammad filed opposition to the Claim Objection [Docket No. 72].

6.      On January 6, 2016, a hearing was held before the Court, whereby the Debtor was directed to contact Muhammad's attorneys and submit a statement of undisputed facts as to the Claim and Claim Objection.

7.      On or about January 8, 2016, the Muhammad moved the Court for an order allowing and paying certain administrative expenses (the "Motion").

8.      On or about February 3, 2016, the Debtor filed its opposition to the Motion and statement of undisputed facts as to the Claim and Claim Objections.

9.      On or about February 10, 2016, the Court scheduled an evidentiary hearing on the Claim, Claim Objection and Motion for March 14, 2016 (the "Hearing Date"), and directed parties to submit affidavits of direct testimony on or before March 7, 2016.

10.     On or about March 7, 2016, the Debtor filed a Memorandum of Law in Support of the Objection and in Opposition to the Motion, as well as the supporting affidavit of Saverio Settanni.

11.     On or about March 7, 2016, Muhammad filed a Memorandum of Law in Opposition to the Objection, as well as the supporting affidavits of Muhammad and Chitra Khatri ("Khatri").

12.     On March 9, 2016, at approximately 4:30 p.m., Debtor's attorney received a call from Muhammad's attorney, whereby Muhammad's attorney informed the Debtor's attorney that Khatri would be unavailable for direct testimony or cross-examination on Monday, March 14, 2016, and instead, a deposition would need to be taken on Friday, March 11, 2016.

13.     Based on the Court's procedures, as well as the last minute notice provided and the unavavilability of an attorney for the Debtor to attend, the Debtor's attorney did not consent to testimony by deposition.

14.     Thereafter, Muhammad filed the aforementioned Notice.

## JURISDICTION

15.     The Court has jurisdiction to consider this motion under 28 U.S.C. §§157 and 1334.  This is a core proceeding under 28 U.S.C. §157(b).  Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.  The statutory predicates for relief are §502 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 7026, 7032 and 9014.

## ARGUMENT

**Objection Due to Muhammad's Failure to Provide the Debtor with Reasonable Notice**

16.     In the Notice, Muhammad relies on Bankruptcy Rule 7032 to try and compel testimony of Khatri by deposition rather than in Court testimony on the Hearing Date.

17.     Federal Rule of Civil Procedure 32, made applicable to adversary proceedings through Bankruptcy Rule 7032 and 9014, states, in relevant part, that:

> **(a)** *Using Depositions.*
>   (1) *In General.*  At a hearing or trial, all or part of a deposition may be used against a party on these conditions:
>       (A) the party was present or represented at the taking of the deposition or had reasonable notice of it;
>       (B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and
>       (C) the used is allowed by [Federal] Rule [of Civil Procedure] 32(a)(2) through (8). . .
>
> **(4)** *Unavailable Witness.*  A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds: . . .
>       (B) that the witness is more than 100 miles from the place of hearing or trial or outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition.

18.     A party may only use a deposition against another party at a trial or hearing if the party against whom the deposition is being used "is present or represented at the taking of the deposition or had reasonable notice of it." Bankruptcy Rule 7032(a)(1)(A).

19.     Here, in this case, neither the Debtor nor it's counsel is available to attend a deposition on Friday, March 11, 2016, upon thirty-six (36) hours notice of the proposed deposition.

20.     Moreover, the Muhammad has not provided the Debtor with reasonable notice of the taking of the deposition.

21.     As set forth above, Muhammad provided the Debtor with less than forty-eight (48) hours notice that Khatri would be "traveling to Nepal" on the Hearing Date. *See Notice.*

22.     Additionally, Khatri, who also filed a claim in the Debtor's case, was on the Court's calendar for a hearing as to his own claim on the Hearing Date.

23.     However, the Debtor and Khatri settled the objection Khatri's claim on March 4, 2016.

24.     Khatri is also represented by Muhammad's attorneys.

25.     Muhammad's attorneys were aware of the fact that Khatri would need to appear on the Hearing Date in support of the declaration in support of Muhammad's claim, as well as his Khatri's own claim had it not been settled,

26.     Notwithstanding the foregoing, Khatri executed and delivered a declaration to Muhammad's attorneys on March 7, 2016, almost two (2) full business days before the Debtor's attorney was notified of Khatri's unavailability.

27.     Muhammad's attorneys also indicated via email, dated March 9, 2016, at 6:09 p.m., that "We only became aware of this issue in the last few days" indicating that they had been aware of this issue for a few days before bringing it to the Debtor's attorney's attention.

