UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X   For Online Publication Only
SOHAIL MUHAMMAD,

                      Appellant,

                                                                           **ORDER**
    -against-                                                              16-CV-3817 (JMA)

MOTOR PARKWAY ENTERPRISES, INC.,

                      Appellee.
------------------------------------------------------------------X

**APPEARANCES:**

    Richard Blum
    The Legal Aid Society
    199 Water Street
    New York, New York 10038

    Scott Talmadge
    Holly M. Martin
    Kara E. Neaton
    Kaye Scholer LLP
    250 West 55th Street
    New York, New York 10019
        *Attorneys for Appellant Sohail Muhammad*

    Michael Macco
    Macco & Stern LLP
    2950 Express Drive South, Suite 109
    Islandia, New York 11749
        *Attorneys for Appellee Motor Parkway Enterprises, Inc.*

**AZRACK, United States District Judge:**

        Appellant Sohail Muhammad appeals from the Bankruptcy Court's June 23, 2016 order that disallowed his claim for unpaid wages against appellee Motor Parkway Enterprises, Inc. ("Motor Parkway"). Muhammad claims that Motor Parkway, his alleged employer, is liable under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). The Court assumes the parties' familiarity with the factual record and the Bankruptcy Court's decision. For

the reasons set forth below, the Court reverses the Bankruptcy Court's order and remands this case for further proceedings consistent with this opinion.

## I. BACKGROUND

Motor Parkway operates a retail gas station. Motor Parkway is owned by Steven Keshtgar, who owns 14 other companies that also each operate a gas station. (Muhammad Decl. ¶ 3.) One of those other companies is Holbrook Development Corp. ("Holbrook"). (Id. ¶ 7.) Both Motor Parkway and Holbrook, along with 13 other gas-station operating companies owned by Keshtgar, filed for bankruptcy.

Muhammad filed a claim against Motor Parkway for $157,354,[1] of which he asserted $12,457 was entitled to priority claim treatment under 11 U.S.C. § 507(a)(4). Section 507(a)(4) grants priority, up to a capped amount, for certain "wages, salaries, or commissions . . . earned by an individual."

The Bankruptcy Court held a hearing for Muhammad's claim on March 14, 2016. That same day, the Bankruptcy Court conducted a hearing on a claim filed by Sonam Gyalpo, an alleged employee of Holbrook. Like Muhammad, Gyalpo pursued claims against his alleged employer under the FLSA and the NYLL. Muhammad and Gyalpo also both argued that they qualified as employees of Motor Parkway and Holbrook, respectively, based on the single and joint employer theories of liability that apply under the FLSA and the NYLL. In an oral ruling, the Bankruptcy Court disallowed both of their claims. (See 8/24/16 Tr. at 14 ("[Muhammad] did not meet his burden of proving that he was owed any money by Motor Parkway, either as a priority claim or otherwise."); id. at 18 ("[W]hile Mr. Muhammad and Mr. Gyalpo go to great lengths in discussing

---

[1] Although the Bankruptcy Court stated that Muhammad's total claim is for $157,354, appellant's brief states that his total claim is for $117,932. (Appellant's Br. at 5.)

2

in their briefing the FLSA and New York Labor [Law] standards, they simply have not demonstrated how either Mr. Gyalpo or Mr. Muhammad was an employee or individual, as defined under Section 507(a)(4), as to Holbrook and Motor Parkway, and simply have not proven that either claimant was an employee of the entity against which the claim was asserted.").

Both Muhammad and Gyalpo appealed. On appeal, Muhammad argues that the Bankruptcy Court applied the wrong legal standards in determining whether he was an employee of Motor Parkway. Muhammad also argues that the Bankruptcy Court's factual findings were clearly erroneous. Additionally, Muhammad asserts, in his reply brief, that remand is warranted so that the Bankruptcy Court can consider new evidence that was uncovered in a separate wage-and-hour lawsuit brought against Keshtgar, and Saverio Settani, a supervisor who testified for both debtors at the hearings before the Bankruptcy Court. According to Muhammad, in that suit, Keshtgar and Settani provided responses to interrogatories that contradicted representations and arguments that Settani and Motor Parkway made before the Bankruptcy Court.