28.     Under no circumstances did Muhammad provide the Debtor with reasonable notice of the deposition, as required by Bankruptcy Rule 7032.

29.     All parties had substantial notice of the Hearing Date regarding this Claim.

30.     Accordingly, the Debtor objects to the Notice and proposed Deposition due to the fact that Muhammad failed to provide the Debtor and Debtor's attorneys with reasonable notice of the unavailability of Khatri on the Hearing Date.

**Motion for a Protective Order Pursuant to Bankruptcy Rule 7026**

31.     Federal Rule of Civil Procedure 32, made applicable here through Bankruptcy Rules 7026 and 9014, also provides parties against whom the deposition will be used an option to try and protect itself.

32.     Specifically, Federal Rule of Civil Procedure 32, states, in relevant part:

> *(a) Using Depositions.*
> >    *(5) Limitations on Use.*
> > >    (A) *Deposition Taken on Short Notice.*  A deposition must not be used against a party who, having received less than 14 days' notice of the deposition, promptly moved for a protective order under Rule 26(c)(1)(B) requesting that it not be taken or be taken at a different time or place – and this motion was pending when the deposition was taken.

33.    Federal Rule of Civil Procedure 26, made applicable in this proceeding by Bankruptcy Rules 7026 and 9014 states, in relevant part:

**(c) Protective Orders**
   **(1)** ***In General.*** A party . . . from whom discovery is sought may move for a protective order in . . . or as an alternate on matters relating to a deposition, in the court for the district where the deposition will be taken.  The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including on or more of the following: . . .
      (B) specifying terms, including time and place, for the disclosure or discovery.

34.    Here, the Debtor-movant informed Muhammad that, due to the extremely short notice provided by Muhammad due to Muhammad's attorneys delay in presenting the issue, the Debtor had no attorneys who could attend the deposition.

35.    As required by Federal Rule of Civil Procedure 26, the Debtor has made a good faith effort to try and resolve the deposition issue by trying to convince Khatri, or another witness who could testify to the same facts, to appear on the Hearing Date in front of the trier of fact.

36.    As required by Federal Rule of Civil Procedure 26, attendance at the deposition is an undue burden on the Debtor because Debtor's attorneys have no attorneys available.

37.    Although Muhammad's attorney offered to conduct the deposition at the Debtor's attorneys' office, it is wholly irrelevant if the Debtor has no attorney to conduct cross-examination, specifically on short notice.

38.    It is submitted that the whole process of taking this deposition is prejudicial to the Debtor and should not be condoned by the Court.

39.    Moreover, the Hearing Date is literally the next business date from the date of the proposed deposition, which would be the best time and place to present evidence through testimony.

40.    Pursuant to Federal Rules of Civil Procedure 32 and 26(c)(1)(B), made applicable in this case by Bankruptcy Rule 7026, 7032, and 9014, the Debtor moves the Court for a protective order compelling testimony in person at the Court on the Hearing Date.

41.    No previous request for the relief requested herein has been made before this or any other Court.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order: (1) striking and/or denying the Notice; (2) entering a protective order in favor of the Debtor pursuant to Bankruptcy Rule 7016; and (3) granting such other and different relief as the Court deems just and proper.

Dated: March 10, 2016
       Islandia, New York

                                        **MACCO & STERN, LLP**
                                        Attorneys for the Debtor

                              By:       _____
                                        Cooper J Macco
                                        135 Pinelawn Road, Suite 120 South
                                        Melville, New York 11747
                                        (631) 549-7900

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

In re:                                                                    Case No. 14-75667 (AST)

Motor Parkway Enterprises, Inc.,                                          Chapter 11

                                    Debtor
--------------------------------------------------------------X

## CERTIFICATION OF GOOD FAITH

**COOPER J MACCO**, being duly sworn under the penalty of perjury, does hereby certify and swear:

1.      I am an associate at Macco & Stern, LLP, the attorneys for Motor Parkway Enterprises, Inc. (the "Debtor"), the above-referenced debtor and debtor-in-possession, and, as such, am fully familiar with the facts and circumstances surround the Debtor's bankruptcy case.

2.      I make this certification in support of the *Debtor's Objection to the Notice of Deposition of Chitra Khatri in Motion for a Protective Order Pursuant to Bankruptcy Rule 7026*, dated March 9, 2016 (the "Objection").[1]

3.      I was contacted by Kaye Scholer ("Kaye"), attorneys for Muhammad, late after 4:00 p.m. on Wednesday, March 10, 2016.