Gyalpo's appeal was assigned to the Honorable Joseph F. Bianco. In a Memorandum and Order dated August 29, 2017, Judge Bianco reversed the Bankruptcy Court's order concerning Gyalpo and remanded his claim. Judge Bianco directed the Bankruptcy Court to apply "the applicable standards utilized under the [FLSA] and the [NYLL], including the rules regarding the burden of proof under those statutory frameworks, in deciding [Gyalpo's] claim." Gyalpo v. Holbrook Dev. Corp., No. 16-CV-3818, 2017 WL 3736752, at *1 (E.D.N.Y. Aug. 29, 2017). Relatedly, Judge Bianco concluded that the Bankruptcy Court needed to revisit its conclusions concerning whether a supervisor named Sudheer Kumar had actual or apparent authority to act on behalf of the debtor, Holbrook. Id. at *6. Finally, Judge Bianco directed the Bankruptcy Court, on remand, to consider "new evidence" cited by Gyalpo. Id. at *1, *9. Like Muhammad, Gyalpo

3

had, on appeal, relied on evidence from the separate wage-and-hour suit against Keshtgar and Settani.

## II. DISCUSSION

A bankruptcy court's conclusions of law are reviewed de novo. In re Ionosphere Clubs, Inc., 922 F.2d 984, 988 (2d Cir. 1990). A bankruptcy court's factual findings are reviewed for clear error. Id.

The Court concludes that the Bankruptcy Court's disallowance of Muhammad's claim must be reversed and remanded. On remand, the Bankruptcy Court shall: (1) determine whether Muhammad was employed by Motor Parkway by applying the relevant legal standards under the FLSA and the NYLL, including whether Motor Parkway is liable under the single or joint employer theories of liability; (2) apply the relevant burdens of proof under the FLSA and NYLL; (3) consider any new evidence presented by Muhammad that was obtained from the separate wage-and-hour suit against Keshtgar and Settani; and (4) make additional factual findings.

**1. The Legal Standards Applied by the Bankruptcy Court**

In considering Muhammad's total claim against Motor Parkway for $157,354, the Bankruptcy Court should have simply applied the principles of the FLSA and the NYLL to determine whether Motor Parkway was liable, including whether Motor Parkway was liable under the single or joint employer theories of liability. Similarly, as Judge Bianco's decision indicates, those same standards are also relevant for determining whether $12,475 of Muhammad's claim was entitled to priority under § 507(a)(4) of the Bankruptcy Code. On remand, the Bankruptcy Court's analysis of Muhammad's claim under § 507(a)(4) should be guided by Judge Bianco's analysis of the relevant principles in Gyalpo.

The Court acknowledges that Muhammad's claims are factually distinct from Gyalpo's claims. For example, one issue central to Mohammed's claim is the import of certain checks that Mohammed asserts contain his forged signature. (See 3/14/16 Tr. 61.) However, remand is still warranted here because: (1) it does not appear that the Bankruptcy Court's conclusions were based on the correct legal standards; and (2) as explained below, it is difficult to discern exactly what factual findings the Bankruptcy Court made on certain critical issues. Moreover, remand will allow the Bankruptcy Court to consider the new evidence cited by Muhammad, which may be relevant to various issues before the Bankruptcy Court. Accordingly, the Court concludes that remand is required.

The Court notes that, on appeal, Muhammad suggests that the burden-shifting framework of Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946), applies to his allegation that Motor Parkway was his employer. (See Appellant's Reply Br. at 5 ("Due to the absence of complete and accurate records, the burden shifted, as a matter of Labor Law, to the Debtor (employer) to disprove Mr. Muhammad's testimony and evidence that he had worked there . . . .").) Under Anderson, "where the employer's records are inaccurate or inadequate,"

> an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

Id. at 687–88.

It is not clear to this Court that the Anderson burden-shifting framework applies to any issue other than the question of how many hours an employee worked (i.e., damages). Put another way, before addressing the question of how many hours Muhammad worked, it is first necessary,

as a threshold matter, for Muhammad to establish, by a preponderance of the evidence, that Motor Parkway was his employer and that he performed some work for which he was not compensated. Cf. Locke v. St. Augustine's Episcopal Church, 690 F. Supp. 2d 77, 86 n.3 (E.D.N.Y. 2010) (stating that the employee bears the burden of proving that entities acted as joint employers under the FLSA).