4.      At that time, Kaye informed me that Khatri would not be available to attend the Hearing Date, March 14, 2016.

5.      Kaye informed me they would instead be conducting Khatri's direct testimony and cross-examination on Friday, March 10, 2016, and would be willing to conduct it at our offices.

6.      However, I informed Kaye that Macco & Stern, LLP has only four (4) attorneys, and, if no attorney was available, the place of the deposition would be irrelevant.

---

[1] All capitalized terms used but not herein defined shall have the meaning ascribed to them in the Objection.

7.      Macco & Stern, LLP, unlike Kaye, is a small law firm with four (4) attorneys, none of whom are available to take a deposition on March 10, 2016.

8.      Macco & Stern, LLP has made a good faith effort to resolve the deposition issue by having Khatri or another witness appear at the Court on the Hearing Date.

COOPER MACCO

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

In re:                                                          Case No. 14-75667 (AST)

Motor Parkway Enterprises, Inc.,                                Chapter 11

                              Debtor
-------------------------------------------------------------- x

## **AFFIDAVIT OF SERVICE**

STATE OF NEW YORK)
COUNTY OF SUFFOLK)s:-

     Carol Smith, being duly sworn deposes that deponent is not a party to the above-captioned action, is over the age of 18 years and resides at West Islip, New York.

     On March 10, 2016, deponent served the within NOTICE OF MOTION RE: OBJECTION TO NOTICE OF DEPOSITION OF CHITRA KHATRI AND MOTION FOR PROTECTIVE ORDER PURSUANT TO BANKRUPTCY RULES 7012(C) upon the following parties, at the addresses designated by said parties for that purpose, by depositing a true copy of the same, enclosed in a post-paid properly addressed wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York:

Office of the U.S. Trustee
Long Island Federal Courthouse
560 Federal Plaza
Central Islip, NY  11722

Scott D. Talmadge, Esq.
Kaye Scholer LLP
250 West 55th Street
New York, New York 10019-9710

                                           Carol Smith

Sworn to before me this
10th day of March, 2016

*/s/ Janine M. Zarrilli*
Notary Public
*Janine M. Zarrilli*
*Notary Public, State of New York*
*No. 01ZA5084708*
*Qualified in Nassau County*
*Commission Expires September 8, 2017*

Scott D. Talmadge, Esq.
Kaye Scholer LLP
250 West 55th Street
New York, New York 10019
Telephone:  (212) 836-8000
Facsimile:  (212) 836-8689

*Attorney for Sohail Muhammad*

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
In re:                                                                :
                                                                          :    Chapter 11
                                                                          :
Motor Parkway Enterprises, Inc.,                        :    Case No. : 14-75667-ast
                                                                          :
                        Debtor.                                    :
---------------------------------------------------------x

**REPLY TO OBJECTION TO NOTICE OF DEPOSITION OF CHITRA KHATRI AND
MOTION FOR PROTECTIVE ORDER PURSUANT TO BANKRUPTCY RULE 7026(C)**

      Sohail Muhammad, by and through his undersigned counsel, respectfully submits this

Reply to Objection to Notice of Deposition of Chitra Khatri and Motion for Protective Order

Pursuant to Bankruptcy Rule 7025(C) [D.I. 111].

      1.     During the course of preparing for the evidentiary hearing scheduled on March

14, 2016, in the above-captioned case (the "Hearing"), Mr. Chitra Khatri ("Mr. Khatri") advised

that he was familiar with Sohail Muhammad ("Mr. Muhammad" or the "Claimant") and was

willing provide testimony to corroborate Mr. Muhammad's claims against Motor Parkway

Enterprises, Inc. (the "Debtor").

      2.     On Monday March 7, 2016 the undersigned counsel filed the Declaration of

Chitra Khatri in support of Mr. Muhammad's proof of claim and in opposition to the objections

to those claims [D.I. 98].

63364458

3.      Due to an international flight to Nepal on the same day, Mr. Khatri advised that he was unavailable to attend the Hearing.  Because his testimony is important to the Claimant's underlying assertions, a deposition pursuant to Federal Rule of Civil Procedure 32, made applicable to these proceedings by Federal Rules of Bankruptcy Procedure 7032 and 9014 (the "Rules"), is an appropriate alternative to Mr. Khatri's presence at the hearing.