If Muhammad can make this threshold showing (based on his own testimony and whatever other evidence he cites) and can also demonstrate that his employer failed to keep required records, then he would presumably be entitled to the benefit of Anderson's burden-shifting framework in establishing the amount of time that he worked. However, it is not clear to this Court that Muhammad can rely on the Anderson burden-shifting framework to help him meet his threshold burden of establishing that Motor Parkway was his employer. The Court, however, declines to resolve this question as part of the instant appeal. The Bankruptcy Court, which did not explicitly address this question in its oral ruling, can address this issue, in the first instance, on remand.

**2. The Bankruptcy Court's Factual Findings**

In addition to arguing that the Bankruptcy Court applied the wrong legal standards, Muhammad also argues that the Bankruptcy Court's factual findings were clearly erroneous. In light of the new evidence that the Bankruptcy Court will consider on remand, the Court declines to address this argument at the present juncture. Moreover, as explained below, it is difficult to discern exactly what factual findings the Bankruptcy Court made.

Muhammad claims that he received a salary of $800 per week in 2012, $850 per week in 2013, and $900 per week in 2014. (Muhammad Decl. ¶ 26.) According to Muhammad, he was paid $175 per week by check and then received the remainder of his salary in cash through a complicated procedure in which he would deposit a check into one gas station's checking account

6

and would then be paid in cash from that gas station's cash register by the gas station's cashier. (Id. ¶¶ 26–34, 38.)  Motor Parkway, on the other hand, submitted checks from an entity named Middle Island Development Corp. ("Middle Island") and related payroll documentation, that, on their face, appear to show that Muhammad was paid regular hourly wages and overtime.  (See, e.g., 3/14/16 Tr. 46–50; Nov. 18, 2014 check (indicating that Muhammad worked 40 hours at $8 per hour and received 46 hours of overtime at $12 per hour).)  These weekly checks to Muhammad from Middle Island ranged, approximately, from $670 to $690 per week, and apparently were based on weekly gross pay amounts that ranged, approximately, from $850 to $890 per week. (See, e.g., 8/24/16 Tr. 13; "From-To Gross Pay/Employee" Chart Created on 2/20/2016.)

In its oral ruling, the Bankruptcy Court appeared to accept Motor Parkway's position, stating:

> The documentary evidence before the Court established that Mr. Muhammad was paid in fact by entities other than Motor Parkway.  The Court admitted a check dated November 25, 2014 in the amount of $681.00, made payable by Ronkonkoma, DP, a DBA of the Middle Island entity. That payment was supported by an hours summary sheet, which listed Mr. Muhammad and Samil (indiscernible) as employees of Middle Island as the employer.
>
> Mr. Muhammad was issued other similar checks based upon average timesheets filed under the same protocol. Those checks included November 18, 2014, check drawn on Middle Island in the amount of $689, and a November 12, 2014 check drawn on Middle Island for $683. Thus, the check evidence indicates that Mr. Muhammad was employed and paid by Middle Island, but there are no checks from Motor Parkway as part of the trial record to Mr. Muhammad.

(8/24/216 Tr. 13.)

This statement from the Bankruptcy Court suggests that the Bankruptcy Court did not credit Muhammad's testimony that he was paid in cash.  However, later in its oral ruling, the Bankruptcy Court indicated that Muhammad did not establish that Kumar had "the authority" to pay him in cash off-the-books.  (See 8/24/16 Tr. at 14 ("Muhammad's assertion that a Mr. Sudhir

7

Kumar, a general manager of several gas stations, had the authority to deviate from [Debtor's] corporate protocol and pay him in cash is not persuasive to this Court."); id. ("[Muhammad] "did not establish that Mr. Kumar could vary from the established corporate protocol and bind Motor Parkway to pay him off the books.").)  If the Bankruptcy Court did not credit Muhammad's testimony that he was paid in cash, then it is not clear why the Bankruptcy Court would go on to address the question of whether Kumar had "the authority" to pay Muhammad in cash and "to bind" Motor Parkway in this regard.  It would seem that either:  (1) Muhammad was paid in cash as he claimed; (2) Muhammad received, endorsed, and deposited the checks from Middle Island as Motor Parkway claimed; or (3) the evidence on the issue was in equipoise, such that Muhammad failed to meet his burden of proof.  On remand, specific findings on this issue are necessary.[3]  Relatedly, it is unclear from the Bankruptcy Court's ruling, what, if any, findings the Bankruptcy Court made concerning the additional $175 checks that Muhammad received each week.  Settani initially testified that these checks constituted Muhammad's "salary," and then later stated that he