4.      Debtor's counsel was first approached on March 9, 2016, at approximately 2:30 p.m. to discuss this deposition, but was not available until just after 4:30 p.m.  Debtor's counsel was then advised that Mr. Khatri was unavailable to attend the hearing and therefore his deposition would be scheduled on Friday, March 11, 2016.

5.      Recognizing the short time frame, all possible accommodations were made to make Mr. Khatri's deposition as convenient as possible for Debtor's counsel.  Debtor's counsel was offered the opportunity to conduct the deposition at their offices at any time that would be convenient to them in order to give them the opportunity to cross-examine Mr. Khatri.  All other necessary arrangements were offered, such as the presence of a court reporter.

6.      Debtor's counsel responded that they would not consent to a deposition.  The Notice of Deposition was subsequently filed, pursuant to the Rules.

7.      Given the circumstances of this case, and the Debtor's position that Mr. Muhammad was not an employee of the Debtor, Mr. Khatri's affirmative testimony corroborating Mr. Muhammad's employment is crucial to the case and important enough to justify noticing a deposition on such short notice, pursuant to the Rules.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

63364458

**WHEREFORE**, Claimant opposes the relief sought by the Debtor and respectfully requests that the relief be denied.

Dated: New York, New York
    March 10, 2016

By:    _s/ Scott D. Talmadge_

KAYE SCHOLER LLP
Scott D. Talmadge, Esq.
250 West 55th Street
New York, New York 10019
Telephone: (212) 836-8000
Facsimile: (212) 836-8689
*Attorney for Sohail Muhammad*

63364458

Official Form 417A (12/15)

*[Caption as in Form 416A, 416B, or 416D, as appropriate]*

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

### Part 1: Identify the appellant(s)

1. Name(s) of appellant(s):
   Sohail Muhammad

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

| For appeals in an adversary proceeding. | For appeals in a bankruptcy case and not in an adversary proceeding. |
|---|---|
| ☐ Plaintiff | |
| ☐ Defendant | ☐ Debtor |
| ☐ Other (describe) _____ | ☑ Creditor |
| | ☐ Trustee |
| | ☐ Other (describe) _____ |

### Part 2:  Identify the subject of this appeal

1. Describe the judgment, order, or decree appealed from: Order Disallowing Claim

2. State the date on which the judgment, order, or decree was entered: 6/23/16

### Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: Motor Parkway Enterprises, Inc.   Attorney: Michael Macco, Richard L. Stern
   Macco & Stern, LLP
   2950 Express Drive South, Suite 109
   Islandia, New York 11749
   (631) 549-7900

2. Party: _____   Attorney: _____

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

❑ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

## Part 5: Sign below

_Scott Talmadge_                                     Date: 7/7/16
Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Name, address, and telephone number of attorney
(or appellant(s) if not represented by an attorney):
Scott D. Talmadge
Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:

MOTOR PARKWAY ENTERPRISES, INC.,       Chapter 11
                                                Case No.: 14-75667-ast
                          Debtor.
---------------------------------------------------------X

## ORDER DISALLOWING CLAIM

On June 21, 2016, the Court conducted a ruling conference in connection with Debtor

Motor Parkway Enterprises, Inc.'s objection ("Motor Parkway") to the proof of claim (claim 14-

1), subsequently amended on March 7, 2016 (claim 14-2), and amended again on March 10,

2016 (claim 14-3) of Sohail Muhammad ("Mr. Muhammad").

For the reasons stated on the record, it is hereby

**ORDERED**, that the claim of Mr. Muhammad is disallowed and expunged in its entirety.



**Dated: June 23, 2016**
        **Central Islip, New York**                                **Alan S. Trust**
                                               **United States Bankruptcy Judge**

## CERTIFICATE OF SERVICE

I, Holly M. Martin, hereby certify that I caused to be served a copy of the Notice of Appeal and Statement of Election regarding Sohail Muhammad in the Motor Parkway Enterprises, Inc., Bankruptcy Case Number 14-75667(ast) upon the parties on the attached Service List by overnight mail on this 7th day of July, 2016.

*/s/ Holly M. Martin*
Holly M. Martin, Esq.

## SERVICE LIST

Michael J. Macco
Macco & Stern LLP
2950 Express Drive South
Suite 109
Islandia, NY 11749
631-549-7900

Richard L. Stern
Macco & Stern, LLP
2950 Express Drive South
Suite 109
Islandia, NY 11749

Christine H. Black, Esq.
Assistant United States Trustee
Long Island Federal Courthouse
560 Federal Plaza - Room 560
Central Islip, NY 11722-4437