---

[3] The Bankruptcy Court appears to have taken the position that, even if Muhammad was, in fact, paid in cash as he claimed, such evidence would be irrelevant unless Muhammad could also prove that Kumar had the actual authority to pay him off the books.  In Gyalpo, Judge Bianco, in addressing a similar issue, concluded that the Bankruptcy Court erred by not considering whether Kumar had the apparent authority to act on behalf of Holbrook.  Gyalpo, 2017 WL 3736752, at *6–7.  If, on remand, the Bankruptcy Court should find that Muhammad was paid in cash, the Bankruptcy Court should consider:  (1) whether Muhammad's new evidence alters the court's analysis of whether Kumar had actual authority to act on behalf of Motor Parkway; and (2) even if actual authority was absent, whether Kumar had the apparent authority to do so.  Judge Bianco's decision in Gyalpo indicates that Kumar's actual or apparent authority to act on behalf of the entity or enterprise is relevant in analyzing the enterprise's control over an alleged employee.  If the Bankruptcy Court were to accept Muhamad's testimony that he was paid with cash and $175 weekly checks over a period of two years, (Muhammad Decl. ¶¶ 25–34), it is difficult to see why his employer would not be bound by such actions under the NYLL and the FLSA.

did not know what these $175 checks covered.[4]  (3/14/16 Tr. 53:16–54:15.)

Finally, in its oral ruling, the Bankruptcy Court stated that "Mr. Muhammad admitted that he never used the hand-scanner, the protocol by which the employees would scan into a particular gas station, in spite of the long-established company protocol that he scan in to record his time." (8/24/16 Tr. 12).  It is not clear what, if any, role this evidence played in the Bankruptcy Court's ultimate conclusion that Muhammad was not an employee of Motor Parkway or what relevance such evidence would have to that question.

### 3. Motor Parkway's Arguments on Appeal

In light of the Court's discussion above, none of the arguments raised by Motor Parkway on appeal are persuasive.  First, Motor Parkway argues that the Bankruptcy Court made a factual finding that Muhammad was not an employee of Motor Parkway.  Such a determination, however, is a not a straightforward factual finding.  Rather, it is a conclusion that involves applying subsidiary factual findings to a legal standard.  Because the Bankruptcy Court appears to have applied the incorrect legal standards and some of the Bankruptcy Court's factual findings are unclear, the Court cannot affirm the Bankruptcy Court's conclusion that Muhammad was not an employee of Motor Parkway. Motor Parkway also argues that the record is devoid of proof that any of the entities at issue owed money to Muhammad under the FLSA or the NYLL.  The Bankruptcy Court, however, does not appear to have made such a finding—it appears to have

---

[4] As Muhammad suggests in his appellate brief, even if he was primarily paid with the checks issued by Middle Island, Motor Parkway would still be liable for any FLSA violations or NYLL violations if Motor Parkway and the other related entities, including Middle Island, were found to be a single employer or joint employers.  (Appellant's Br. at 13.)  Even if Muhammad received the Middle Island checks and the overtime calculations for the Middle Island checks were correct based on the number of hours and rate of pay listed on the payroll documents cited by Motor Parkway, (see, e.g., Nov. 18, 2014 check (indicating that Muhammad worked 40 hours at $8 per hour and received 46 hours of overtime at $12 per hour)), Muhammad may still have valid overtime claims.  The fact that Muhammad was also receiving a separate $175 flat-rate payment per week irrespective of the number of hours that he worked suggests that Muhammad's overtime payments may not have been properly calculated.  It is, however, not clear that Muhammad ever specifically advanced such a theory below.  The Bankruptcy Court may consider this issue, and the question of whether Muhammad waived any such argument, on remand.

merely concluded that Muhammad was not an employee of Motor Parkway. The Court declines to affirm the Bankruptcy Court's order on this alternative ground, particularly in light of the Court's observation in footnote 4 supra, that Muhammad might still have viable FLSA and NYLL claims even if he received, endorsed, and deposited the Middle Island checks.

### III.  CONCLUSION

For the reasons stated above, this Court REVERSES the Bankruptcy Court's June 23, 2016 order and REMANDS this case for further proceedings consistent with this Court's order. The Clerk of Court is directed to close this case.

**SO ORDERED**.

Date:   September 15, 2017
        Central Islip, New York

_____/s/ (JMA)_____
Joan M. Azrack
United States District Judge